# UNITED STATES DISTRCT COURT
# SOUTHERN DISTRICT OF FLORIDA

BOCA VIEW CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff,

v.                                                                Case No.

ELEANOR LEPSELTER and
EDWARD LEPSELTER,

      Defendants.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND TO DETERMINE CONSTITUTIONALITY OF §617.0102 AND §617.1606, FLORIDA STATUTES

Plaintiff, BOCA VIEW CONDOMINIUM ASSOCIATION, INC. (hereinafter "Association" or "Plaintiff"), by and through undersigned counsel, hereby files this Complaint for Declaratory Relief and to Determine the Constitutionality of §617.1606, Florida Statutes, and sues Defendants, ELEANOR LEPSELTER ("Defendant Wife") and EDWARD LEPSELTER ("Defendant Husband") (jointly "Defendants"), and as grounds therefore, states as follows:

### NATURE OF ACTION

1. This is an action by the Association for a judgment declaring: (*1*) the parties' respective rights, duties, and obligations under a specific contract, specifically, Association's Declaration of Condominium, also a covenant running with the land; as well as, (*2*) that §617.0102 and §617.1606, Florida Statutes, unconstitutionally impair said contract.

2. Therefore, an ongoing federal violation of Article I, Section 10, Clause 1 of the US Constitution[1] is and will continually be occurring.

## PARTIES

3. Plaintiff Association is a not-for-profit Florida corporation organized pursuant to the provisions of §607, §617 and §718, *Florida Statutes*, and which operates Boca View, a Condominium, located in Palm Beach County, Florida.

4. Defendants are co-owners of Unit 2S and are members of the Association subject to the Association's governing documents and Florida Statutes, §607, §617 and §718, et seq., who reside at the Condominium, and are otherwise *sui juris*.

## JURISDICTION AND VENUE

5. Venue is proper because parties are subject to the Court's personal jurisdiction in this District, pursuant to 28 U.S.C. §1331 and §1391 and, in the alternative, all events and omissions by Defendants giving rise to this action occurred in this judicial District.

6. Additionally, this Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. § 2201-2202 and Fed. R. Civ. P. 57 and 65.

7. Furthermore, this Court has authority to review state administrative agency decisions.

8. All necessary and present interests are before the Court.

9. All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred or have been waived.

## BACKGROUND

---

[1] … which states in pertinent part: "*No State shall... pass any... ex post facto Law, or Law impairing the Obligation of Contracts.*"

10. With a document dated February 6, 2019 bearing their letterhead and signed by both Defendants, through Jonathan A. Yellin, made a request to inspect the identical categories of Association's records, for the identical purpose – a forensic accounting—made by Cool Spaze. A copy of the Defendants' request to inspect records is attached as Exhibit "**D**".

11. The Association's management company received the certified request on February 11, 2019 and on February 13, 2019, acknowledged receipt. Having not heard from the Defendants after management acknowledged receipt of the request, and without any legal obligation to do so, the manager e-mailed them at their joint e-mail address on February 22, 2019, and advised his availability for the inspection of the records on February 25, 2019 at 1:00 p.m.

12. All Association records requested were prepared, an appointment was set and they were timely made available to Defendant Wife who, along with Yellin, was present at the inspection in her capacity as "a unit owner", in accordance with §718.111(12)(b), Florida Statutes, on February 25, 2019.

13. Since the records were offerred to Defendant Wife for inspection in a timely manner and in compliance with the law and, eventually, copies or requested records would be released to her upon the signing of a personal guarantee that she would not release said records to any third-parties, including Cool Spaze/Shefets, the Association had no further obligation to the Defendants.

14. In DBPR Arb. Case #2019-01-7913, Summary Final Order dated October 25, 2019, the state administrative agency found the Association willfully violated Florida Statute Section 718.111(12)(c) by failing to permit Defendants' authorized representative to access the Association's official records, and the Order Denying Motion for Clarification/Rehearing dated, December 10, 2019, based upon the same issues. Copies of both orders are attached hereto as composite Exhibit "**E**".

