UNITED STATES DISTRICT COURT
SOUTHERN DIVISION OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO:  9:23-cv-80820-RLR

BOCA VIEW CONDOMINIUM ASSOCIATION,
INC.,

      Plaintiff,

vs.

ELEANOR LEPSELTER and EDWARD
LEPSELTER,

      Defendant(s).

_____/

## **DEFENDANTS' RULE 11 MOTION FOR SANCTIONS:**

The Defendants, ELEANOR LEPSELTER and EDWARD LEPSELTER, by and through their undersigned counsel, hereby request that this Court sanction Plaintiff, and Plaintiff's counsel, based upon the filing of Plaintiff's "verified" Complaint, as follows:

Pursuant to Rule 11 of the Federal Rules of Civil Procedure:

(b) By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

    (1) *it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation*;

    (2) *the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law*;

    (3) *the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery*; …

(c) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any

CASE NO: 9:23-cv-80820-RLR

attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."

*See* F.R.Civ.P. 11 (2023) (emphasis added).

Plaintiff, and Plaintiff's counsel are, or should be aware (had they performed even a minimum level of pre-suit research) that Plaintiff's claims are **wholly unsupported by the facts and law needed to sustain them**, and that Plaintiff has in fact openly alleged facts establishing that Plaintiff's constitutional challenge to F.S. § 617.1606 is time barred. Despite this, Plaintiff and its counsel's chose to continue prosecuting factually and legally frivolous claims in this matter purely for purposes of acting as vexatious litigants and to cause the Defendants to incur unnecessary attorney's fees to defend against the Plaintiff's baseless claims. This mandates the imposition of sanctions by this Court under Rule 11 of the Federal Rules of Civil Procedure. *See* gen. *Carswell v. Air Line Pilots Ass'n*, 248 F.R.D. 325, 328 (D.D.C. 2008) ("[O]nce the district court finds that a pleading is not well grounded on fact, not warranted by existing law or a good faith argument for the extension, modification[,] or reversal of existing law, or is interposed for any improper purpose, Rule 11 *requires* that sanctions of some sort be imposed." *Rafferty v. NYNEX Corp.*, 314 U.S. App. D.C. 1, 60 F.3d 844, 852 (D.C. Cir. 1995) (internal quotation and citation omitted).").

On May 23, 2023, Plaintiff initiated this action by filing a "Verified" Complaint seeking declaratory and injunctive relief. Plaintiff's filing came after an adverse ruling was entered against the Plaintiff in a State Court proceeding (Palm Beach County Circuit Civil Case No.: 502020CA000251). That adverse ruling (26 pages in total length) found Plaintiff to have violated Florida Statutes § 718.111(12), and upheld the prior rulings of an arbitrator (as rendered on October 25, 2019) on the issue of whether or not the Plaintiff willfully failed to comply with Florida law in refusing access to Plaintiff's records upon the request to inspect them made by ELEANOR LEPSELTER's authorized representative.

After seeking rehearing and/or a new trial arguing that the Court improperly applied F.S. § 617.1606 to the Plaintiff (asserting the same constitutional grounds arguing that application of the statute to the Plaintiff constituted unconstitutional impairment of contract rights), Plaintiff was denied relief, and Plaintiff's requests for stay of Case No.: 502020CA000251 were denied at the trial and appellate levels.

*CASE NO: 9:23-cv-80820-RLR*

In a final attempt to halt the progression of Case No.: 502020CA000251 (and Plaintiff's compliance with mandatory Orders of the State Court compelling access to Plaintiff's records) Plaintiff chose to file its instant Verified Complaint.

However, the Verified Complaint as filed is hopelessly deficient and devoid of merit, is subject to dismissal on multiple grounds, and constitutes vexatious litigation by the Plaintiff where Plaintiff, and its counsel, knew or should have known at all times that the Federal District Court in and for the Southern District of Florida lacked jurisdiction to grant the relief requested by the Plaintiff, that the Plaintiff's constitutional challenge is untimely and timebarred, and that no valid legal basis exists for the relief sought by the Plaintiff (even if jurisdiction did exist for the relief requested).

The Federal District Courts in and for the State of Florida hold that the filing of a timebarred claim, or a claim which is directly at opposite with controlling authority and poses no hope of obtaining a change in the law, may appropriately subject the filing party to sanctions under Rule 11. For purposes of example, see *A Boat 4 Fun, Inc. v. Dream Catcher Marine, LLC*, 2019 U.S. Dist. LEXIS 228543, *11-14 (S.D. Fla. 2019), wherein the Court stated:

> Federal Rules of Civil Procedure 11(b)(1) and 11(b)(3) state: By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(1), 11(b)(3). Additionally, Federal Rule of Civil Procedure 11(c)(1) provides that after the procedural notice requirements are met, an issue not in dispute here, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Fed. R. Civ. P. 11(c)(1). Although Rule 11 plainly empowers a court to sanction parties or counsel, it is an "extraordinary remedy, one to be exercised with extreme caution." *Menendez v. Signature Consultants, LLC*, No. 11-61534-CIV, 2011 U.S. Dist. LEXIS 143344, 2011 WL 6179727, at *1 (S.D. Fla. Dec. 13, 2011). Indeed, "Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) (emphasis in original); *see also* Fed. R. Civ. P. 11. Rule 11 sanctions are proper "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or

(3) when the party files a pleading in bad faith for an improper purpose." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)). "Sanctions are warranted when a party exhibits a 'deliberate indifference to obvious facts,' but not when the party's evidence to support a claim is 'merely weak.'" *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (quoting *Baker v. Adelman*, 158 F.3d 516, 524 (11th Cir. 1998)); *Bathazi v. U.S. Dep't of Homeland Sec.*, 667 F. Supp. 2d 1375, 1378 (S.D. Fla. 2009) (holding that plaintiff's counsel's persistence in continuing to challenge the adjudication process in light of repeated jurisdictional dismissals constituted "deliberate indifference."). "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) (citing *Davis*, 906 F.2d at 535-37). Where no evidence or only "patently frivolous" evidence is offered to support factual contentions, sanctions can be imposed. *See Davis*, 906 F.2d at 537. If, however, the evidence supporting the claim is reasonable, but simply "weak" or "self-serving," sanctions cannot be imposed. *See id.* at 536. Claims with no merit and included solely to bring lawsuits into federal court may warrant Rule 11 sanctions. *See Smith v. Smith*, 184 F.R.D. 420, 423 (S.D. Fla. 1998) (finding Rule 11 sanctions appropriate where claims with no basis were filed in order to bring a lawsuit into federal court). In *Smith*, a federal securities law case, the court found that a plaintiff's claims were sanctionable, in part, because the lawsuit had been filed at least two years after the statute of limitations had expired, and because one of plaintiff's claims was clearly foreclosed by Eleventh Circuit precedent. *Id.* at 422. Indeed, when claims are objectively groundless and a party's motives for bringing such claims are clearly vexatious, Rule 11 sanctions may be warranted. *Eye v. Cohn*, No. 11-CV-61584-KMM, 2011 U.S. Dist. LEXIS 129202, 2011 WL 5508484, at *4 (S.D. Fla. Nov. 8, 2011). Further, continuing to relitigate and reargue unfavorable rulings may constitute sanctionable conduct. *See Langermann v. Dubbin*, No. 14-22531-CIV-KMM, 2014 U.S. Dist. LEXIS 186423, 2014 WL 11429282, at *1 (S.D. Fla. Oct. 16, 2014) (finding that a plaintiff's continuous filing of lawsuits and motions "that require the investment of court time and resources in [an] attempt to relitigate and reargue rulings that have been decided against him" constituted sanctionable conduct."); *see also Palmer v. Wash. Cty.*, 2018 U.S. Dist. LEXIS 219859, *8-10 (N.D. Fla. 2018) (""A district court may impose sanctions pursuant to its inherent authority, 28 U.S.C. § 1927, and under Federal Rule of Civil Procedure 11 if the plaintiff acted in bad faith by pursuing a claim that was plainly barred by existing precedent and there was no reasonable chance of success in changing the law." *Silva v. Pro Transp., Inc.*, 898 F.3d 1335, 1340 (11th Cir. 2018). "Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Defendant requests that the court award it attorney's fees for defending this action pursuant to Fed. R. Civ. P. 11 and enter [*9] an "auto dismiss/auto shred *Chapman* order." (Doc. 4). Defendant asserts it: (1) warned

plaintiff after he moved for the rehearing in the First DCA that continued pursuit of his claim would result in defendant seeking sanctions; and (2) gave plaintiff an opportunity to withdraw his federal complaint. Defendant argues plaintiff's repeated attempts to overturn the state-court judgment recognizing defendant as owner of Acy Road are baseless, and plaintiff's status as a retired attorney provides him with "the training to know of the frivolity of his actions." In response, plaintiff again describes what he sees as the deficiencies in the state-court proceedings and asserts the *Rooker-Feldman* doctrine is not applicable to his claim. He also says the motion for sanctions should be denied because defendant submitted the motion within 21 days of serving it on plaintiff. *See* Fed. R. Civ. P. 11(c)(2) (A motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service[.]"). Defendant argues plaintiff waived the 21-day waiting period because plaintiff reviewed the proposed motion to dismiss and motion for sanctions and directed defendant via email to "[p]lease file your motions." (Doc. 18, p. 5). Plaintiff, however, asserts he did not waive the waiting period, and claims defendant should have sought an express waiver if it intended to move for sanctions before expiration of the 21-day period. (Doc. 20). But for defendant's failure to satisfy the 21-day waiting period, sanctions against plaintiff would be appropriate.").

