UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-80820-ROSENBERG/MATTHEWMAN

BOCA VIEW CONDOMINIUM
ASSOCIATION, INC.,

        Plaintiff,

v.

ELEANOR LEPSELTER and
EDWARD LEPSELTER,

        Defendants.

_____/

FILED BY_____SW_____D.C.

Sep 7, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' RULE 12 MOTION [DE 17]

**THIS CAUSE** is before the Court upon an Order of Reference from the Honorable United States District Judge Robin L. Rosenberg [DE 32] for a Report and Recommendation on Defendants, Eleanor Lepselter and Edward Lepselter's ("Defendants") Rule 12 Motion ("Motion") [DE 17]. The Motion is fully briefed. *See* DEs 39, 52. The Court heard argument on the Motion on August 28, 2023. This matter is now ripe for review.

## I.    INTRODUCTORY STATEMENT AS TO THE UNDERLYING RECORDS DISPUTE BETWEEN BOCA VIEW AND THE LEPSELTERS

A simple records request to a condominium association by a condominium unit owner in Florida would seemingly be a routine and noncontroversial matter, but, in this particular situation, Plaintiff Boca View Condominium Association, Inc. ("Plaintiff") has repeatedly and unnecessarily insisted on making the simple complicated. Well over four (4) years ago, on February 6, 2019, letters were sent to Plaintiff by Mr. and Mrs. Lepselter and their counsel, Mr. Yellin, requesting

that they be permitted to inspect and copy certain Association records. To make a long story short, Plaintiff said no.

In order to obtain those records in light of Plaintiff's refusal, and as permitted by Florida law, unit owner Defendant Eleanor Lepselter filed with the State of Florida Department of Business and Professional Regulation, Division of Condominiums, a Mandatory Non-Binding Arbitration Petition against Plaintiff. After very extensive litigation in that Arbitration proceeding, the State of Florida Chief Arbitrator Mahlon C. Rhaney, Jr. entered a Summary Final Order (case number 2019-01-7913) which deemed Ms. Lepselter to be the prevailing party, imposed $500.00 in minimum damages against Plaintiff, and, not surprisingly, ordered Plaintiff to produce the records.

Choosing to continue this Sisyphean battle, Plaintiff filed an action in Palm Beach County Circuit Court seeking to vacate the Chief Arbitrator's decision. After very extensive litigation, the Circuit Court Judge (case number 2020-CA-000251) affirmed the Arbitrator's decision, found Defendants to be the prevailing parties, affirmed minimum damages of $500, and ordered the inspection of the records to proceed. In subsequent orders, the Palm Beach County Circuit Court denied Plaintiff's 83-page motion for rehearing, and later ordered Plaintiff to pay approximately $246,000 in costs and attorney's fees. Plaintiff sought a stay pending appeal, which the Circuit Court denied.[1]

Thereafter, Plaintiff appealed the decision of the Palm Beach County Circuit Court to the Florida Fourth District Court of Appeal (case number 23-0257). The Fourth District Court of

---

[1] By way of background, while all this litigation over the Lepselter records request to Plaintiff was going on, the United States Department of Housing and Urban Development filed a motion to enforce a subpoena in this district seeking records from Boca View in relation to alleged discriminatory housing practices by Boca View. In that federal case (22-mc-80139-CANNON/REINHART), after much litigation, Boca View was ordered to produce the records subpoenaed by HUD.

Appeal denied Plaintiff's motion for a stay, and that appellate matter is currently in the briefing process.

That brings us to this federal case. Plaintiff has now filed its Complaint for declaratory and injunctive relief and to determine constitutionality of two Florida Statutes—sections 617.1606 and 617.0102. Plaintiff seeks quite extraordinary relief here, including that this Court temporarily and permanently stay the state court action, that this court adjudicate that Plaintiff does not have to produce any records in response to the Lepselters' request, and that this Court award Plaintiff its attorney's fees and costs pursuant to sections 718.1255 and 718.303, Florida Statutes.

The Court will now proceed to address this case and the pending motion to dismiss brought by Defendants.

## II.     BACKGROUND OF THIS FEDERAL LAWSUIT

On May 23, 2023, Plaintiff filed a Complaint for Declaratory and Injunctive Relief [Compl., DE 1] against Defendants. Plaintiff seeks a judgment declaring "(1) the parties' respective rights, duties, and obligations under a specific contract, specifically, Association's Declaration of Condominium, also a covenant running with the land; as well as, (2) that §617.0102 and §617.1606, Florida Statutes, unconstitutionally impair said contract." [Compl. ¶ 1]. Plaintiff further alleges that "an ongoing federal violation of Article I, Section 10, Clause 1 of the US Constitution is and will continually be occurring." *Id.* ¶ 2.