15. On January 9, 2020, the Association filed a Complaint for Trial *De Novo*, a hybrid appellate procedure pursuant to §718.1255, *Florida Statutes*, Palm Beach County Circuit Court Case No. 50-2020-CA-000251-XXXX-MB. On December 2, 2022, the trial court sustained the state administrative agency decision in a Final Judgment therein finding that an error at the heart of the arbitrator's order was, however, a *scrivener's error*. On December 28, the same Court denied the Association's motion for a new trial and the issue is currently pending before the Florida Fourth District Court of Appeal. Both trial court orders are attached hereto as composite Exhibit "**F**".

16. Furthermore, Defendants' request to inspect records was improper for a number of reasons. First, it sought to circumvent Florida law by disregarding the series of prior arbitration decisions, Court orders granting summary judgment and Final Judgments, including a Final Judgment after a trial *de novo*.

17. Defendants' records request violated Florida law. Defendants' but the latest unit owner ("straw person") enlisted by the Shefets, the real parties in interest, to try to obtain the Association's records although their title dispute and entitlement to the Association's records are currently pending before a Palm Beach County, Florida Court of competent jurisdiction. Subsequently, the Shefets should not permitted to use a straw person to circumvent. Allowing this circumvents the trial court's authority over and the party's compliance with discovery.

18. §617.1602(3)(a) (2004), Florida Statutes, states:

> **617.1602  Inspection of records by members.**—
> (3)  A member may inspect and copy the records… **only if**:
> (a) The member's demand is made **in good faith** and for a proper purpose;

(emphasis added)

19.     There is no doubt the Defendants' request for documents was made in "bad faith." The Defendants request was not made in "good faith" and therefore, the Defendants never provided any good faith or proper purpose and fails to comply with §617.1602(3)(a).

20.     Moreover, based on his own sworn testimony, *supra*, the Request had originally been drafted in a similar form *circa* mid-2016 by Ryan Poliakoff, Esq., currently at Backer Aboud Poliakoff & Foelster, for and on behalf of David and Dganit Shefet and/or Cool Spaze LLC (the limited liability corporation with the Shefets as the only managing directors).

21.     In Shefets pending title dispute against the Association, at the time of the Defendants' records request and material to the pendency of the state administrative agency arbitration, the Circuit Judge found that Cool Spaze LLC was **not** a member of the Association and, thus, unable to collaterally attack the Association's governing documents. As such, the Shefets were not entitled to these records.

22.     Second, the Request stated in pertinent part: "Such request is made for the purpose of performing **a forensic audit** of the Association's finances." (emphasis added) This is an improper purpose for such a request because Lepselter has neither the credentials nor any inherent authority whatsoever, nor has one been bestowed upon her by any law enforcement body or court of law, to conduct such a task. Therefore, judgment should have been entered in favor of the Association.

23.     §718.111(2), state sin pertinent part (emphasis added):

> (2) POWERS AND DUTIES.—The powers and duties of the association include those set forth in this section and, except as expressly limited or restricted in this chapter, **those set forth in the declaration and bylaws and part I of chapter 607 and chapter 617, as applicable.**

24.     §617.1602(3)(a) (2004), Florida Statutes, states (emphasis added):

...

> **617.1602  Inspection of records by members.**—
> (3)  A member may inspect and copy the records… **only if**:
> (a)  The member's demand is made in good faith and **for a proper purpose**;

25. §617.1606, Florida Statutes (2010), - which states "Access to records.—Sections 617.1601-617.1605 do not apply to a corporation that is an association, as defined in s. 720.301, or a corporation regulated under chapter 718 or chapter 719", - does not apply to this Association. Instead, §617.1602 applies and requires that a records request be made for a proper purpose which is reasonable related to such person's interest as a member.  This request was made on behalf of the Shefets and/or Cool Spaze who are not members and therefore, the request was not made for a proper purpose.