This action is the latest effort by BOCA VIEW CONDOMINIUM ASSOCIATION, INC. (hereinafter "BV") to harass the Defendants and force them to incur litigation expenses in frivolous litigation based upon completely meritless positions taken by BV. The Defendants are owners of Unit 2S located in Boca View Condominiums, and are thereby Members of the Plaintiff. In February of 2019, Defendants authorized an attorney (Jonathan Yellin, Esq.) to contact BV to make a records inspection request (pursuant to the provisions of F.S. § 718.111(12) on behalf of ELEANOR LEPSELTER, which Jonathan Yellin, Esq. did via correspondence dated February 6, 2019.

After receiving Mr. Yellin's February 6, 2019 correspondence, BV essentially ignored it, and Mr. Yellin, completely. Instead of communicating with Mr. Yellin to schedule an inspection of the records identified in his correspondence, one of the Board Members for BV decided to instruct BV's property manager not to communicate with Mr. Yellin, and to instead communicate directly with ELEANOR LEPSELTER, so as to advise her that an appointment would be set to allow her, and only her, access to the requested records. ELEANOR LEPSELTER forwarded the e-mail she received from BV's property manager to Mr. Yellin, whereafter Mr. Yellin sent a response e-mail directly to BV's property manager indicating that he would be attending the inspection appointment to conduct the records inspection on behalf of ELEANOR LEPSELTER

*CASE NO: 9:23-cv-80820-RLR*

as her authorized representative (as expressly authorized by F.S. § 718.111(12)(b) and (c)(1), Fla. Stat. (2018)).

Upon his arrival on February 25, 2019, Mr. Yellin was told, multiple times, that he would not be allowed access to inspect BV's records as ELEANOR LEPSELTER's authorized representative. BV's on-site agent for the inspection (Giuseppe Marcigliano, the Board Member who decided that Mr. Yellin would not be given access) did not identify why Mr. Yellin was not being provided access, but repeated, multiple times, that Mr. Yellin would not be allowed to inspect anything. After multiple hours passed, Mr. Yellin and ELEANOR LEPSELTER left the appointment, as Mr. Yellin was never allowed to inspect the records as desired by ELEANOR LEPSELTER.

Thereafter, a Petition for Arbitration was filed pursuant to F.S. § 718.1255, which resulted in Orders entered in favor of ELEANOR LEPSELTER finding that BV willfully denied access to her representative (Mr. Yellin), and which a) imposed a monetary fine of $500.00 upon BV, and b) issued a mandatory injunction requiring BV to grant Mr. Yellin access to the records as ELEANOR LEPSELTER'S authorized representative.

Rather than simply granting Mr. Yellin access to the records and paying the fine, BV initiated Palm Beach County Case No.: 502020CA000251, seeking a trial *de novo* to obtain judicial review of the underlying arbitration orders. This procedure is expressly authorized under F.S. § 718.1255 and Chapter 61B-45 of Florida's Administrative Code. BV's claims in Palm Beach County Case No.: 502020CA000251 were ultimately tried before the Court (before the Honorable John S. Kastrenakes), which resulted in the entry of a twenty-six (26) page written ruling finding that BV failed to meet its burden of establishing error on the part of the arbitrator, and which upheld and ratified the arbitrator's October 25, 2019 rulings and findings.

After entry of judgment against it, BV filed an eighty-three (83) page Motion for Rehearing and/or New Trial, raising some seventeen (17) different issues it claimed entitled BV to a new trial, or alternatively to a judgment in favor of BV on some point of fact or law. Of note, issue "G" raised by BV was titled as follows: "The Improper Finding that the Reservation of Power Statute, §617.0102 Applied to the Association where there was no Kaufman Language Constitutes an Impairment of Contract in Violation of Fla. Const. art. I, § 1014, U.S. Const. art. I, § 10, cl. 115, and the Principle of *Pomponio*." Therein, BV asserted the same argument it now seeks to present

to this Court about "impairment of contract" which the Fifteenth Judicial Circuit Court in and for Palm Beach County denied via Order on December 28, 2022.

Having failed in its Circuit Court attempt to obtain a new trial, BV filed a Notice of Appeal on January 26, 2023, thereby initiating Case No.: 4D23-0257, which currently remains pending before Florida's Fourth District Court of Appeal. Therein, BV continues to seek to assert its "impairment of contract" argument, specifically identifying it as an issue before the Fourth District Court of Appeal as part of BV's "Emergency Motion for Review of Stay Order". Though BV's Motion was denied by the Court via Order entered on March 13, 2023 (with BV's rehearing request made thereafter also being denied), BV's Motion expressly stated the following at pages sixteen (16) and seventeen (17) of the Motion: " More substantively, to name a few issues, the predecessor Judge ... *(c)* improperly applied an amended statute to a condominium association that had no *Kaufman* language in its documents leading to the impairment of a contract; …".

Having been unsuccessful in its efforts to obtain a stay, and being under direct Court Order to produce the documents at issue, BV has now filed this action seeking to have this Court review, enjoin, and ultimately reverse, the decision of the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida (essentially asking this Court for the same relief BV has requested from the Circuit Court, and Appellate Court, and which both Courts have as of yet declined to provide).

As noted in the Rule 12 Motion filed by the Defendants, the Plaintiff's Complaint is frivolous, and it is readily apparent that the Complaint ahs been filed for an improper purpose (to harass and cause the Defendants to needlessly incur litigation expenses), seeks relief beyond this Court's jurisdiction, and the claims presented are not supported by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law.

### ISSUES IDENTIFYING FRIVOLITY OF CLAIMS:

### *ISSUE I – WANT OF JURISDICTION BASED UPON ROOKER-FELDMAN DOCTRINE*

First, the Court lacks jurisdiction to entertain the Plaintiff's claims based upon the *Rooker-Feldman* Doctrine. As was succinctly stated in *Woodard v. Dicks (In re Dicks)*, 306 B.R. 700, 702 (M.D. Fla. 2004),

CASE NO: 9:23-cv-80820-RLR

The *Rooker-Feldman* Doctrine is a judge-made doctrine establishing the principle that the lower federal courts have no jurisdiction to review state court judgments. Moore's § 133.30[3][a] at 133-23. It derives from two U.S. Supreme Court cases - - *Rooker v. Fidelity Trust*, 263 U.S. 413, 68 L. Ed. 362, 44 S. Ct. 149 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983). The doctrine is premised on both prudential and statutory grounds. The prudential rationale for the doctrine is the preservation of system consistency. The statutory grounds are: (1) 28 U.S.C. § 1257, which gives the U.S. Supreme Court exclusive federal jurisdiction to review state court judgments, and (2) 28 U.S.C. §§ 1331 and 1334, which define the jurisdiction of the federal district courts as original, not appellate. *Rooker-Feldman*, unlike claims or issue preclusion, is jurisdictional, not waivable, and can be raised sua sponte by the court. "Because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about the jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

*See Id*. at 702.

The *Rooker-Feldman* doctrine was further discussed at length in *Nero v. Mayan Mainstreet INV 1 LLC*, 2014 U.S. Dist. LEXIS 196301, 17-20 (M.D. 2014)[1], wherein the Court stated:

The Supreme Court revisited the Rooker-Feldman doctrine in ExxonMobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). ExxonMobil involved a dispute between ExxonMobil Corp. and Saudi Basic Industries Corp. (SABIC) over royalties charged by SABIC to joint ventures between SABIC and two of ExxonMobil's subsidiaries. Id. at 289. In July 2000, SABIC sued ExxonMobil in Delaware state court seeking a declaratory judgment that the royalties were proper. Id. Two weeks later, ExxonMobil sued SABIC in federal district court in New Jersey, alleging that SABIC overcharged the joint ventures. Id. In January 2002, ExxonMobil answered SABIC's state-court complaint and pled as counterclaims the same claims it had asserted in the federal action. Id. SABIC moved to dismiss the federal case, arguing that it was immune under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. Id. at 289-90. The district court denied SABIC's motion, and SABIC took an interlocutory appeal to the United States Court of Appeals for the Third Circuit. Id. at 290. Meanwhile, in March 2003, the state court action went to trial, where a jury awarded ExxonMobil a verdict of over $400 million. Id. The Third Circuit then remanded SABIC's appeal with instructions to dismiss, holding that the federal district court no longer had subject matter jurisdiction "because ExxonMobil's claims have already been litigated in state court." Id.