Defendants are co-owners of a unit in Boca View, a condominium located in Palm Beach County, Florida. *Id.* ¶ 4. They are also members of the Boca View Condominium Association. *Id.* In February 2019, Defendants, through attorney Jonathan Yellin, Esq., requested to inspect "identical categories of Association's records, for the identical purpose – a forensic accounting— made by Cool Spaze." *Id.* ¶ 10. Defendants were initially notified that they could inspect the

documents on February 25, 2019. *Id.* ¶ 11. According to Plaintiff's complaint, the records were made available to Ms. Lepselter for her inspection in her capacity as a unit owner. *Id.* ¶ 12. However, no copies or records would be released to Ms. Lepselter unless she signed a personal guarantee that she "would not release said records to any third-parties, including Cool Spaze/Shefets." *Id.* ¶ 13.

After Defendants were not allowed to have their attorney view the records, a Mandatory Non-Binding Arbitration Petition was filed by Ms. Lepselter against Plaintiff with the State of Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes on April 3, 2019. [DE 1–5]. On October 25, 2019, a Summary Final Order was issued. *Id.* The Chief Arbitrator determined that Plaintiff's "defenses are without merit and [i]t has willfully failed to comply with Petitioner's records request. Therefore, Petitioner is entitled to her requested statutory damages of $500.00 with regard to her February 6, 2019 records request." *Id.* at 12. The Chief Arbitrator also required that Plaintiff "immediately make available all the official records requested by Petitioner in this case, and at all times in the future, to Petitioner and her authorized representative in accordance with Section 718.111(12), Florida Statutes." *Id.* On December 10, 2019, Plaintiff's Motion for Clarification/Rehearing was also denied. [DE 1–5].

On January 9, 2020, Plaintiff "filed a Complaint for Trial De Novo, a hybrid appellate procedure pursuant to §718.1255, Florida Statutes, Palm Beach County Circuit Court Case No. 50-2020-CA-000251-XXXX-MB." [Compl. ¶ 15]. On December 2, 2022, the trial court upheld and ratified the Summary Final Order dated October 25, 2019; directed Plaintiff to comply with the arbitrator's direction for it to pay $500.00 to Defendants; and required Plaintiff "to immediately make available all of the requested records identified in Jonathan Yellin, Esq.'s February 6, 2019

written records inspection letter to Mr. Yellin as Eleanor Lepselter's authorized representative." [DE 1–6]. The trial court also found that Defendants were entitled to court costs and reasonable attorney's fees. *Id.* On December 28, 2022, the trial court denied Plaintiff's 83-page motion for a new trial. *Id.* On February 16, 2023, the trial court entered an order denying Plaintiff's motion to stay pending appeal. [DE 1-7]. The case is currently pending before the Fourth District Court of Appeal in case number 4D23-257. The Fourth District Court of Appeal denied Plaintiff's motion to stay and the Initial Brief has been filed by Plaintiff. Compl. ¶ 15; DE 52–3. That appeal is currently in the briefing stage.

Plaintiff makes several arguments in the Complaint that Defendants' request to inspect records was improper. Compl. ¶¶ 16, 17, 19, 20, 22. Plaintiff also alleges that section 617.1606, Florida Statutes, does not apply to Plaintiff. *Id.* ¶ 25. Further, according to Plaintiff, "[t]here can be no doubt that the Association possessed the right to deny the Lepselters' request to inspect records for an improper purpose." *Id.* ¶ 41. Plaintiff alleges that "the actions of the Defendants, the arbitrator and the de novo Court's failure to address the law regarding the 'good faith and proper purpose' defenses made by the Association violate the U.S. Constitution." *Id.* ¶ 25.

In Count I of the Complaint, Plaintiff seeks Declaratory Judgment because it is "in doubt of its rights under its Declaration of Condominium and seeks a declaration of its rights and obligations with respect to a records request, including the Defendants' one, and its obligations related thereto as well as the application of §617.0102 and §617.1606, Florida Statutes is constitutional." *Id.* ¶ 51. The Complaint further states that Plaintiff "seeks the entry of a judgment by this Court declaring that under the above- referenced Declaration of Condominium, Association does have the right to consider a proper purpose in relation to a records request, including the

Defendants' one, and that applying §617.0102 and §617.1606, Florida Statutes is unconstitutional because it impairs the Association's contractual obligations with its members." *Id.* ¶ 52.

In Count II of the Complaint, Plaintiff seeks an injunction and alleges as follows:

58. Article 1, section 10, cl. 1, United States Constitution and article 1, section 10 of the Florida Constitution prohibits Florida from retroactively applying the ex post facto §617.1606, Florida Statutes of 2010, and impairing a covenant running with the land which does not contain *Kaufman* language such as the Association's 2004 Declaration of Condominium.