26. Additionally, to the extent §617.0102, Florida Statutes (1990), - which states "**Reservation of power to amend or repeal.**--The Legislature has the power to amend or repeal all or part of this act at any time, and all domestic and foreign corporations subject to this act shall be governed by the amendment or repeal.", - automatically applies §617.1606, Florida Statutes (2010), to the Association's Declaration which contains no *Kaufman* Language, that would constitute an impairment of a contract in Violation of Fla. Const. art. I, § 10[2], U.S. Const. art. I, § 10, cl. 1[3], and the principle of *Pomponio*[4].

27. This is because, The Association's Declaration states in pertinent part (emphasis added):

> The undersigned Developer… does hereby submit… all other property, real, personal or mixed, now or hereafter situated, except

---

[2] "No ... law impairing the obligation of contracts shall be passed."

[3] "No State shall... pass any... ex post facto Law, or Law impairing the Obligation of Contracts."

[4] "In this state, it is a `well-accepted principle that virtually no degree of contract impairment is tolerable.'" *Coral Lakes Cmty. Ass'n v. Busey Bank, N.A.,* 30 So.3d 579, 584 (Fla. 2d DCA 2010) (quoting *Pomponio v. Claridge of Pompano Condo., Inc.,* 378 So.2d 774, 780 (Fla.1979))

as otherwise provided in this Declaration (the "Condominium Property")… to condominium ownership **pursuant to the presently existing provision of Chapter 718 of the Florida Statutes**, hereinafter called the "Condominium Act".

28. A condominium is established by recording a declaration of condominium, which is the document that governs the condominium and is binding on all unit owners. *See* § 718.104(2)-(7), Fla. Stat. (1985). A declaration of condominium possesses "attributes of a covenant running with the land" and operates as a contract among unit owners and the association, "spelling out mutual rights and obligations of the parties thereto." *See* also *Cohn v. Grand Condo. Ass'n, Inc.*, 62 So.3d 1120, 1121 (Fla. 2011) citing *Woodside Vill. Condo. Ass'n v. Jahren,* 806 So.2d 452, 456 (Fla.2002) (quoting *Pepe v. Whispering Sands Condo. Ass'n,* 351 So.2d 755, 757 (Fla. 2d DCA 1977)).

29. In *Phillips Petroleum Co. v. Jenkins,* 297 U.S. 629, 56 S.Ct. 611, 80 L.Ed. 943 (1936), the U.S. Supreme Court noted (emphasis added):

> The reservation of power to amend is a part of the contract between the State and the corporation and therefore § 10 of Art. I of the Federal Constitution does not apply. **The reserved power is not unlimited and cannot be exerted to defeat the purpose for which the corporate powers were granted**, or to take property without compensation, or arbitrarily to make alterations that are inconsistent with the scope and object of the charter **or to destroy or impair any vested property right**.[5]5

---

[5] Footnote [5] cites to: *Tomlinson* v. *Jessup,* 15 Wall. 454, 459. *Miller* v. *State,* 15 Wall. 478, 488, 493 *et seq. Shields* v. *Ohio,* 95 U.S. 319, 324. *Beer Co.* v. *Massachusetts,* 97 U.S. 25, 33. *Sinking-Fund Cases,* 99 U.S. 700, 720. *Greenwood* v. *Freight Co.,* 105 U.S. 13, 17 *et seq. Close* v. *Glenwood Cemetery,* 107 U.S. 466, 474-476. *Lake Shore & M.S. Ry. Co.* v. *Smith,* 173 U.S. 684, 698. *Fair Haven & W.R. Co.* v. *New Haven,* 203 U.S. 379, 388 *et seq. Berea College* v. *Kentucky,* 211 U.S. 45, 57. *Hammond Packing Co.* v. *Arkansas,* 212 U.S. 322, 345, 346. *Missouri Pacific Ry. Co.* v. *Kansas,* 216 U.S. 262, 274. *Chicago, M. & St. P.R. Co.* v. *Wisconsin,* 238 U.S. 491, 501. *Sears* v. *Akron,* 246 U.S. 242, 248. *Coombes* v. *Getz,* 285 U.S. 434, 441. *Public Service Comm'n of Puerto Rico* v. *Havemeyer,* 296 U.S. 506.