The Supreme Court reversed in a unanimous decision, holding that Rooker Feldman did not "vanquish" the district court's jurisdiction after the state court

---

[1] This decision was subsequently cited to by the Courts in the Southern District of Florida, in

*CASE NO: 9:23-cv-80820-RLR*

entered judgment. Id. at 294. In its opinion, the Supreme Court expressed disapproval of what it viewed as a trend in the lower courts of expanding the Rooker-Feldman doctrine "far beyond the contours of the Rooker and Feldman cases." Id. at 283. ***Rooker-Feldman, the Supreme Court said, "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments***." Id. at 284. Rooker-Feldman does not divest federal district courts of jurisdiction "[w]here there is parallel state and federal litigation" and the state court enters judgment first. Id. at 292. Nor, the Supreme Court explained, does it apply simply because a party "attempts to litigate in federal court a matter previously litigated in state court." Id. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. at 293 (internal quotations and citations omitted).

> ***The Supreme Court explained in ExxonMobil that the Rooker-Feldman doctrine applies when (1) the plaintiff lost in state court; (2) the plaintiff complains about an injury "caused by the state-court judgment[]"; (3) the state-court case ended before the plaintiff brought the federal case; and (4) the plaintiff "invite[s]" the federal court to "review or reject[]" the state court judgment***. 544 U.S. at 284. …

*See Id.* at 17-20.

In a 2019 decision rendered by the Southern District Court, the Court dismissed a Plaintiff's Third Amended Complaint, and action, applying the *Rooker-Feldman* doctrine and directly citing to the Middle District Court's decision in *Nero v. Mayan Mainstreet INV 1 LLC*. Specifically, in *Coles v. Bank of Am., N.A.*, 2019 U.S. Dist. LEXIS 84718 (S.D. Fla. 2019), the Court held as follows:

> "The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam). The doctrine, named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). "*Rooker* and *Feldman* exhibit the limited circumstances in which

*CASE NO: 9:23-cv-80820-RLR*

[the Supreme Court's] appellate jurisdiction over state-court judgments precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Id.* at 291 (internal citation omitted). The doctrine bars federal claims raised in the state court and claims "inextricably intertwined" with the state court's judgment. *See Feldman*, 460 U.S. at 482 n.16. "***A claim is 'inextricably intertwined' if it would 'effectively nullify' the state court judgment, or [if] it 'succeeds only to the extent that the state court wrongly decided the issues*****.**'" *Casale*, 558 F.3d at 1260 (quoting *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001)) (internal quotation marks omitted); *see also Springer v. Perryman*, 401 F. App'x 457, 458 (11th Cir. 2010) (per curiam).

…

Second, the Court finds that Plaintiff's suit is inextricably intertwined with the state court judgment. Plaintiff's fraud claim would have constituted an equitable defense to foreclosure before the state court. *See* 2018 U.S. Dist. LEXIS 183192, [WL] at *6 (citing *Najera v. NationsBank Tr. Co., N.A.*, 707 So. 2d 1153, 1155 (Fla. 5th DCA 1999)). Had she raised it at that time, she may not have lost her home. *Id.* This Court cannot retroactively provide relief for her failure to do so.

***Plaintiff also seeks damages that would "effectively nullify the state court judgment and necessarily hold that the state court wrongly decided the issues.***" 2018 U.S. Dist. LEXIS 183192, [WL] at *7 (citing *Casale*, 558 F.3d at 1260); *see also Nivia v. Nation Star Mortg., LLC*, 620 F. App'x 822, 825 (11th Cir. 2015) (per curiam) ("The inquiry is whether either the damages award would annul the effect of the state court judgment or the state court's adoption of the legal theory supporting the award would have produced a different result."), *cert. denied Nivia v. Aurora Loan Servs., LLC*, 136 S. Ct. 909, 193 L. Ed. 2d 793 (2016). Plaintiff seeks compensation for lost equity and future equity in the house, HAMP payments, and inspection fees. These are identical to the damages sought and rejected in *Captain*, 2018 U.S. Dist. LEXIS 183192, 2018 WL 5298538, at *7. ***Here, as there, success on the merits would financially restore her loss—which, for practical purposes, would void the result that the state court reached.***

Plaintiff tries to dodge this bullet by arguing that *Rooker-Feldman* does not bar a federal claim simply because it may yield findings inconsistent with a state court judgment. *See Exxon*, 544 U.S. at 293 (noting that jurisdiction exists "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which [s]he was a party" (internal quotations omitted)). Plaintiff's claims do not fit into this exception because such cases are factually distinguishable. In *Arthur v. JP Morgan Chase Bank*, for example, plaintiff sought money damages "for alleged criminal and fraudulent conduct in the *generation* of foreclosure-related documents"—the physical creation of fraudulent documents used to foreclose on the home. 569 F. App'x 669, 675 (11th Cir. 2014) (emphasis in original). No such allegation exists

*CASE NO: 9:23-cv-80820-RLR*

here. Plaintiff also does not seek damages based on Defendant's wrongful conduct during the state court proceedings, *see Kohler v. Garlets*, 578 F. App'x 862, 864 (11th Cir. 2014), or claim a broader injury emanating from the state court judgment, *see Nero v. Mayan Mainstreet INV 1 LLC, et al.*, No. 6:14-cv-1363-Orl-40TBS, 2014 U.S. Dist. LEXIS 196301, 2014 WL 12610668 at *11-12 (M.D. Fla. Nov. 13, 2014) (asserting RICO claims based on fraudulent mortgage assignments).

> ***As Plaintiff seeks solely to restore her financial losses, the Court concludes that a judgment in her favor would necessarily annul the state court judgment. The suits are therefore inextricably intertwined***.

> *See Coles v. Bank of Am., N.A.*, 2019 U.S. Dist. LEXIS 84718, *11-13 (S.D. Fla. 2019).

This action is exactly the kind precluded by the *Rooker-Feldman* doctrine. It has been bought by a State Court loser[2] who now claims "injury" (contractual impairment) caused by the State Court judgment entered against it. This case was brought after a final trial in the State Court action concluded (and a Motion for Rehearing and/or Motion for New Trial was denied), and BV is actively seeking to have this Court review and reject the findings of the State Court judgment entered against it. Lastly, BV's requests for relief are directly at odds with the underlying State Court judgment[3].

As stated by the Federal District Court in and for the Northern District of Illinois in *Cain v. Ryan*, 171 F. Supp. 2d 813, 817 (N.D.Ill. 2001),

> Although a federal district court has jurisdiction to consider the constitutionality of the Act and the procedures applied in selecting sex offenders for indefinite commitment, ***it has no jurisdiction to review the judgment of a state court in a particular case***. While a district court can restrain state officials responsible for enforcement of an unconstitutional statute on the theory that they lack authority to violate federal law, *see Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908); *David B. v. McDonald*, 156 F.3d 780, 783 (7th Cir. 1998), ***it cannot similarly declare a state-court judgment void as unconstitutional. The Rooker-Feldman doctrine, named for Rooker v. Fidelity Trust Co., 263 U.S. 413, 68 L. Ed. 362, 44 S. Ct. 149 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983), holds that***

---

[2] See Complaint at paragraphs 13-15.

[3] Plaintiff blatantly alleges facts which contradict the State Court's judgment in paragraph thirteen (13), and then ask this Court to determine error was committed by the State Court and to enter an alternate judgment in favor of the Plaintiff that "no records of Association need be produced to Defendants or to their attorney".

> ***federal courts other than the United States Supreme Court have no jurisdiction to review state-court judgments, even for unconstitutionality, unless Congress has expressly authorized them to do so.***
>
> The Rooker-Feldman doctrine is a consequence of the limited jurisdiction of lower federal courts, which, unlike the Supreme Court, may exercise only power granted to them by Congress. **Rooker made explicit that this power does not include the power to review state-court judgments**. Affirming the dismissal of a suit seeking to have the judgment of an Indiana court declared void as unconstitutional, the Supreme Court stated: "If the [state-court] decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication." *Rooker*, 263 U.S. at 415.

*See Id*. at 817.