59. Article 1, section 10, cl. 1, United States Constitution and article 1, section 10 of the Florida Constitution prohibits Florida from applying §617.0102, Florida Statutes, to retroactively apply ex post fact laws which impair a covenant running with the land such as the Association's Declaration of Condominium.

60. Regardless of legislative intent, the retroactive application of on the aforementioned law violates the federal and state Ex Post Facto clause because its debilitating effects impair a contract.

61. Plaintiff has a clear legal right to relief as the State Court's below orders violate Plaintiff's vested constitutional rights in its Governing Documents.

62. Plaintiffs has a substantial likelihood of success on the merits in that the State Court's orders violate Plaintiff's vested constitutional rights in its Governing Documents.

63. Granting injunction is in the public interest, in that the unconstitutionally impairing vested rights is not in the public interests.

64. Plaintiff has suffered irreparable harm and have no adequate remedy at law.

*Id.* ¶¶ 58–64.

### III.   **MOTION, RESPONSE, AND REPLY**

A.   Defendants' Motion [DE 17]

According to Defendants, the crux of this dispute is that Mr. Yellin, Defendants' authorized representative at the time the records request was made, was not permitted to inspect Plaintiff's records. [DE 17 at 2]. Defendants first argue that this Court lacks jurisdiction over the claims asserted by Plaintiff and that, pursuant to Federal Rules of Civil Procedure 12(b)(1) and the

*Rooker-Feldman* doctrine, this action must be dismissed. *Id.* at 4. Defendants next assert that the Complaint must be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's claims are barred by the applicable statute of limitations; no property right exists that could feasibly be impaired by the enactment of section 617.1606, Florida Statutes, and the exercise of the State's reserved power of amendment for purposes of enacting that statute cannot be an unconstitutional impairment of a contract right as a matter of law; this Court has no jurisdiction to enjoin state court proceedings or overturn a state court judgment; there is no basis for this Court to exercise its discretion to entertain an action for declaratory relief; and there is no basis for Plaintiff's request for entitlement to attorney's fees. *Id.* at 10–28. Additionally, Defendants maintain that Plaintiff failed to join a necessary and indispensable party by challenging the constitutionality of a Florida statute without joining the Florida Attorney General. *Id.* at 29–30.

   B.   Plaintiff' Response [DE 39]

In response, Plaintiff first argues that the *Rooker-Feldman* doctrine does not apply until all appeals have been completed and that it also does not apply in this case since Plaintiff is currently asserting an independent federal claim which it did not have a reasonable opportunity to raise in the state proceedings. [DE 39 at 2–7]. Plaintiff next contends that the statute of limitations argument should have been raised by Defendants as an affirmative defense, and, moreover, that there is no statute of limitations issue here because the controversy did not arise until 2019 and/or 2022 and thus falls within the applicable 4-year statute of limitations. *Id.* at 7–8. According to Plaintiff, an impaired property right clearly exists here since the "state court's holding that the Reservation of Power Statute, §617.0102 applied to the Association where there was no *Kaufman* language resulted in an impairment of contract in violation of U.S. Const. art. I, § 10, cl. 1, and

*Pomponio* Good Faith and Proper Purpose." *Id.* at 8. Plaintiff also asserts that the *Younger-Harris* abstention doctrine is both discretionary and non-jurisdictional and emphasizes that the "constitutional issues [asserted in federal court] were not litigated or fully briefed" in state court. *Id.* at 16. Next, it argues that the Declaratory Judgment Act applies here since the application of the United States Constitution to this case is at issue. *Id.* at 18. Plaintiff explains that section 718.303, Florida Statutes, creates a claim for attorney's fees in this case. *Id.* at 19. And, finally, Plaintiff argues that there are no un-joined indispensable parties here and that it has complied with Federal Rule of Civil Procedure 5.1 by sending notification to the Florida Attorney General. *Id.*

C.      Defendants' Reply [DE 17]

In reply, Defendants first assert that the *Rooker-Feldman* doctrine does apply here because Plaintiff did, in fact, "have the opportunity to develop and advance the unconstitutionality arguments it now brings before this Court" in state court and that it raised the same arguments regarding section 617.0106 in state court. [DE 52 at 1–2]. Defendants further argue that "[g]iven Plaintiff's current argument that its federal claims brought forth in this action are not in actuality pending before the Fourth District Court of Appeal for review," the ruling in *Lopez v. Nationstar Mortage LLC*, No. 1:20-CV-22496-KMM, 2021 WL 4991092, at *5 (S.D. Fla. July 6, 2021), "applies and mandates dismissal of this action." *Id.* at 4. Defendants next assert that,

> Plaintiff's argument that F.S. § 617.0102 does not apply to it is meritless, as it is part of the very statutory scheme which the Plaintiff's predecessor (its Developer) knowingly chose to utilize in order to obtain the benefit of incorporating the Plaintiff as a Florida not-for profit corporation in 2004 governing the affairs of a formed condominium association. This directly benefited the developer, as the developer was thereafter authorized to sell 72 Units in the condominium governed by the Plaintiff. It has also benefitted the Plaintiff, as only by being a duly incorporated not-for-profit corporation has Plaintiff been able to function since its organization in 2004 (which has allowed it to collect assessments from Members in order to fund the Plaintiff's operations).