30. In *Superior Water, Light & Power Co. v. City of Superior,* 263 U.S. 125, 44 S.Ct. 82, 68 L.Ed. 204 (1923) the U.S. Supreme Court also stated (emphasis added):

> As late as 1909, in *State ex rel. Northern Pacific Ry. Co.* v. *Railroad Commission,* 140 Wis. 145, 157, that court announced, "**The right to alter or repeal existing charters is not without limitation when the question of vested property rights under the charter is involved**. The power is one of regulation and control, and **does not authorize interference with property rights vested under the power granted**…." See also *Water Power Cases,* 148 Wis. 124, 136.

31. A partial definition of the limits of the reserved power may be found in *Commonwealth v. Essex Co.*, 79 Mass. (13 Gray) 239 (1859), where Chief Justice Shaw (speaking of the reserved power to alter, amend, or repeal a charter), said:

> The power of repeal is limited and qualified, and was so considered in the case of Crease v. Babcock, 23 Pick. 334.
> Does this come within the power of the legislature to amend or alter? It seems to us this power must have some limit, though it is difficult to define it… [Therefore,] **the rule to be extracted is this: that where, under a power in a charter, rights have been acquired and become vested, no amendment or alteration of the charter can take away the property or rights which have become vested under a legitimate exercise of the powers granted.**" p. 253.

32. In a condominium setting, covenants that restrict property rights (such as a condominium Declaration and other governing documents) run with the land. Specifically, §718.104 (2004), states in pertinent part (emphasis added):

> (5) The declaration as originally recorded or as amended under the procedures provided therein may include covenants and restrictions concerning the use, occupancy, and transfer of the units permitted by law with reference to real property.
> …
> (7) **All provisions of the declaration** are enforceable equitable servitudes, **run with the land**, and are effective until the condominium is terminated.

33. In *Pepe v. Whispering Sands Condominium Association, Inc.,* 351 So.2d 755, 757-58 (Fla. 2d DCA 1977), the Court stated in pertinent part (emphasis added):

> A declaration of a condominium is more than a mere contract spelling out mutual rights and obligations of the parties thereto — **it assumes some of the attributes of a covenant running with the land, circumscribing the extent and limits of the enjoyment and use of real property**. Stated otherwise, it spells out the true extent of the purchased, and thus granted, use interest therein.[6]

34. Thus, such property rights and restrictive covenants are so virtually inseparable and interwoven together, that there are **no** property rights without said condominium covenants. Subsequently, a reservation of power statute **cannot** extend to a community association's governing documents or statutory rights under those documents <u>because such a reservation of power would not only impair a vested property right which comes with the acquisition of the property</u>, but also it "**cannot be exerted to defeat the purpose for which the corporate powers were granted**". There is a reason why **no** 'reservation of power to amend and repeal' statutory sections or subsections are found under Chapters 718 (governing condominium associations), 719 (cooperatives) or 720 (homeowners associations).

35. "An association declaration is a contract. *See Cohn v. Grand Condo. Ass'n, Inc.*, 62 So.3d 1120, 1121 (Fla. 2011) ("A declaration of condominium possesses attributes of a covenant running with the land and operates as a contract among unit owners and the association, spelling out mutual rights and obligations of the parties thereto." (quotations omitted)), and normally, **the statutes in effect at the time a contract is executed govern substantive issues arising in**

---

[6] "Covenants are loosely defined as `promises in conveyances or other instruments pertaining to real estate.'" *Palm Beach Cnty. v. Cove Club Investors Ltd.,* 734 So. 2d 379 (Fla. 1999)… A real covenant "concerns the property conveyed and the occupation and enjoyment thereof." *Id.* "If the performance of the covenant must touch and involve the land or some right or easement annexed and appurtenant thereto, and tends necessarily to enhance the value of the property or renders it more convenient and beneficial to the owner, it is a covenant running with the land." *Id.*" *PGA North II of Fla, LLC v. Division of Admin., State of Fla. Dept. of Transp.,* 126 So. 3d 1150, 1152 (Fla. 4th DCA 2012).