As stated by the United States Court of Appeals for the Seventh Circuit in *Deimler v. Pease*, 1990 U.S. App. LEXIS 20653 (7th Cir. 1990),

> However, regardless of the merits of any claim, there is another doctrine which requires the dismissal of this case. ***A federal district court generally has no jurisdiction to review state judicial proceedings. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Lynk v. LaPorte Superior Court No. 2, 789 F.2d 554, 563 (7th Cir. 1986). This is true even if those proceedings are alleged to be in violation of the federal Constitution. Feldman, 460 U.S. at 485 (quoting Doe v. Pringle, 550 F.2d 596, 599 (10th Cir. 1976)); Worldwide Church of God v. McNair, 805 F.2d 888, 891 (9th Cir. 1986). An allegedly unconstitutional law enforced by a state court may be challenged in federal district court, but a court's particular application of the law to an individual cannot be challenged in federal district court. Id.; Feldman, 460 U.S. at 485***. For example, a district court would have jurisdiction over a claim, attacking on constitutional grounds, a state law forbidding a mother from presenting evidence in support of her right to custody. There is, though, no jurisdiction over a claim that, despite state procedures to the contrary, a mother was denied an opportunity to present her evidence in support of custody. The latter is the type of claim Mary Deimler brings. Both plaintiffs are essentially seeking review of a state court proceeding. This court has no jurisdiction over such a claim.

*See Id*. at 7-9.

Finally, as stated in *Palmer v. Wash. Cty.*, 2018 U.S. Dist. LEXIS 219859, *3-8 (N.D. Fla. 2019),

The *Rooker-Feldman* doctrine "is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012) (citation omitted). The doctrine derives from 28 U.S.C. § 1257, which "vests authority to review a state court's judgment solely in [the Supreme] Court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). It applies to "cases brought by state-court losers complaining of injuries [*4] caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. The doctrine "operates as a bar to federal court jurisdiction where the issue before the federal court was 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" *Alvarez*, 679 F.3d at 1262-63 (*quoting Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)).

This case must be dismissed for lack of jurisdiction based on the *Rooker-Feldman* doctrine, under which plaintiff's allegations and prayer for relief clearly fall. Plaintiff asks this court to review whether a state-court judge erred by failing to hold an evidentiary hearing on the Rule 1.540(b)(4) motion.**3** (Doc. 6, p. 2). Moreover, plaintiff's complaint expressly asks the court to vacate judgments by the state trial and appellate courts.

Plaintiff attempts to evade *Rooker-Feldman* in multiple ways, all of which are unavailing. First, plaintiff claims he did not have an opportunity to raise his due process claim in state court. Plaintiff, however, could have: (1) [*5] argued, either within the Rule 1.540 motion or at the hearing on the Rule 1.540 motion, that due process entitled him to an evidentiary hearing; and (2) argued in his appeal that Judge Register's failure to hold an evidentiary hearing denied plaintiff due process. In fact, in his motion for rehearing to the First DCA, plaintiff did raise a due process argument. *See* (Doc. 1-1, p. 60-61) ("The Appellant contends, when the trial judge applied the wrong standard in denying the 1.540(b)(4) motion, and when the appellate court *per curiam* affirmed this decision, these facts constitute a denial of due process. . . . [D]enying the Plaintiff the right to a formal evidentiary hearing, with the right to prove the summary judgment was void for lack of subject matter jurisdiction, is not simply the denial of a procedural right, it is a forfeiture of the Appellant's property without due process of law."). Plaintiff, therefore, had every opportunity to litigate his purported federal claim in state court. *See Wood v. Orange Cty.*, 715 F.2d 1543, 1547 (11th Cir. 1983) (*Rooker-Feldman* applies "only where the plaintiff had a reasonable opportunity to raise his federal claim in state proceedings.").

Next, plaintiff suggests he is challenging a rule. *See Skinner v. Switzer*, 562 U.S. 521, 532, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011) ("[A] state-court decision [*6] is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action."). He says this federal

court "has subject matter jurisdiction to construe the *Southern Bell* rule and to decide whether Judge Register's disregard of the rule constitutes a denial of due process." (Doc. 6, p. 6); *see Southern Bell Tel. & Tel. Co. v. Welden*, 483 So. 2d 487 (Fla. 1st DCA 1986) (holding that "[i]n circumstances such as this where the moving party's allegations raise a colorable entitlement to rule 1.540(b)(3) relief, a formal evidentiary hearing on the motion, as well as permissible discovery prior to the hearing, is required").

Plaintiff, however, is not challenging the validity of the "*Southern Bell* rule." Instead, he is contesting Judge Register's finding that plaintiff did not raise a colorable entitlement to relief and no evidentiary hearing was necessary on the Rule 1.540 motion. A challenge to a state judge's application of a rule—such as the one raised by plaintiff—is foreclosed by the *Rooker-Feldman* doctrine. *Cf. Helton v. Ramsay*, 566 F. App'x 876, 877-78 (11th Cir. 2014) (holding due process claim based on allegations "Florida officials erred in denying DNA testing under the standard set forth in Florida Rule of Criminal Procedure 3.853" was barred by *Rooker-Feldman* because, "[b]y framing his claim as an as-applied challenge to the [*7] application of the state's post-conviction DNA testing procedure to the facts of his case, he invited federal court review and reversal of a state court decision"); *Nicholson v. Shafe*, 558 F.3d 1266, 1271 (11th Cir. 2009) (noting in *Feldman*, "[t]he Supreme Court drew a distinction between general challenges to the constitutionality of state bar rules and challenges to state court decisions in particular cases that raise federal constitutional questions, finding that a federal district court has jurisdiction to consider the former but not the latter").

Curiously, plaintiff claims he is not a state-court loser. (Doc. 6, p. 7). The state court, however, entered final judgment in favor of defendant and denied plaintiff's Rule 1.540 motion. Any reasonable evaluation of the state-court proceedings leads to the conclusion plaintiff is a two time "state-court loser."

Plaintiff also suggests "[t]his case does not represent a 'prohibited appellate review' . . . because . . . Judge Register declined to rule on the merits of the case: whether the summary judgment and final judgment were void, for lack of subject matter jurisdiction." (Doc. 6, p. 7). Contrary to plaintiff's suggestion, the order denying the Rule 1.540 motion reached the merits of the motion and indicated [*8] the judge found no basis for vacating the previously-entered judgment. Accordingly, the judge determined plaintiff's jurisdictional challenge lacked merit. Because plaintiff's due process claim would succeed only to extent the state court wrongly decided the issues, the claim should be dismissed for lack of jurisdiction. *See Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) ("A federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'") (*quoting Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987)).

*See Palmer v. Wash. Cty.*, at *3-8.

*CASE NO:  9:23-cv-80820-RLR*

As this Court lacks jurisdiction over the claims at issue, Plaintiff and Plaintiff's counsel must be sanctioned under Rule 11 for bring claims which they knew or should have known could not be asserted before this Court based upon *Rooker-Feldman* and a complete want of jurisdiction.

### ISSUE II – CLAIMS ARE TIME-BARRED:

Beyond the jurisdictional deficiencies in the Plaintiff's Complaint, Plaintiff's claims for relief completely fail to state valid and colorable causes of action. Firstly, the Plaintiff's claims are barred by the applicable statute(s) of limitation, as established on the face of Plaintiff's Complaint. The Plaintiff's allegations in paragraph forty-two (42) establish this, wherein Plaintiff alleges:

> 42. **When the legislature subsequently passed §617.1606 in 2010 or SB630 effective July 1, 2021, it removed the Association's power, which removal conflicted with the year 2004 version of Chapter 718 incorporated into its Declaration/covenants because there is no *Kaufman* language in said Declaration**. The statute removing that power did not evidence the legislature's intent to make it retroactive, so it is not retroactive and does not apply to the Association. Even if it were retroactive, and supported by §617.0102, it would be an unconstitutional impairment of contract because it is substantive and it fails to meet the *Pomponio* test. (emphasis added).

This allegation acknowledges that the statutory revision which Plaintiff claims unconstitutionally "impaired" its "contractual rights" was enacted **more than twelve (12) years before this action was initiated**. As no applicable federal statute of limitation applies to actions for declaratory relief, Federal Courts apply the applicable State statute of limitation as necessary. In Florida, a four year statute of limitations applies to an action for declaratory relief. As stated in *John Hancock Life Ins. Co. v. Friedman*, 2021 U.S. Dist. LEXIS 164184, *7-9 (S.D. Fla. 2021),

> As I have previously explained to the Parties, although Katz brings Count I under Florida's declaratory judgment statute, I will construe it in this action as if Katz brings it under the federal Declaratory Judgment Act because federal courts apply federal law to procedural matters. *See Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 880-81 (11th Cir. 2016). ***Courts have found that the applicable statute of limitations for a federal declaratory judgment claim is that which applies to the substantive claims underlying the declaratory judgment claim***. *See, e.g., Intl Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997); *Algrant v. Evergreen Valley Nurseries Ltd P'ship*, 126 F.3d 178, 181 (3d Cir. 1997). … Nevertheless, despite the fact that neither Katz nor GlobalVest convincingly characterizes the claim underlying Katz's request for a declaratory judgment, I find it appropriate on summary judgment to identify and apply the proper statute of limitations. Although Katz urges me to analyze her claim similarly to one involving real property, ***there is no real property at issue in this action, and therefore I will identify the applicable statute of limitations within***