> Where the Florida legislature utilized an expressly reserved and duly authorized power to amend F.S. Chapter 617 in 2010 to alter the statutory limitations upon a Member's right to inspect the Plaintiff's records, the legislature was exercising a power that is not subject to attack or bar as unconstitutional under § 10 of Article I of the United States Constitution. As such, Plaintiff's argument fails.

*Id.* at 10. They further maintain that, because Plaintiff's Declaration of Condominium expressly incorporated Plaintiff's Articles of Incorporation, which themselves organized the Plaintiff under the laws of the State of Florida which existed as of 2004, and this included section 617.0102, "Plaintiff's arguments fail, as here the 'contracts' at issue expressly incorporated an acknowledgment and agreement that the Plaintiff would be governed by any repeal or amendment to F.S. Chapter 617 automatically." *Id.* at 14.

With regard to the statute of limitations issue, Defendants reiterate that "Plaintiff cannot now revive a long dead claim by simply suing the party that prevailed against it in a State Court proceeding based upon the State Court's ruling that the Plaintiff's argument failed as a matter of law based upon a legislative amendment that occurred 13 years prior and which rendered the Plaintiff's arguments specious." *Id.* at 16. Defendants further argue that no property right of Plaintiff has been impaired, the *Younger-Harris* doctrine mandates that this action be dismissed, none of the *Brillhart* factors weigh "in favor of the exercise of discretion to entertain the declaratory relief claim asserted in this action," section 718.303 does not apply here so Plaintiff cannot be entitled to attorney's fees, and, finally, that Plaintiff's claim "should have been directed to the Florida Attorney General, and not to these Defendants, who are not a party capable of enforcement of F.S. § 617.1606." *Id.* at 16–21.

## IV. <u>LEGAL STANDARD</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.

A defendant may move to dismiss a pleading for failure to state a claim upon which relief can be granted under Rule 12(b)(6). A defendant may also move to dismiss a pleading for lack of subject-matter jurisdiction under Rule 12(b)(1). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

In contrast, "[w]hen a defendant files a Rule 12(b)(1) motion, the plaintiff, as the party invoking the authority of a federal court to seek relief, bears the burden of establishing federal subject-matter jurisdiction." *Thompson v. Ryder Sys., Inc.*, No. 22-20552-CIV, 2022 WL 18776108, at *2 (S.D. Fla. Oct. 11, 2022). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently

10

alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (quoting *McElmurray v. Consol. Govt' of August-Richmond Cnty.*, 501 F.3d 1244, 1250 (11th Cir. 2007)). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* "Challenges to a plaintiff's standing to sue under Article III of the Constitution are attacks on federal subject-matter jurisdiction . . . [and] fall under Rule 12(b)(1)." *Thompson*, 2022 WL 18776108, at *2. Likewise, *"*[a] Rule 12(b)(1) motion based on the *Rooker-Feldman* doctrine presents a factual attack on jurisdiction." *Williams v. Dovenmuehle Mortg. Inc.*, No. 17-60191-CIV, 2017 WL 4303841, at *2 (S.D. Fla. June 16, 2017).

"When the defendant challenges the complaint under *both* Rules 12(b)(1) and 12(b)(6), [courts] ask whether there's any overlap between the jurisdictional inquiry and the merits." *Dixon v. Epiq Corporate Restructuring, LLC*, No. 20-81363-CIV, 2022 WL 2290523, at *4 (S.D. Fla. June 24, 2022). "Where a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claims under Rule 12(b)(1) or Rule 12(b)(6). Or both." *Id.* (alteration omitted) (quoting *Brownback v. King*, 141 S. Ct. 740, 749 n.8 (2021)). "But, where the 'overlap between merits and jurisdiction may not exist,' the district court 'might lack subject matter jurisdiction for non-merits reasons, in which case it must dismiss the case under Rule 12(b)(1)." *Id.* (quoting *Brownback*, 141 S. Ct. at 749 n.8). "The district court should 'rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction *do not implicate the merits of the plaintiff's cause of action*." *Id.* (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

V.   <u>ANALYSIS</u>

A.   <u>Count II of the Complaint</u>

At the August 28, 2023, hearing, counsel for Plaintiff and counsel for Defendant conceded that Count II, which seeks injunctive relief, rises and falls with Count I. In other words, counsel for the parties all represented in open court that Count II of Plaintiff's Complaint cannot exist without Count I. Therefore, this Court only needs to analyze Defendants' arguments in the Motion to Dismiss with regard to Count I, which seeks Declaratory Judgment.