**connection with that contract**, see *Sans Souci v. Div. of Fla. Land Sales & Condos., Dep't of Bus. Regulation*, 421 So.2d 623, 628 (Fla. 1st DCA 1982) ("Thus, the law on the date of filing of the [declaration and master lease] engrafts the law of Florida into the documents, as if it were expressly stated in the documents."), cited in *Cohn*, 62 So.3d at 1122; see also *Shavers v. Duval Cty.*, 73 So.2d 684, 689 (Fla. 1954) ("It has long been firmly established that the laws existing at the time and place of the making of the contract and where it is to be performed which may affect its validity, construction, discharge and enforcement, enter into and become a part of the contract as if they were expressly referred to or actually copied or incorporated therein."); *Fla. Beverage Corp. v. Div. of Alcoholic Beverages and Tobacco, Dep't of Bus. Reg.*, 503 So.2d 396, 398 (Fla. 1st DCA 1987) ("The laws in force at the time of the making of a contract enter into and form a part of the contract as if they were expressly incorporated into it.")." (footnote omitted) *Dimitri v. Commercial Ctr. of Miami Master Ass'n,* 253 So. 3d 715 (Fla. 3d DCA 2018).

36.     In condominium associations, *Kaufman v. Shere,* 347 So.2d 627 (Fla. 3d DCA 1977) (holding that a specific statutory provision "was incorporated into" the declaration "by virtue of the express wording of the Declaration itself" which "unequivocally states that provisions of the Condominium Act are adopted `*as it may be amended from time to time*'"), *cert. denied,* 355 So.2d 517 (Fla. 1978), acts essentially the same way as a reservation of power, since it holds that changes to substantive laws, such as the later-enacted §617.1606 (2010), **do not apply, unless the declaration has *Kaufman* language**. *See Palm-Aire Country Club Condo. Ass'n No. 2, Inc. v. F.P.A. Corp.,* 357 So. 2d 249, 251-52 (Fla. 4th DCA 1978) (rejecting the lessees' position that "the condominium documents were automatically amended when the Condominium Act was amended," "because, unlike *Kaufman,* the condominium documents in this case do not expressly adopt the provisions of the Condominium Act," and rather outline "an exclusive method of

amendment which does not include an automatic amendment whenever there is a change in the Condominium Act").

37. Further, *Pomponio v. Claridge of Pompano Condo., Inc.,* 378 So. 2d 774 (Fla. 1979) notes that, in this state, **it is a `well-accepted principle that virtually no degree of contract impairment is tolerable.'** [*emphasis added*] See also *Coral Lakes Cmty. Ass'n v. Busey Bank, N.A.,* 30 So. 3d 579 (Fla. 2d DCA 2010). The *Pomponio* court further defined an impairment as "to make worse; to diminish in quantity, value, excellency or strength; to lessen in power; to weaken." *Id.* at 781 n. 41). Therefore, [the "reservation of power to amend or repeal" statute] §617.0102 of 1990 cannot possibly extend to the retroactive application of [the separation of the 'access to records' requirements of F.S. 617[7] from those of F.S. 718, 719 and 720] §617.1606 of 2010 which does not pass the *Pomponio* test and would be inapposite to the rights set out in the Association's Declaration as indicated in *Essex*, *supra*.

38. §718.111(2) (2004), states (emphasis added):

> (2) POWERS AND DUTIES.--The powers and duties of the association include those set forth in this section and, **except as expressly limited or restricted in this chapter**, those set forth in the declaration and bylaws and chapters 607 and 617, as applicable.