*section 95.11 of the Florida Statutes, which sets forth "[l]imitations other than for the recovery of real property." See Fla. Stat. § 95.11. Having carefully reviewed that statute and the briefing, and given the Parties' difficulty in characterizing the underlying claim, I will apply the four-year statute of limitations applicable to "[a]ny action not specifically provided for in these statutes," see Fla. Stat. § 95.11(3)(p).* Next, I must determine when this four-year period began to run in this case. "***Generally, 'the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues.' . . . 'A cause of action accrues when the last element constituting the cause of action occurs.***'" *Kipnis v. Bayerische Hypo-Und Vereinsbank AG*, 202 So. 3d 859, 861 (Fla. 2016) (citations omitted). I agree with GlobalVest that the four-year limitations period began to run in 2004, as that is the year in which the allegedly forged change of ownership form was signed and processed by Plaintiff, and Katz seeks a finding that her signature on that form was forged and that the form is thus void. ***Because Katz failed to bring her declaratory judgment claim within four years of 2004, the claim is time-barred. Therefore, I will grant GlobalVest's Motion for Summary Judgment and, as a result, I will deny Katz's Motion for Final Summary Judgment.")*** (emphasis added); *see also Pozo v. Sunset Real Estate Partners*, 322 So.3d 1236 (Fla. 3d DCA 2021) ("Affirmed. See Fla. R. Civ. P. 1.100(a) ("If an answer or third-party answer contains an affirmative defense and the opposing party seeks to avoid it, the opposing party must file a reply containing the avoidance." (emphasis added)); ***§ 95.11(3)(p), Fla. Stat. (2020) (providing that the statute of limitations is four years for "[a]ny action not specifically provided for" in the statute); Manatee Cty. v. Mandarin Dev., Inc., 301 So. 3d 372, 375-76 (Fla. 2d DCA 2020) ("Declaratory judgment actions are subject to a four-year statute of limitations." (citing § 95.11(3)(p), Fla. Stat. (2015))*** )) (emphasis added); *See* § 95.11(3)(p), Fla. Stat. (2010) (WITHIN FOUR YEARS. — … Any action not specifically provided for in these statutes.").

*See Id*. at 7-9.

Had the Plaintiff legitimately believed it had a legally viable basis to contest the constitutionality of the Florida Legislature's enactment of F.S. § 617.1606, it was incumbent upon the Plaintiff to assert its rights in a timely fashion, which it failed to do. Plaintiff's cause of action asserted herein had to be brought within four (4) years of the enactment of F.S. § 617.1606, as upon enactment it became applicable to all Florida not for profit corporations. *See gen. Harris v. Aberdeen Prop. Owners Ass'n*, 135 So. 3d 365, 368 (Fla. 4th DCA 2004) ("A cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (2005). As this court has noted, "[p]ut another way, the limitations period begins to run when the action 'may be brought.'" *City of Riviera Beach v. Reed*, 987 So. 2d 168, 170 (Fla. 4th DCA 2008) (citing *State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So. 2d 818, 821 (Fla. 1996)).").

*CASE NO: 9:23-cv-80820-RLR*

As recently held by the Middle District Court in *Williams v. Prof'l Mktg. Mgmt., Inc.*, 2023 U.S. Dist. LEXIS 99394 (M.D. Fla. 2023), where a party fails to timely bring a cause of action raising a constitutional question, the claim may properly be dismissed with prejudice as time barred.

> Even if Ms. Williams could allege that PMM acted under color of state law, the § 1983 claims would still be dismissed as untimely. In cases arising under § 1983, a court may *sua sponte* consider a statute-of-limitations defense if that defense is apparent from the face of the complaint. *Clark v. Ga. Pardons and Parole Bd.*, 915 F.2d 636, 640 n.2 (11th Cir. 1990). Where Florida is the forum state, § 1983 plaintiffs have four years to file suit. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). The statute of limitations begins to run when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996). Ms. Williams submitted her complaint on May 25, 2023. (Doc. 1 at 11). The eviction allegedly took place in August 2018, over four years before the complaint was filed. Ms. Williams does not allege any facts that would support tolling the statute of limitations. *See Joseph v. State Mut. Life Ins. Co. of Am.*, 196 F. App'x 760, 761 (11th Cir. 2006) (affirming dismissal upon screening because, "[i]n the absence of an applicable toll," plaintiff's claim was time barred). Consequently, the § 1983 claims are untimely and must be dismissed. *See Johnson v. Greaves*, 366 F. App'x 976, 978 (11th Cir. 2010) ("The expiration of the statute of limitations is an affirmative defense the existence of which warrants a dismissal as frivolous.").

*See Id.* at *2-3.

By having brought a long time-barred claim solely as a last ditch effort to halt State Court proceedings, Plaintiff and Plaintiff's counsel must be sanctioned under Rule 11[4].

### *ISSUE III – NO "PROPERTY RIGHT" TO BE IMPAIRED, AND UNITED STATE CONSTITUTION DOES NOT BAR AMENDMENT OF STATUTES GOVERNING CORPORATE ORGANIZATION OR OPERATION WHERE LEGISLATURE EXPRESSLY RESERVES POWER TO AMEND OR REPEAL AT ITS PLEASURE:*

In addition to being a long time-barred claim, BV's requests for relief fail to state valid causes of action, and directly turn a blind eye to on point and controlling legal precedent. BV's

---

[4] Plaintiff's claim in count II for injunctive relief is entirely derivative of Count I, and relies upon an affirmative declaration as to the unconstitutionality of F.S. § 617.1606. As Count I is timebarred, Count II fails thereupon as a matter of law, and is equally as frivolous as the claim asserted in Count I.

entire argument regarding its alleged "property rights" misses the mark, attempts to misconstrue Florida state statutes enacted to govern the rights <u>of Members</u> (not the rights of a corporation), and openly ignores more than a century of binding law.

As stated by the First District Court of Appeal in *Florida Tel. Corp. v. State*, 111 So. 2d 677, 679-680 (Fla. 1st DCA 1959):

The pertinent part of Section 608.39 provides:

"(1) * * * The stock book or stock lists shall be open for at least three business hours each business day for inspection by any judgment creditor of the corporation or any person who shall have been for at least six months immediately preceding his demand a record holder of not less than one per cent of the outstanding shares of such corporation, or by any officer, director,  [*679]  or any committee or person holding or authorized in writing by the holders of at least five per cent of all its outstanding shares. Persons so entitled to inspect stock books or stock lists may make extracts therefrom.

"(2) If any officer or agent of any such corporation shall willfully neglect or refuse to make any proper entry in the stock book, or shall neglect or refuse to exhibit any stock book, or to allow it to be inspected and extracts taken therefrom as provided in this section, he and the corporation shall each forfeit and pay to the party injured a penalty of fifty dollars for every such neglect or refusal, and all damages resulting to him therefrom.

"(3) It shall be a defense to any action under this section that the person suing has used or purposes to use the information so obtained otherwise than to protect his interest in the corporation or has within two years sold or offered for sale any list of stockholders of such corporation or any other corporation, or has aided or abetted any person in procuring any stock list for any such purpose."

An alternative writ of mandamus issued, to which the respondent filed a return. Respondent's return sought, *inter alia,* to defend on the ground that the subject was res judicata by virtue of the final denial of an injunction that was sought by the relator against the respondent in a separate action and in another forum. The allegations of the return setting up this defense were stricken on motion of the relator. The primary issue made by the petition and return in allowable form was whether relator desired the information requested for the purpose of protecting its interest in the respondent corporation. Evidence was presented before the trial judge and upon final hearing the judgment in question was entered and peremptory writ issued.

***Respondent seeks reversal on five grounds: First, that Section 608.39 is unconstitutional***; *second,* that the subject is res judicata; *third,* that the trial court improperly interpreted that section; *fourth,* that the evidence precluded issuance of the writ; *fifth,* that certain evidence was improperly excluded.

*CASE NO: 9:23-cv-80820-RLR*

Respondent insists that it was and remains relator's object to use the information in order to purchase stock in Florida Telephone Corporation and thereby obtain control of it, and that relator intends to circularize the stockholders and otherwise consult with them in such manner as to cause them to become dissatisfied with the present corporate management, and by that means to dissuade them from purchasing further securities and stock of the respondent corporation in the event the same should be offered for sale. Respondent excepts to the fact that the relator did not state its specific purpose for securing the information and simply alleged that its purpose was to protect its interest as owner of more than one per cent of the outstanding stock. Such argument may have merit in the aspect of what may be best for the protection of the management in their individual capacities, but the statute must be interpreted as having been designed for the protection and benefit of the stockholders holding the requisite number of shares.