B.   <u>The Declaratory Judgment Act</u>

"A court has the inherent authority to control its own docket and has particularly wide latitude when addressing cases brought under the Federal Declaratory Judgment Act." *Mid-Continent Cas. Co. v. Nassau Builders, Inc.*, 3:16-CV-921-J-34JRK, 2017 WL 1191383, at *5 (M.D. Fla. Mar. 31, 2017). The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). The Supreme Court has thus cautioned that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). In such a case, the district court should exercise its discretion to dismiss or stay the declaratory action in light of pending state proceedings. *Wilton*, 515 U.S. at 286.

The Eleventh Circuit has explained that district courts should consider the following non-exclusive guideposts in deciding whether to adjudicate, dismiss, or stay a declaratory judgment action under § 2201(a):

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

12

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc*, 12 F.4th 1278, 1282–83 (11th Cir. 2021) (citing *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005)).

Plaintiff simply argues that "[h]ere a declaratory judgment would serve the useful purpose of clarifying what the rights and duties are of this and other associations without *Kaufman* language in their declarations moving forward when faced with a records inspection request" and that "[h]ere, there is no question that the court has Federal Question jurisdiction related to the application of the United States Constitution to this case. As such, the Federal Declaratory Judgment Action applies." [DE 39 at 18]. Plaintiff, however, for the most part, conveniently ignores the above law. The Court finds that a careful application of the factors very clearly balances in favor of dismissing the Declaratory Judgment count.

First, Florida has a very strong interest in having the issues raised in Count I of the Complaint decided in a Florida state court as the case deals with the constitutionality of a Florida (and not a federal) statute as it applies to a contract. The dispute revolves around application of the Florida Condominium Act and the State of Florida has a strong interest in deciding the issues.

Second, a judgment in this federal court would not settle the controversy as Plaintiff is still making a Florida constitutional claim in state court by way of its pending appeal, and, third, a federal declaratory action would not serve a useful purpose in clarifying the legal relations at issue. The state and federal constitutional claims are inextricably intertwined. Moreover, there is absolutely no need for this Court to determine whether section 617.1606, Florida Statutes, is an ongoing federal violation of Article I, Section 10, Clause 1 of the U.S. Constitution when the Fourth District Court of Appeal is currently in the process of determining the same exact issue but under the Florida Constitution. In other words, Plaintiff's lawsuit is simply wasting scarce federal judicial resources. Plaintiff cites *Sears, Roebuck & Co. v. American Mutual Liability Insurance Co.*, 372 F.2d 435, 438 (7th Cir. 1967), for the premise that "the pendency of another suit is not a sufficient reason to decline declaratory jurisdiction if that suit will not necessarily determine the controversy between the parties." However, not only is *Sears* an old case that is not binding on this Court, but also the state court proceedings here very well may determine the controversy between the parties.

Fourth, the declaratory remedy is clearly being used in this case for the purpose of procedural fencing as this is Plaintiff's motive for splitting the state and federal constitutional arguments into cases pending before the Fourth District Court of Appeal and this Court. Plaintiff has been extremely litigious in refusing to produce records. Plaintiff has repeatedly lost before the state Arbitrator and before the Palm Beach County Circuit Court, despite extensive contentious

litigation, and Plaintiff has been ordered to pay approximately $246,000 in attorney's fees and costs to Defendants by the Palm Beach Circuit Court Judge. It appears to the Court that after making an initial improvident decision refusing to allow Defendants' attorney to review the Association records back in 2019, Plaintiff has subsequently taken a multi-year, scorched earth litigation approach in its continued quest to deny Defendants' records request. This federal lawsuit appears to be more of the same. Plaintiff's conduct is blatantly improper. In fact, this federal lawsuit, boiled down to its essence, is asking Defendants—two unit holders who simply wanted their representative to be permitted to inspect condominium records—to defend the constitutionality of sections 617.1606 and 617.0102, Florida Statutes, as applied to the condominium declaration in federal court. This federal lawsuit is also moving parallel to a Florida state court appeal which includes a plethora of different arguments, one of which is the constitutionality of the statute under the Florida Constitution as the statute applies to the contract at issue. Plaintiff could have no motive here other than procedural fencing.