39. When the Association's covenants were recorded in December 2004, the Association had the power to deny a records request in the absence of good faith and proper purpose. That right existed in Chapter 718 because it incorporated the powers granted in Chapter 617 that did not conflict with Chapter 718. Since Chapter 718 was silent, or imposed **no** express limitation or restriction, there was no conflict and the power incorporated into in Chapter 718 was, therefore, grafted into the Declaration at the time of recording in December 2004.

---

[7] See footnote 4, *supra*.

40. Florida Statute Section 617.1602(5), expressly provided in 2004 (and through today), that:

> (5)  A corporation may deny any demand for inspection made pursuant to subsection (2) **if the demand was made for an improper purpose**, or if the demanding member has within 2 years preceding his or her demand sold or offered for sale any list of members of the corporation or any other corporation, has aided or abetted any person in procuring any list of members for any such purpose, or **has improperly used any information secured through any prior examination of the records of the corporation or any other corporation**.

41. There can be no doubt that the Association possessed the right to deny the Lepselters' request to inspect records for an improper purpose.  The Association was impermissibly refused the ability to set forth the bad faith motive and improper purpose of the Lepselters who sought these records for the Shefets and the Shefets' counsel to further harm and prejudice the Association.   This State Court, most respectfully, incorrectly found that Florida Statute Section 617.1602 was **abrogated** in 2010 by Florida Statute Section 617.1606 which finding flies in the face of the basis of *Kaufman* language, Fla. Const. art. I, § 10, U.S. Const. art. I, § 10, cl. 1, and the principle of *Pomponio*[8] "*that virtually no degree of contract impairment is tolerable.*" Additionally, the State Court, through its comments during the trial, plainly erred in assuming that the *Kaufman* language argument allegedly pertains solely to real estate transactions. See *Cohn v. Grand Condo. Ass'n, Inc.*, 62 So.3d 1120, 1121 (Fla. 2011) (elections of Association Board directors); *Tropicana Condo. Ass'n, Inc. v. Tropical Condo., LLC*, 208 So. 3d 755, 758 (Fla 3d DCA 2016) (termination of condominium); *De Soleil S. Beach Residential Condo. Ass'n v. De Soleil S. Beach Ass'n*, 322 So. 3d 1189, 1196 (Fla. 3d DCA 2021) (Voting rights in a condominium), to name a few.

---

[8] *Pomponio v. Claridge of Pompano Condo., Inc.,* 378 So.2d 774, 780 (Fla.1979)

42. When the legislature subsequently passed §617.1606 in 2010 or SB630 effective July 1, 2021, it removed the Association's power, which removal conflicted with the year 2004 version of Chapter 718 incorporated into its Declaration/covenants because there is no *Kaufman* language in said Declaration. The statute removing that power did not evidence the legislature's intent to make it retroactive, so it is not retroactive and does not apply to the Association. Even if it were retroactive, and supported by §617.0102, it would be an unconstitutional impairment of contract because it is substantive and it fails to meet the *Pomponio* test.

43. Further, the Florida legislature amended Florida Statute Section 718.111(12)(c)(1) to address this very issue in 2021 by adding the following language (emphasis added):

> The association may adopt reasonable rules regarding the frequency, time, location, notice, and manner of record inspections and copying but **may not require a member to demonstrate any purpose or state any reason for the inspection**.

44. If the legislature believed that Florida Statute Section 617.1602(5) no longer applied to any condominiums, there would have been no need for the amendment. Instead, the legislature must have determined there was a need for this language in Chapter 718 for Associations without *Kaufman language*.

45. Based on the foregoing, the actions of the Defendants, the arbitrator and the *de novo* Court's failure to address the law regarding the "good faith and proper purpose" defenses made by the Association violate the U.S. Constitution.

46. The State Court below, nonetheless, entered Final Judgment requiring that the records be produced to the Defendant's attorney, Yellin.

47. The State Court has also refused to enter a stay of its order requiring inspection of the records pending appeal to the Fourth District Court of Appeal.  See Composite Exhibit "**G**".