*Being creatures of statute, corporations are amenable to all reasonable regulations imposed by statute, both as to their internal operation and as to the rights of those who own them, their stockholders.*

*The mandatory provisions of the statute in question amplify and expand the common-law inspection rights of the stockholder*, but do not withdraw the latter. Such an intention if contemplated must be unequivocally stated. City of Hialeah v. State ex rel. Morris, 136 Fla. 498, 183 So. 745. In Soreno Hotel Co. v. State ex rel. Otis Elevator Co., 107 Fla. 195, 144 So. 339, 340, it is said:

*"It is almost uniformly held that statutes, giving the right of inspection to stockholders of the books and records of private corporations, do not abridge the right as it existed at common law, but rather enlarges and extends it by removing some of the common-law limitations." (Citing authorities.)*

*The corporate books and property are in reality the property of its shareholders, and the basis of the right is ownership and the concomitant necessity for self-preservation. 13 Am.Jur., Corporations, § 433; Fletcher, Vol. V, Corporations, § 2213.* At common law any shareholder had the right to examine all the books of a corporation at reasonable times and places and for proper purposes. …

*See Id*. at 678-680.

The foregoing is relevant as, under Florida law, the "records" of the Plaintiff are the property of the Members of the Plaintiff, which expressly includes these Defendants. As such, in no way could BV possess a protected "property right" to deny access to those records where a request for inspection is made by a Member of BV.

As to BV's assertion that some "contract right" existed which provided it the ability to deny access to its own Members where they sought to review BV's business records, this argument

fails entirely as the alleged "contract right" derives from the existence of F.S. § 617.1602, which per F.S. § 617.0102 was at all times subject to amendment or repeal at any time by the Florida legislature with such amendment or repeal being immediately and automatically applicable to BV. By way of Florida Senate Bill 1460 passed into legislation in 1990, Florida enacted its modern "Florida Not For Profit Corporation Act". At the time of the Act's creation F.S. § 617.0102 was expressly enacted, which reserved to the legislature the power to "amend or repeal all or part of this act at any time". Per the newly enacted statute, "… *all domestic and foreign corporations subject to this act shall be governed by the amendment or repeal*." See § 617.0102, Fla. Stat. (1990) (emphasis added). Prior to the enactment of the modern Florida Not For Profit Corporation Act, existing not for profit corporations were subject to regulation under the prior sections of Florida Statutes Chapter 617, and certain provisions of Florida Statues Chapter 607, which included a similar provision reserving the same powers of amendment or repeal to the legislature. As held by the Court in *Hopkins v. Vizcayans*, 582 So. 2d 689, 692 (Fla. 3d DCA 1991)[5]:

> ***Appellees contend that section 617.017 is inapplicable because it was not in force when the Foundation was incorporated in 1979. They also argue that application of section 617.017 impairs vested contract rights created by the Foundation's Articles of Incorporation and protected by the Federal and Florida constitutions. U.S. Const. Art. I, § 10, cl. 1; Art. I, § 10, Fla. Const. We disagree. Section 607.411, Florida Statutes (1989), reserves to the Legislature "the power to prescribe such regulations, provisions and limitations as it may deem advisable, which regulations, provisions, and limitations shall be binding upon any and all corporations subject to the provisions of this chapter, and the Legislature shall have the power to amend, repeal, or modify this chapter at pleasure." Section 607.411 is applicable to chapter 617 corporations. See § 607.007, Fla. Stat. (1975). The reservation of power is part of the corporate "contract,"*** *Aztec Motel, Inc. v. State ex rel. Faircloth,* 251 So. 2d 849, 852 (Fla. 1971) ("Once a charter is granted a corporation, the charter becomes a contract and the law in force at the time of such a contract enters into it."), ***and renders the corporation subject to the provisions of the chapter as amended. See Florida Telephone Corp., 111 So.2d at 679 (corporations are created by statute and are "amenable to all reasonable regulation imposed by statute.").*** Any interest in the amendment procedure created by the Foundation's articles is subject to change in the event the legislature imposes reasonable regulations.
>
> *See Id*. at 692 (emphasis added).

---

[5] Review denied by the Supreme Court in 1991 via *Vizcayans v. Hopkins*, 592 So.2d 683 (Fla. 1991).

CASE NO:  9:23-cv-80820-RLR

     *Hopkins v. Vizcayans* dealt with a challenge to a not for profit corporation's amendment of its articles of incorporation completed pursuant to governing provisions of F.S. § 617 which were enacted after the corporation was formed and its charter was issued. The constitutional challenge arose from an argument that as the statute utilized to amend the articles of incorporation was enacted after formation of the corporation, and as such it could not be applied else it would impair vested contractual rights under the corporation's charter. In disagreeing, the Third District Court of Appeal expressly held that the reservation of power of amendment or repeal to the State "… is part of the corporate "contract," *Aztec Motel, Inc. v. State ex rel. Faircloth,* 251 So.2d 849, 852 (Fla. 1971) ("Once a charter is granted a corporation, the charter becomes a contract and the law in force at the time of such a contract enters into it."), and renders the corporation subject to the provisions of the chapter *as amended*." See Id. (emphasis added).

     **BV, by its voluntarily incorporation as a not-for-profit corporation in 2004[6], subjected its governance to the laws of the State of Florida governing not for profit corporations. This expressly included the powers retained by the State as illustrated in F.S. § 617.0102, which provided that any portion of Chapter 617 could be amended or repealed at any time, and any such amendment would automatically govern BV. This became part of BV's corporate contract**. The exercise of this power by the legislature in 2010 to enact F.S. § 617.1606 cannot, as a pure matter of law, constitute an impairment or deprivation of a constitutionally protected "property right", as a) BV's corporate contract always provided for the right of the legislature to alter or amend Chapter 617 with such amendment governing BV's operations immediately, and b) F.S. § 617.1606 did not divest BV of any "property right", but rather clarified that other sets of statutes enacted by the legislature (under Chapter 718) would thereafter be the only statutory provisions governing the rights of BV's Members to inspect BV's records. By the express language of F.S. 617.1606 the legislature made its purpose and intentions clear: from that point forward, F.S. § 617.1601 through F.S. § 617.1605 would not apply to a not

---

[6] Per F.S. § 718.111(1)(a) as it existed in 2004, Plaintiff's predecessor in interest (its developer) had the choice of forming as a for profit, or a not for profit, corporation. A not for profit corporation governed by F.S. § Chapter 617 was chosen.  Per BV's Articles of Incorporation: "**We, the undersigned, hereby associate ourselves together for the purpose of becoming a corporation not for profit under the laws of the State of Florida, by and under the provisions of the statutes of the State of Florida, providing for the formation, liability, rights, privileges and immunities of a corporation not for profit**."

CASE NO:  9:23-cv-80820-RLR

for profit corporation which operated as a condominium association and which was also governed by F.S. Chapter 718. Despite BV's best efforts to conflate the provisions of F.S. § 617.1602 as a "property right" that "runs with the land", the argument is completely nonsensical. Moreover, BV's attempt to argue that it possessed a "contract right" free from any further amendment, revocation, or "impairment" based upon the existence of F.S. § 617.1602 at the time of BV's incorporation in 2004 ignores the existence of F.S. § 617.1602, and over a hundred years of settled case law.

Under applicable law, the Florida legislature's exercise of its powers to revise existing statutes governing the operation of domestic Florida not for profit corporations is *per se* presumed to be a reasonable and valid[7]. **BV has not even argued anywhere within its Complaint that the exercise of the legislature's powers of amendment to enact F.S. § 617.1606 was "not reasonable"**. Moreover, BV's arguments relate to the alleged "impairment" of "vested contract rights", but intentionally ignore the holding of *Hopkins v. Vizcayans*, as well as the holding of the United States Supreme Court in *Miller v. State*, 82 U.S. 478 (1872), wherein the Court held as follows:

> Corporate franchises, granted to private corporations, if duly accepted by the corporators, partake of the nature of legal estates, and the grant, under such circumstances, if it be absolute in its terms, and without any condition or reservation, importing a different intent, becomes a contract within the protection of that clause of the Constitution which ordains that no State shall pass any law impairing the obligation of contracts. ***Charters of private corporations are regarded as executed contracts between the State and the corporators, and the rule is well settled that the legislature, if the charter does not contain any reservation or other provision modifying of limiting the nature of the contract, cannot repeal, impair, or alter such a charter against the consent or without the default of the corporation, judicially ascertained and declared. Subsequent legislation, altering or modifying such a charter, where there is no such reservation, is plainly unauthorized, if it is prejudicial to the rights of the corporators, and was passed without their assent. Where such a provision is***

---

[7] *See gen Lane v. Chiles*, 698 So.2d 260 (Fla. 1997) ("***As the trial court explained in its order, an analysis of the constitutionality of Article X Section 16 must begin with the proposition that all legislative enactments are presumed to be valid***. State v. Kinner, 398 So. 2d 1360 (Fla. 1981). ***A party challenging the constitutionality of an enactment has a heavy burden to show that it is invalid.*** Village of North Palm Beach v. Mason, 167 So. 2d 721 (Fla. 1964). ***Generally, a state statute must be upheld if it meets the rational relationship test; that is, if there is any reasonable relationship between the act and the furtherance of a valid governmental objective***. *Fraternal Order of Police v. Dep't of State*, 392 So. 2d 1296 (Fla. 1980); *Johns v. May*, 402 So. 2d 1166 (Fla. 1981)) (emphasis added).