Fifth, for the same reasons explained above, the use of a declaratory action here would increase the friction between the federal and state courts and improperly encroach on Florida's jurisdiction. In effect, Plaintiff wants this federal court to overturn the state court and substitute its judgment in lieu of the better-positioned state court. This could only cause to increase unnecessary friction between the Florida and federal court.

Sixth, a more effective alternative remedy would be to wait until the appeal has been ruled on and then, if necessary and proper, bring a constitutional challenge to the Florida statute in Florida court.

Seventh, the underlying factual issues here are clearly important to an informed resolution of the case, and, eighth, the Florida trial court is in a much better position to evaluate those factual

issues than is this federal court. This is a case that has already been both through a lengthy and contentious State of Florida arbitration proceeding, and a lengthy and contentious Palm Beach County Circuit Court trial which is now on appeal in the Fourth District Court of Appeal. And it seems to this Court, in light of the state court rulings, that the constitutional challenges currently being argued by Plaintiff constitute improper after-the-fact rationalization for Plaintiff's initial improper denial of Defendants' request to have their authorized representative inspect condominium records.

And, finally, ninth, there is clearly a close nexus between the underlying factual and legal issues and state law and/or public policy in light of the foregoing.

In conclusion, the Court should exercise its discretion to dismiss the Declaratory Judgment Count I of the Complaint.

C.   *Younger* Absention

Defendants argue, even if the state court proceedings are ongoing, this Court should abstain under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and refuse to rule on this requested relief. Plaintiff argues in response that "[t]his is a discretionary review by the court, but if the Court considers the nine factors listed in the *Roach* case and the compelling federal interest in protecting the U.S. Constitution, it all points to strongly favoring non-abstention." [DE 39 at 17]. Plaintiff further contends that "[t]he compelling interest in protecting contracts against impairment by the incorrect application of statutes calls for this court to move forward with this case." *Id.*

In *Younger*, the Supreme Court reversed a district court judgment which enjoined a criminal defendant's prosecution in a pending state court action, noting that there is a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under

special circumstances." 401 U.S. at 40–41, 91 S.Ct. at 748–49. The Supreme Court held that, while the federal courts had jurisdiction over the claim, they were required to abstain from exercising that jurisdiction, chiefly because of "the notion of 'comity,' that is, a proper respect for state functions." *Id.* at 44, 91 S.Ct. at 750. The Supreme Court has also expressly determined that "[a]lthough *Younger* concerned state criminal proceedings, its principles are 'fully applicable to noncriminal judicial proceedings when important state interests are involved.'" *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982)).

The Supreme Court has explained that, when a court is determining whether *Younger* abstention applies, that court must answer three questions: "first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* (alteration in original) (quoting *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432, 102 S.Ct. at 2521). If the action involves "[p]roceedings necessary for the vindication of important state policies or for the functioning of the state judicial system," it is an important state interest. *Id.* (quoting *Middlesex Cty. Ethics Comm.*, 457 U.S. at 432, 102 S.Ct. at 2521). As to the third question, the Supreme Court has found that "[a] federal court 'should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *31 Foster Children*, 329 F.3d at 1279 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987)). "The Supreme Court has recognized exceptional circumstances in which *Younger* abstention might be inappropriate: where the irreparable injury is 'great and immediate,' where the state law in question is 'flagrantly and patently violative of express constitutional prohibitions,' or where the plaintiff demonstrates bad faith, harassment, or other

'unusual circumstances' justifying equitable relief." *Thomas v. Disanto*, 762 F. App'x 770, 773 (11th Cir. 2019) (quoting *Mitchum v. Foster*, 407 U.S. 225, 230, 92 S.Ct. 2151, 2156, 32 L.Ed.2d 705 (1972)).

The Court finds that *Younger* abstention precludes it from intervening in the ongoing state proceedings. This is because all three factors weigh in favor of applying the doctrine. First, the proceedings clearly constitute an ongoing state judicial proceeding. There is a pending appeal, and the issues on appeal are inextricably intertwined with the allegations in the Complaint in the case at hand.

Second, the proceedings implicate important state interests—the application and constitutionality of a Florida statute. Plaintiff is trying to make an argument that a Florida statute unconstitutionally impairs its Association's Declaration of Condominium. Plaintiff's argument could later be utilized by other condominium associations with similar Declarations of Condominium in an effort to skirt the current law. An important state interest is at play here.