48. And, the Fourth District Court of Appeal has denied a stay previously and would very likely deny a stay as to the new order. See Exhibit "**H**".

## COUNT I – DECLARATORY JUDGMENT

49. Association hereby adopts, realleges and incorporates by reference the allegations contained in paragraphs 1 through 62 above.

50. Association believes and contends that its Declaration of Condominium assumes rights asserted in the 2004 provisions of the Condominium Act, §718, Florida Statutes.

51. Association is in doubt of its rights under its Declaration of Condominium and seeks a declaration of its rights and obligations with respect to a records request, including the Defendants' one, and its obligations related thereto as well as the application of §617.0102 and §617.1606, Florida Statutes is constitutional.

52. Association seeks the entry of a judgment by this Court declaring that under the above-referenced Declaration of Condominium, Association does have the right to consider a proper purpose in relation to a records request, including the Defendants' one, and that applying §617.0102 and §617.1606, Florida Statutes is unconstitutional because it impairs the Association's contractual obligations with its members.

53. There exists a bona fide, actual, present and practical need for a legal determination by this Court of the duties, rights and obligations, if any, of Association with regard to a records request, including the Defendants' one.

54. There exists a present ascertained or ascertainable state of facts concerning the rights and obligations of Association under the subject Declaration of Condominium.

55. Association and the purported members, Defendants, have a present, actual, and antagonistic controversy in the subject matter described herein.

56. Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201, Association is entitled to a declaration that the Declaration of Condominium provides for it to apply its business judgment to consider whether a proper purpose pertains with regard to a records request, including the Defendants' one.

## COUNT II – INJUNCTION

57. Association hereby adopts, realleges and incorporates by reference the allegations contained in paragraphs 1 through 62 above.

58. Article 1, section 10, cl. 1, United States Constitution and article 1, section 10 of the Florida Constitution prohibits Florida from retroactively applying the ex post facto §617.1606, Florida Statutes of 2010, and impairing a covenant running with the land which does not contain *Kaufman* language such as the Association's 2004 Declaration of Condominium.

59. Article 1, section 10, cl. 1, United States Constitution and article 1, section 10 of the Florida Constitution prohibits Florida from applying §617.0102, Florida Statutes, to retroactively apply ex post fact laws which impair a covenant running with the land such as the Association's Declaration of Condominium.

60. Regardless of legislative intent, the retroactive application of on the aforementioned law violates the federal and state Ex Post Facto clause because its debilitating effects impair a contract.

61. Plaintiff has a clear legal right to relief as the State Court's below orders violate Plaintiff's vested constitutional rights in its Governing Documents.

62. Plaintiffs has a substantial likelihood of success on the merits in that the State Court's orders violate Plaintiff's vested constitutional rights in its Governing Documents.

63. Granting injunction is in the public interest, in that the unconstitutionally impairing vested rights is not in the public interests.

64. Plaintiff has suffered irreparable harm and have no adequate remedy at law.

WHEREFORE, BOCA VIEW CONDOMINIUM ASSOCIATION, INC., respectfully requests that this Court find the Association did not willfully violate Florida Statute Section 718.111(12)(b), and:

A. That this Court declare the rights of the parties;

B. That this Court enter temporary and/or permanent injunctive relief staying the State Court action pending adjudication of this matter;

C. That this Court adjudicate that no records of Association need be produced to Defendants or their attorney.

D. That this Court enter judgment in favor of the Association for their costs and reasonable attorney's fees pursuant to Florida Statute Sections 718.1255 and 718.303 and the Association's governing documents; and

E. That this Court enter a judgment in favor of the Association, granting Association any additional relief which it, in its discretion, deems equitable and appropriate.

Dated:  May 24, 2023

/s/ John R. Sheppard, Jr.
John R. Sheppard, Jr.
Fla. Bar No. 867152
Email: jsheppard@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Northbridge Centre
515 North Flagler Drive, Suite 2100
West Palm Beach, Florida 33401
Telephone:   (561) 802-9044
Facsimile:    (561) 802-9976