CASE NO:  9:23-cv-80820-RLR

*incorporated in the charter, it is clear that it qualifies the grant, and that the subsequent exercise of that reserved power cannot be regarded as an act within the prohibition of the Constitution.* Such power also, that is the power to alter, modify, or repeal an act of incorporation, is frequently reserved to the State by a general law applicable to all acts of incorporation, or to certain  classes of the same, as the case may be; in which case it is equally clear that the power may be exercised whenever it appears that the act of incorporation is one which falls within the reservation, and that the charter was granted subsequent to the passage of the general law, even though the charter contains no such condition, nor any allusion to such a reservation.

*See Miller v. State*, 82 U.S. 478, 488-489 (1872) (emphasis added).

The Supreme Court's holding in *Miller v. State* was cited and re-affirmed in the later decision of *Looker v. Maynard*, 179 U.S. 46 (1900), wherein the Court held as follows:

The single question in this case is whether a power, reserved by the constitution of a State to its legislature, to alter, amend or repeal future acts of incorporation, authorizes the legislature, in order (as declared in the title of the statute of Michigan now in question) "to secure the minority of stockholders, in corporations organized under general laws, the power of electing a representative membership in boards of directors," to permit each stockholder to cumulate his votes upon any one or more candidates for directors.

By the decision in the leading case of Dartmouth College v. Woodward, 4 Wheat. 518, it was established that a charter from the State to a private corporation created a contract, within the meaning of the clause in the Constitution of the United States forbidding any State to pass any law impairing  the obligation of contracts; and consequently that a statute of the State of New Hampshire, increasing the number of the trustees of Dartmouth College as fixed by its charter, and providing for the appointment of a majority of the trustees by the executive government of New Hampshire, instead of by the board of trustees as the charter provided, was unconstitutional and void.

*Mr. Justice Story, in his concurring opinion in that case, after declaring that in his judgment it was "perfectly clear that any act of a legislature which takes away any powers or franchises vested by its charter in private corporation, or its corporate officers, or which restrains or controls the legitimate exercise of them, or transfers them to other persons, without its assent, is a violation of the obligations of that charter," took occasion to add: "If the legislature mean to claim such an authority, it must be reserved in the grant."* 4 Wheat. 712.

*After that decision, many a State of the Union, in order to secure to its legislature the exercise of a fuller parliamentary or legislative power over corporations than would otherwise exist, inserted, either in its statutes or in its constitution, a provision that charters thenceforth granted should be subject to alteration,*

*amendment or repeal at the pleasure of the legislature. See Greenwood v. Freight Co., 105 U.S. 13, 20, 21. The effect of such a provision, whether contained in an original act of incorporation, or in a constitution or general law subject to which a charter is accepted, is, at the least, to reserve to the legislature the power to make any alteration or amendment of a charter subject to it, which will not defeat or substantially impair the object of the grant, or any right vested under the grant, and which the legislature may deem necessary to carry into effect the purpose of the grant, or to protect the rights of the public or of the corporation, its stockholders or creditors, or to promote the due administration of its affairs.* Sherman v. Smith, 1 Black, 587; Miller v. State, 15 Wall. 478; Holyoke Co. v. Lyman, 15 Wall. 500; Sinking Fund Cases, 99 U.S. 700, 720, 721; Close v. Glenwood Cemetery, 107 U.S. 466; Spring Valley Water Works v. Schottler, 110 U.S. 347; New York & New England Railroad v. Bristol, 151 U.S. 556.

As illustrations of the right of the legislature, exercising such a reserved power, to alter for the future the liability of stockholders to creditors of the corporation, or the mode of computing the votes of stockholders for directors, it will be sufficient to state two of the cases just cited.

The case of Sherman v. Smith, 1 Black, 587, was as follows: The general banking act of New York of 1838, c. 260, provided, in § 15, that any number of persons might associate to establish a bank, upon the terms and conditions, and subject to the liabilities prescribed in this act; in § 23, that no shareholder of any association formed under this act should be individually liable for its debts, unless the articles of association signed by him should declare that the shareholder should be liable; and, in § 32, that the legislature might at any time alter or repeal this act. The articles of association of a corporation organized under this act in 1844 expressly provided that the shareholders should not be individually liable for its debts. By provisions of the constitution of New York of 1846, art. 8, sec. 2, and of the general statute of 1849, c. 226, the shareholders of all banks were made liable for debts contracted by the bank after January 1, 1850. This court unanimously held that these provisions were not unconstitutional as impairing the obligation of a contract.

The case of Miller v. State, 15 Wall. 478, was this: *By the Revised Statutes of New York of 1828, c. 18, tit. 3, it was enacted that "the charter of every corporation that shall hereafter be granted by the legislature shall be subject to alteration, suspension and repeal, in the discretion of the legislature."* The constitution of New York of 1846, art. 8, sec. 1, ordained as follows: "Corporations may be formed under general laws but shall not be created by special act," except in certain cases. *"All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed."* 2 Charters and Constitutions, 1363. *In 1850 the legislature passed a general railroad act authorizing the formation of railroad corporations with thirteen directors, and providing that the subscribers to the articles of association and all who should become stockholders in the company should become a corporation, and "be subject to the provisions contained in" the aforesaid title of the Revised Statutes. Stat. 1850, c. 140, § 1*. In the same year, a

railroad corporation was organized under that act for the construction of a railroad from the city of Rochester to the town of Portage; and in 1851, by a statute amending the charter of the city of Rochester, that city was authorized to become a stockholder in the corporation, and to appoint four of the thirteen directors. Stat. 1851, c. 389, § 24. ***In 1867, the legislature passed another statute, authorizing the city to appoint seven of the thirteen directors. Stat. 1867, c. 59. This court upheld the validity of the latter statute, upon the ground that the reservation in the constitution of 1846, and in the statutes of 1828 and 1850, of the power to alter or repeal the charter, clearly authorized the legislature to augment or diminish the number, or to change the apportionment, of the directors as the ends of justice or the best interests of all concerned might require***. 15 Wall. 492, 498. The full extent and effect of the decision are clearly brought out by the opinion of two justices who dissented for the very reason that the agreement with respect to the number of directors which the city should elect was not a part of the charter of the company, but was an agreement between third parties, outside of and collateral to the charter, and which the legislature could not reserve the power to alter or repeal. 15 Wall. 499. That case cannot be distinguished in principle from the case at bar.

***Remembering that the Dartmouth College case, (which was the cause of the general introduction into the legislation of the several States of a provision reserving the power to alter, amend or repeal acts of incorporation,) concerned the right of a legislature to make a change in the number and mode of appointment of the trustees or managers of a corporation, we cannot assent to the theory that an express reservation of the general power does not secure to the legislature the right to exercise it in this respect.***

***Judgment affirmed.***

*See Id.* at 51-54.

The foregoing authority establishes **the complete lack of merit in BV's assertion that it is constitutionally protected from the application of F.S. § 617.1606 to it**. BV's argument stems from the flawed logic of solely focusing on the existence of F.S. § 617.1602 in 2004, while at the same time completely and willfully ignoring the concurrent existence of F.S. § 617.0102, as well as the aforementioned decisions of the highest Court in these United States rendered more than 120 years ago.

By raising a legally barred claim without even seeking to distinguish its claims from centuries old on-point and controlling case authority, BV and its counsel have knowingly brought frivolous claims for relief which must subject them to Rule 11 sanctions.

**_ISSUE IV – NO JURISDICTION TO ENJOIN STATE COURT PROCEEDINGS_**:

*CASE NO:  9:23-cv-80820-RLR*

As part of the relief requested by BV, it requests this Court "enter temporary and/or permanent injunctive relief staying the State Court action pending adjudication of this matter".