Third, despite Plaintiff's arguments to the contrary, there is and was an adequate opportunity in the state proceedings to raise constitutional challenges. In fact, Plaintiff did raise both state and federal constitutional challenges in the Motion for Rehearing and/or Motion for New Trial [DE 17-3 at 31-40] before the Florida circuit court judge and raised the Florida constitutional challenge in the pending appeal.[2] Moreover, Plaintiff apparently seeks a more expansive *de novo* trial on appeal, which would possibly permit Plaintiff to raise state and federal constitutional claims were Plaintiff to prevail on its appeal. The Court also notes that the "business

---

[2] To the extent Plaintiff's counsel argued at the hearing that it did not have a sufficient opportunity to raise the federal constitutionality argument during the state court proceedings as it was not able to engage in discovery on the issue, this is a red herring. The constitutionality of a statute is a purely legal question. Moreover, counsel stated in open court that she would have solely wanted additional discovery on Ms. Lepselter's improper intent. Discovery on improper intent would have had no bearing on the legal arguments Plaintiff is making about the constitutionality of a Florida statute and the impairment of Plaintiff's contract.

judgment" issue raised in paragraph 56 of the Complaint was an issue previously decided by the Circuit Court Judge. *See* DE 1-6 at 15–17.

Finally, none of the delineated "exceptional circumstances" apply here. Thus, abstention is proper here and Count I is due to be dismissed. Plaintiff's arguments to the contrary are frivolous.

D. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "Under the *Rooker-Feldman* doctrine, federal district courts and courts of appeals do not have jurisdiction to review state-court decisions." *Nash v. Fifth District Court of Appeals*, 806 F. App'x 870, 872 (11th Cir. 2020). Indeed, "[t]he Eleventh Circuit and many district courts have applied the Rooker-Feldman doctrine to dismiss actions where a plaintiff was seeking to challenge a state court foreclosure judgment under the guise of federal claims." *Moss v. Davis*, No. 17-24280-CIV, 2017 WL 11428471, at *1 (S.D. Fla. Dec. 21, 2017), *report and recommendation adopted*, No. 17-24280-CIV, 2018 WL 9617250 (S.D. Fla. Aug. 1, 2018).

"The [*Rooker-Feldman*] doctrine applies both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). "A claim is 'inextricably intertwined' if it would 'effectively nullify' the state court judgment, or if it 'succeeds only to the extent that the state court wrongly decided the issues.'" *May v. Morgan County Georgia*, 878 F.3d 1001, 1005 (11th Cir. 2017) (alteration omitted) (quoting *Casale*, 558 F.3d at 1260). "It does not apply, however, where a party did not have a reasonable opportunity to raise his federal claim in state proceedings." *May v. Morgan*

*County Georgia*, 878 F.3d 1001, 1005 (11th Cir. 2017). Moreover, "[o]nly when a losing state court litigant calls on a district court to modify or 'overturn and injurious state-court judgment' should a claim be dismissed under *Rooker-Feldman*; district courts do not lose subject matter jurisdiction over a claim 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Behr v. Campbell*, 8 F.4th 1206, 1210 (11th Cir. 2021) (quoting *Exxon Mobil Corp.*, 544 U.S. at 292). To this end, the *Rooker-Feldman* doctrine does not preclude independent damages claims where such claim "does not necessarily seek appellate review and reversal of the state court judgment." *See Kohler v. Garlets*, 578 F. App'x 862, 864 (11th Cir. 2014). However, where a plaintiff's *true* intent is to attack the state-court judgment, the *Rooker-Feldman* doctrine does not apply. *See Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1324–25 (S.D. Fla. 2011).

"If a party files a federal action seeking to collaterally attack a state court judgment while the state court action is pending appeal in state court, the state proceeding has not ended for *Rooker-Feldman* purposes." *Worrell v. Fed. Nat'l Mortg. Ass'n*, No. 22-61397-CIV, 2022 WL 17350991, at *2 (S.D. Fla. Nov. 30, 2022) (citing *Nicholson v. Shafe*, 558 F.3d 1266, 1278 (11th Cir. 2009)). "[S]tate proceedings have not ended for purposes of *Rooker–Feldman* when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action that complains of injuries caused by the state court judgment and invites review and rejection of that judgment." *Nicholson*, 558 F.3d at 1279.

The Eleventh Circuit has further explained, that, in *Nicholson,* it determined that state court proceedings end for *Rooker-Feldman* purposes in three scenarios: "(1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, (2) if the state action has reached a point where neither party seeks further action, and (3) if the

state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated." *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1072–73 (11th Cir. 2013) (citing *Nicholson,* 558 F.3d at 1275) (internal quotations omitted).