BV's request is **directly violative of the rule of law set forth in *Younger v. Harris***, 401 U.S. 37 (1971), as cited to and discussed more recently in *Thomas v. Disanto (In re Native American Child A.)*, 762 Fed. Appx. 770 (11 Cir. 2019), wherein the Court stated the following:

> It is not entirely clear from the record whether the state court proceedings are final. But even if they are ongoing, we agree with the District Court's alternative holding that *Younger* abstention would prevent a federal court from intervening in any ongoing proceedings.
>
> In *Younger*, the Supreme Court reversed a District Court judgment enjoining a criminal defendant's prosecution in a pending state court action, noting that there is a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." 401 U.S. at 40-41, 91 S. Ct. at 748-49. The Supreme Court held that, while the federal courts had jurisdiction over the claim, they were required to abstain from exercising that jurisdiction, chiefly because of "the notion of 'comity,' that is, a proper respect for state functions." *Id.* at 44, 91 S. Ct. at 750. We have stated that "[a]lthough *Younger* concerned state criminal proceedings, its principles are 'fully applicable to noncriminal judicial proceedings when important state interests are involved.'" *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982)).
>
> *See Id.* at 773.
>
> And as stated by the United States Supreme Court in *Younger v. Harris*,
>
> ***Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts. In 1793 an Act unconditionally provided: "Nor shall a writ of injunction be granted to stay proceedings in any court of a state . . . ." 1 Stat. 335, c. 22, § 5. A comparison of the 1793 Act with 28 U. S. C. § 2283, its present-day successor, graphically illustrates how few and minor have been the exceptions granted from the flat, prohibitory language of the old Act. During all this lapse of years from 1793 to 1970 the statutory exceptions to the 1793 congressional enactment have been only three: (1) "except as expressly authorized by Act of Congress"; (2) "where necessary in aid of its jurisdiction"; and (3) "to protect or effectuate its judgments." In addition, a judicial exception to the longstanding policy evidenced by the statute has been made where a person about to be prosecuted in a state court can show that he will, if the proceeding in the state court is not enjoined, suffer irreparable damages. See Ex parte Young, 209 U.S. 123 (1908).***

*CASE NO: 9:23-cv-80820-RLR*

The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. The doctrine may originally have grown out of circumstances peculiar to the English judicial system and not applicable in this country, but its fundamental purpose of restraining equity jurisdiction within narrow limits is equally important under our Constitution, in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted. ***This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism."*** The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. ***What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism," born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future***.

***This brief discussion should be enough to suggest some of the reasons why it has been perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions***.

*See Id.* at 401 U.S. 37, 43-45 (emphasis added).

As no basis exists for a Federal District Court to issue an injunction staying pending State Court proceedings, BV has again sought relief which is beyond the scope of this Court's jurisdiction, doing so where it and its counsel know or should know that no basis exists for the relief requested. This must subject BV and its counsel to the imposition of Rule 11 sanctions.

### *ISSUE  V – NO  BASIS  FOR  BV'S  REQUEST  FOR  ENTITLEMENT  TO ATTORNEY'S FEES*

In BV's Complaint its last request for relief seeks "That this Court enter judgment in favor of the Association for their costs and reasonable attorney's fees pursuant to Florida Statute Sections 718.1255 and 718.303 and the Association's governing documents".

F.S. § 718.303, 718.1255, and the prevailing party attorney's fee provision contained in BV's Declaration of Condominium, **do not encompass or apply to an action such as this**. Here, Plaintiff does not bring a claim for relief based upon provisions of its Declaration of Condominium, or any alleged non-compliance by the Defendants with any portion of F.S. § Chapter 718.  Instead, Plaintiff has filed a frivolous challenge as to the constitutionality of a Florida statute enacted in 2010 and which carved out the application of certain records inspection statutes (617.1601-617.1605) from entities such as BV (i.e., not for profit corporations operating as condominium associations).  This does not fall within the scope of the language of Plaintiff's Declaration of Condominium (which BV has not even cited within its Complaint), or does it fall within F.S. § 718.303 or 718.1255, which respectively state, in pertinent part, as follows:

> (1)   Each unit owner, tenant and other invitee, and association is governed by, and must comply with the provisions of, this chapter, the declaration, the documents creating the association, and the association bylaws which are expressly incorporated into any lease of a unit. Actions at law or in equity, or both, for failure to comply with these provisions may be brought by the association or by a unit owner against:
> (a)   The association.
> (b)   A unit owner.
> (c)   Directors designated by the developer, for actions taken by them before control of the association is assumed by unit owners other than the developer.
> (d)   Any director who willfully and knowingly fails to comply with these provisions.
> (e)   Any tenant leasing a unit, and any other invitee occupying a unit.

> The prevailing party in any such action or in any action in which the purchaser claims a right of voidability based upon contractual provisions as required in s. 718.503(1)(a) is entitled to recover reasonable attorney fees. A unit owner prevailing in an action between the association and the unit owner under this subsection, in addition to recovering his or her reasonable attorney fees, may recover additional amounts as determined by the court to be necessary to reimburse the unit owner for his or her share of assessments levied by the association to fund its expenses of the litigation. This relief does not exclude other remedies provided by law. Actions arising under this subsection are not considered actions for specific performance.

*CASE NO:  9:23-cv-80820-RLR*

*See* F.S. § 718.303(1) (2018).

(l)   The party who files a complaint for a trial de novo shall be assessed the other party's arbitration costs, court costs, and other reasonable costs, including attorney fees, investigation expenses, and expenses for expert or other testimony or evidence incurred after the arbitration hearing if the judgment upon the trial de novo is not more favorable than the arbitration decision. If the judgment is more favorable, the party who filed a complaint for trial de novo shall be awarded reasonable court costs and attorney fees.

*See* F.S. § 718.1255(4)(l) (2017).

By their express language, neither of these statutes is applicable to an action such as this.

As to BV's Declaration of Condominium in Article 16, it states:

Remedies for Default. In addition to the remedies provided by statue and common law and the remedies elsewhere provided herein, a default in the compliance and fulfillment of the provisions of the Condominium Act, this Declaration, Articles of Incorporation, Bylaws, and/or the regulations and rules promulgated by the Association or its Board of Directors, shall entitle the Association or individual Unit Owners to injunctive relief or money damages or both. In any such legal or equitable action or proceeding the prevailing party shall be entitled to recovery his costs and expenses, including reasonable attorneys' fees to be determined by the court, including appellate proceedings.

This language does not encompass an action brought under the Federal Declaratory Judgment Act seeking a declaration as to the unconstitutionality of F.S. § 617.1606.

BV and its counsel have at all times been aware of the foregoing, and yet they have requested relief for which no legal entitlement exists. This must result in the imposition of Rule 11 Sanctions.

## **CONCLUSION**:

The instant action is a meritless one[8], which was filed by BV for a wholly improper purpose (seeking to have this Court intervene, enjoin, and ultimately reverse the rulings of a State Court). This Court lacks jurisdiction to entertain BV's requests for relief, BV's requests for relief are

---

[8] BV's decision to initiate this action is also highly questionable, as instead of taking the time to comply with this Court's outstanding Orders in S.D. Fla. Case No.: 9:22-mc-80138-AMC, BV remains in a state of non-compliance in said action and has chosen to waste the Court's time, and the Defendants' time, with its instant Complaint (and multiple ex-parte Motions seeking injunctive relief).

CASE NO:  9:23-cv-80820-RLR

legally impermissible, and its challenge as to the constitutionality of F.S. § 617.1606 is untimely. As such, BV must be sanctioned for acting as a vexatious litigant bringing claims it and its counsel knew or should have known were completely unsupported by fact or law.

**WHEREFORE** the Defendants, ELEANOR LEPSELTER and EDWARD LEPSELTER pray that, after consideration of the foregoing, this Court GRANT their Motion, that Plaintiff's and Plaintiff's counsel be sanctioned based upon the filing and advancement of Plaintiff's Verified Complaint, that the Court impose sanctions under Rule 11 as the Court deems appropriate (including awarding these Defendants a recovery of reasonable attorney's fees incurred in connection with this action), and that the Court GRANT the Defendants such other and further relief as the Court may deem just and proper.

> CHRISTOPHER S. SALIVAR, P.L.L.C.
> 301 W Atlantic Ave Suite O-5
> Delray Beach, FL 33444-3686
> Telephone: (561) 628-8908
> cssalivarattorney@gmail.com
>
> By:  /S/ *Christopher S. Salivar*
>         Christopher S. Salivar
>         Florida Bar No.: 57031

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that a true copy of this Motion was served, but not filed, on the 12th day of June, 2023 upon Plaintiff care of Plaintiff's counsel, with service having been completed via Plaintiff's counsel's e-mail service address of record. After Plaintiff failed to withdraw its Verified Complaint within twenty-one (21) days, a true copy of this Motion was filed via the Court's CM/ECF system on July 4, 2023, and a true copy was served via e-mail upon Plaintiff and Plaintiff's counsel via the e-mail service addresses of record.

> By:  /S/ *Christopher S. Salivar*
>         Christopher S. Salivar
>         Florida Bar No.: 57031

CASE NO:  *9:23-cv-80820-RLR*

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1

Your undersigned hereby certifies that this Motion and Incorporated Memorandum of Law complies with the font, sizing, and spacing requirements of Local Rule 5.1.

By:  /S/ *Christopher S. Salivar*
Christopher S. Salivar
Florida Bar No.: 57031

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1

Prior to serving this Motion upon Plaintiff and Plaintiff's counsel, your undersigned sent email correspondence to Plaintiff's counsel on June 8, 2023 (Exhibit "1" filed herewith) seeking to schedule a meet and confer conference. Plaintiff's counsel did not respond.

By:  /S/ *Christopher S. Salivar*
Christopher S. Salivar
Florida Bar No.: 57031