In *Lopez v. Nationstar Mortgage LLC*, No. 1:20-CV-22496-KMM, 2021 WL 4991092, at *5 (S.D. Fla. July 6, 2021), the court explained that, if the pending state level appeal involves separate issues than those that are currently before the federal court, then the *Rooker-Feldman* doctrine still applies. Similarly, in *Severe v. Shapiro, Fishman & Gache, LLP*, No. 14-CIV-80345, 2014 WL 5341886, at *3 (S.D. Fla. Oct. 6, 2014), the Court found that the Rooker-Feldman doctrine precluded the court from considering the plaintiff's claims for the following reason:

> At the time Plaintiff filed the instant federal action, the only issue remaining in the Foreclosure Action was the disposition of the foreclosure sale and transfer of title. Furthermore, all attempts to seek relief after the filing of the instant federal action constituted collateral attacks on the state court judgment. None involved federal questions needing resolution. The record does not indicate that after March 11, 2014, any federal questions remained to be litigated in the state court proceeding.

*Id.*

In the case currently before this Court, it appears that Plaintiff is making contradictory arguments. It is both claiming that it was not permitted to make certain arguments at the state court level and is therefore bringing them in federal court **and** that Plaintiff has a pending appeal on the same issues being raised in this court that preclude application of the *Rooker-Feldman* doctrine. More specifically, Plaintiff contends that "*Rooker-Feldman* does not apply here because an appeal is pending before the 4th DCA" and also that it did not "have a reasonable opportunity to raise the claims at issue here." [DE 39 at 2, 6]. Defendants are making converse contradictory arguments as

well. Plaintiff is disingenuously speaking out of both sides of its mouth, and the Court does not appreciate this gamesmanship.

The crux of the Complaint is that Plaintiff wants this federal Court to agree with it that sections 617.1606 and 617.0102 do not apply to it, and that, to the extent that section 617.1606 does automatically apply to Plaintiff, the Association's Declaration contains no *Kaufman* Language, so this would constitute an impairment of a contract in of U.S. Const. art. I, § 10, cl. 13, and applicable case law. [Compl. ¶¶ 25, 26]. The Court finds that, even if the argument before the state appellate court deals with the constitutionality of a Florida statute under the <u>Florida</u> Constitution and Count I of the Complaint in this case deals with the constitutionality of a Florida statute under the <u>U.S.</u> Constitution, the *Rooker-Feldman* doctrine does not apply at this juncture because the two constitutionality claims are so intertwined both factually and legally. In other words, despite the Court's ruling in *Lopez, supra*, the Court finds that the issues on appeal in the state court are not truly separate from the issues in this federal case. Thus, since the state court case remains pending, *Rooker-Feldman* should not apply.

Based on the foregoing, the Court finds that *Rooker-Feldman* doctrine does not apply at this juncture in the case. Once the appeal is disposed of by the appellate court, the doctrine might apply, however. At this point, Defendant's argument regarding the *Rooker-Feldman* issue should be rejected.[3]

---

[3] Defendants take issue with the request in the Complaint that the Court "adjudicate that no records of Association need be produced to Defendants or their attorney" since this request for relief "impermissibly goes far beyond a declaration as to the constitutionality of F.S. § 617.1606, and requests this Court relitigate, and substitute its judgment in place of, the ruling of the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, as rendered on December 2, 2022." [DE 17 at 26]. Really, this argument is just a continuation of the *Rooker-Feldman* doctrine argument that was analyzed above. There is no need for further discussion by the Court.

E.        Remaining Issues

There is no need to consider the following Rule 12 motion issues in light of the Court's findings: whether the statute of limitations has run[4], Defendant's substantive 12(b)(6) argument, and whether Plaintiff has alleged a proper basis for entitlement to attorney's fees. Furthermore, at the August 28, 2023 hearing, Defendants withdrew their argument that Plaintiff failed to a join a necessary and indispensable part—the Florida Attorney General.

## VI.        CONCLUSION

In   light   of   the   foregoing,   the   undersigned   United   States   Magistrate   Judge **RECOMMENDS** that Defendants' Rule 12 Motion [DE 17] be GRANTED for the reasons stated in this Report and Recommendation. This case (both Counts I and II) should be dismissed and closed.

## NOTICE OF RIGHT TO OBJECT

In light of the upcoming pretrial deadlines and in light of the language contained in Federal Rule of Civil Procedure 1, the Undersigned shall hereby shorten the time for the parties to file objections to this Report and Recommendation, as authorized under Southern District of Florida Magistrate Judge Rule 4(a). Accordingly, Plaintiff shall have seven (7) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Robin L. Rosenberg. Defendants shall then have seven (7) days from the date of being served with a copy of the written objections to file a response. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on

---

[4] Furthermore, Defendants can always include the statute of limitations argument as an affirmative defense. The Court also finds that, given the particular facts of this case, the statute of limitations issue would be more appropriately raised in a dispositive summary judgment motion or at trial.

appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

      **RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Florida, this 7th day of September 2023.

WILLIAM MATTHEWMAN
United States Magistrate Judge