UNITED STATES DISTRICT COURT
SOUTHERN DIVISION OF FLORIDA
WEST PALM BEACH DIVISION

BOCA VIEW CONDOMINIUM ASSOCIATION,
INC.,

          Plaintiff,                                          CASE NO: 9:23-cv-80820-RLR

vs.

ELEANOR LEPSELTER and EDWARD
LEPSELTER,

          Defendant(s).
_____/

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' RULE 12 MOTION [DE 61] WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Boca View Condominium Association, Inc. ("Boca View"), pursuant to this Court's September 7, 2023 Report and Recommendation ("R&R") on Defendants', Eleanor and Edward Lepselter's (collectively "Defendants") Rule 12 Motion to Dismiss [DE 61], and pursuant to Fed. R. Civ. P. 72, files these objections and in support states:

**INTRODUCTION**

This Court should reject the R&R, deny Defendants' Rule 12 Motion to Dismiss, and exercise jurisdiction over Boca View's action for Declaratory and Injunctive Relief against Defendants. Boca View is properly before this Court under the Declaratory Judgment Act which, although discretionary, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*." 28 U.S.C. § 2201 (emphasis added). The factors federal courts can consider in deciding whether to exercise

jurisdiction over a matter are weighed in their totality; no factor is required or controlling. *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc*, 12 F. 4th 1278, 1286 (11th Cir. 2021).

In addition, the principles of equity and comity enunciated in *Younger* do not prevent this court from exercising jurisdiction because Boca View did not have an adequate opportunity to raise a federal constitutional challenge. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982). Boca View was bound by the limited scope of the arbitration proceedings related to the records request delineated in Fla. Stat. § 718.1255 and was bound by such limited scope in all subsequent proceedings.

Moreover, and contrary to Magistrate Judge Matthewman's perception, it is Defendants who have demonstrated a decade-long, systematic, indeed Sisyphean, to borrow a term from the R&R, bad faith and harassment against Boca View, justifying the need for equitable relief. *Thomas v. Disanto*, 762 F. App'x 770, 773 (11th Cir. 2019). The Court places great emphasis on the parties' underlying litigation, repeatedly characterizing it as "very extensive." Boca View agrees with Magistrate Judge Matthewman that "a simple records request to a condominium association by a condominium unit owner in Florida would seemingly be a routine and noncontroversial matter…". R&R, at 1. What is not captured in the R&R is that the litigation that ensued over this particular records request of the "rinse-and-repeat" variety stems from Defendants' history of creating

controversy through interrelated parties to undermine Boca View and Boca View's subsequent attempts to vigorously defend itself. [1] This is particularly true when reviewed in context.

Defendants in this case requested to inspect records in 2019, through the same counsel who, personally or whose law firm, had a relationship in representing other disgruntled unit [non-]owners and "straw people" with the same requests. Compl. at ¶ 10. Despite the suspicions this raised, Boca View promptly made the records available to Mrs. Lepselter. [2] *Id.* at 11–12. When Mrs. Lepselter insisted on having her authorized representative review the records, Boca View, through its Vice President and Treasurer Giuseppe Marcigliano, denied the request [DE 55 at 1]. [3]

---

[1] By way of background, the litigation referenced in the R&R related to the United States Department of Housing and Urban Development to enforce a subpoena in relation to alleged discriminatory practices by Boca View (22-mc-80139-CANNON/REINHART) was filed by a unit owner whose real estate agents were the Defendants in this case. Other than that connection to the Defendants, the controversy therein has no substantive relation to the instant one. As an aside, the connection to that matter is that Magistrate Reinhart provided an R&R. Judge Cannon made a ruling on that R&R only after a hearing and substantive additional briefing, thirteen (13) months later, on or about March 2023, while Magistrate Reinhart's spouse presided over the State Court case, currently on appeal. However, Magistrate Reinhart has recused himself from the instant matter due to that familial relationship. Moreover, Defendants have sued Boca View multiple times beginning in 2013. *See Lepselter, Edward v. Boca View Condominium Association Inc.*, Case No.: 50-2013-SC-005127-MB, *Lepselter, Edward v. Kuka, Diana*, Case No. 50-2013-CA-005444-MB. Defendants have brought complaints against Boca View before the DBPR, the city of Boca Raton, and –these Defendants' prior unsuccessful "rodeos"– with the Department of Housing and Urban Development (HUD), to name a few. A detailed history of the events leading up to the underlying litigation is outlined in Boca View's Initial Brief [DE 52–3].

[2] It is an undisputed fact of this case that Boca View made the records available to Mrs. Lepselter on multiple occasions, but not her counsel. The Court's assertion at the August 28, 2023 hearing that "Boca View said no" was a misstatement. Hr'g tr. 3:8–9.

[3] This was because said authorized, representative Jonathan A. Yellin, Esq. and his Firm also represent non-members of the Association (Cool Spaze LLC and David and Dganit Shefet) who initially sought improper access to the Association's records due to their title issue and their arbitration efforts were denied. Yellin also represents another straw person of those very same non-members, Eileen Breitkreutz, who also sought virtually the same records. As noted below, the Association prevailed in that case before Palm Beach County Circuit Court Court,Hon. Judge Donald W. Hafele. As the real estate agents and managers for the properties of the same non-members and their families, the Lepselters are also part of the same cobweb that is the non-members' own records request.

3

When questioned about that decision, Mr. Marcigliano repeatedly testified that it was made because of his belief, along with that of other members of the board and based on prior problematic situations with other unit owners, that the records were being requested in bad faith and for an improper purpose and would be shared with non-members of the association [DE 55, 57]. This Court ought to be mindful of the fact that *circa* six (6) weeks before these Defendants' records request surfaced, the Association had already shouldered the Sisyphean boulder up the mountain top when it prevailed in an eerily similar litigation concerning a progenitor records request. (See *Boca View Condominium Association Inc. v Breitkreutz*, Case No.: 50-2017-CA-007482XXXXMB and the Fourth District Court of Appeal's *per curiam* affirmance in that action on March 26, 2020 at *Breitkreutz v. Boca View Condominium Ass'n*, 292 So.3d 1182 (Fla. 4th DCA 2020).) Yet, as in *Simeone v. The Walt Disney Company*, 2023 WL 4208481 (Del. Ch. Jun. 27, 2023), a cadre of attorneys[4], financed by the deep pockets of a couple of current litigants with a title issue and, thusly, not entitled to the records, keep rolling said boulder downhill with no care in the world for churning fees on a community association.

Mrs. Lepselter, subsequently began arbitration proceedings against Boca View. Compl. at ¶ 14. Because the arbitration proceeding was governed by the Florida Administrative Code (F.A.C.) and limited in scope to the issue of records requests by a unit owner, a constitutional challenge was not and could not be raised. Fla. Stat. § 718.1255; hr'g tr. 14:2–15:12; 17:15–19;

---

[4] Yellin represented Defendant Eleanor Lepselter during the arbitration proceeding which preceded the trial de novo in state court. Interestingly, following the November 5, 2019 'conflict of interest' remarks by Judge Hafele in the prior, related Breitkreutz litigation, Yellin discontinued his representation of the Defendants in the trial de novo (initiated thereafter, on January 9, 2020). To further complicate the attorney musical chairs game, Defendants' counsel here, Andrew M. Schwartz, Esq. and Christopher Salivar, Esq. of Schwartz and Salivar Legal Team and Andrew M. Schwartz, P.A. represent the real parties in interest to the instant case, *i.e.* the Shefets in the action before Judge Hafele. Salivar has since separated from Schwartz, yet he continues to follow the same path.

23:20–24:4. Indeed, the arbitrator indicated in the Summary Final Order (case number 2019-01-7913): "[t]he Association seeks to interject matters that are outside the scope of the records request in this dispute and over which this Division has no jurisdiction to decide…". Boca View then proceeded to challenge the arbitrator's decision in a trial *de novo* pursuant to Fla. Stat. § 718.1255(4)(k). Compl. at ¶ 15. There, too, Boca View was improperly limited to the issues raised in arbitration. *See id.* The trial court's judgment shows that it did not properly apply the trial de novo standards in its rulings. The trial court concluded the arbitrator's decisions "were not erroneous in any respect, and that the arbitrator correctly ruled on all issues presented to him in the mandatory non-binding arbitration." *See* December 2, 2022 Final Judgment for Defendants, at 2, case No. 2020-CA-000251-XXXX-MB. This ruling shows that the trial court improperly restrained its ruling to the issues addressed in the arbitrator's decision [DE 52–3].

While referenced at the hearing on this Motion, Boca View's closing slides did not address the constitutional challenge because that was not an issue at arbitration nor at trial. Judge Kastrenakes' Final Order did not address a constitutional issue therein because it was likewise not raised. *See* December 2, 2022 Final Judgment for Defendants, case No. 2020-CA-000251 AXX. Boca View first challenged the constitutionality of Fla. Stats. §§ 617.0102 and 617.1606 in Section G of its Motion for Rehearing and/or New Trial, and Judge Kastrenakes' Order indicated that some unspecified or unidentified grounds raised in such motion "were not argued or preserved at trial." *See* December 28, 2022 Order Denying Plaintiff, Boca View Condominium Association, Inc.'s Motion for Rehearing and/or New Trial; hr'g tr. 20:13–21:8. Furthermore, the fact that the argument was presented does not mean it was properly before the court. Hr'g tr. 34:6–35:7. The case is now pending appeal before the Fourth District Court of Appeal on the following issues: the trial court did not properly apply standards applicable to a trial de novo (I); the Association

5

properly exercised its business judgment to restrict the records inspection (II); the trial court improperly injected an unpled waiver defense into the case (III); and the arbitrator's ruling allowing the owner and her representative to both inspect the records, at all times in the future, was a legal error (IV). There, Boca View raised an impairment of contracts argument under the Florida constitution, whereas here the argument arises under Article I, Section 10, clause 1 or the U.S. Constitution.

Boca View's use of the judicial avenues available to it to review judges' decisions in the course of this litigation should not be held against it. Litigation can be, as a practical reality, lengthy, and how long a controversy has taken to be resolved, especially when the COVID-19 pandemic factored smack in the middle of it, also need not be used against Boca View as if it solely depended on it.

The R&R seems to focus solely on the length of the litigation and the steps taken by Boca View to defend its posture throughout the proceedings but turns a blind eye to the history of litigation brought *against* Boca View by the same actors.

## **BACKGROUND**

1. On May 24, 2023, Boca View filed a complaint for Declaratory and Injunctive Relief against Defendants ("Complaint") [DE 1].
2. On June 12, 2023, Defendants filed their Rule 12 Motion to Dismiss [DE 17].
3. On July 4, 2023, Defendants filed their Rule 11 Motion for Sanctions [DE 26].
4. On July 17, 2023, Boca View filed responses to both [DE 39, 40].

5. On August 28, 2023, the Court held oral arguments for 2 hours and fifteen minutes on the issues raised in Defendants' Motion to Dismiss and Motion for Sanctions. [5]

6. On September 7, 2023, Magistrate Judge Matthewman issued his "Report and Recommendation" [DE 61] ("R&R") which is the subject of the following objections.[6]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009).

In the motion to dismiss stage, the court in reviewing a complaint, accepts "all well-pleaded factual allegations as true…" *Darlow v. Babineck*, No. 21-13020, 2022 WL 15345444, at *1 (11th Cir. Oct. 27, 2022). Additionally, the complaint is viewed in the light most favorable to the nonmoving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L.Ed.2d 59 (1984).

In resolving factual challenges to the court's subject matter jurisdiction, "the court may look outside the four corners of the complaint to determine if jurisdiction exists." *Corbett v. Transportation Sec. Admin.*, 968 F. Supp. 2d 1171, 1179 (S.D. Fla. 2012), aff'd, 568 F. App'x 690 (11th Cir. 2014).

---

[5] Towards the end of the hearing, around 3:30 p.m., Magistrate Judge Matthewman indicated multiple times that the parties would be afforded five (5) days to supplement the record. Hr'g tr. 95:9–97:21. However, around 4 p.m. that same day, inexplicably, the Magistrate Judge issued a paperless order [DE 53] shortening the time to file the supplement to the following day.

[6] Similarly, the Magistrate Judge's R&R shortened the timeframe for the parties to file these objections to seven (7) days, half of what the rule allows. *See* Fed. R. Civ. P. 72(b).

## ANALYSIS

A. The Declaratory Judgment Act

Magistrate Judge Matthewman concludes that Boca View is using this case for procedural fencing. R&R at 15. Boca View differs. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. *Mesa Underwriters Speciality Ins. Co. v. High Class Parking Servs., Inc.*, No. 1:18-CV-21745-UU, 2018 WL 8311469, at *2 (S.D. Fla. Sept. 12, 2018). "Courts may deem concurrent state and federal actions in parallel if the parties and issues involved are sufficiently similar in nature." *Id.*

While it is true that under *Brillhart,* federal courts are invited to abstain from exercising jurisdiction when another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties, Boca View has persistently asserted that the constitutional issues pending before this Court could not have been appropriately raised and litigated in the state case. *See* Compl. at 15; DE 39 at 1, 6; hr'g tr. 14:20–15:22. This case involves a declaratory judgment and the state court case does not.

In the R&R, the Court places great emphasis on the factors laid out in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005):

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
> (2) whether the judgment in the federal declaratory action would settle the controversy;
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
> (6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;
(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Boca View disagrees with the R&R's conclusion that these factors balance in favor of dismissing the Declaratory Judgment Count.

It is established that these factors "are not exhaustive; not all are required; and no one is controlling." *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc*, 12 F.4th 1278, 1286 (11th Cir. 2021). *Ameritas* "essentially employ[s] a totality-of-the-circumstances standard." *Am. Mod. Prop. & Cas. Ins. Co. v. Pickett*, No. CV 23-0073-WS-C, 2023 WL 3884643, at *4 (S.D. Ala. June 8, 2023).

Failing to take the totality of the circumstances approach could be considered an abuse of discretion:

> [A] district court abuses its considerable discretion if it fails to consider a relevant factor that should have been given "significant weight"; conversely, if it considers an irrelevant or improper factor and weighs it significantly in the calculus; or if it accounts for only and all proper factors but, in weighing them, "commits a clear error of judgment.

*Gold-Fogel v. Fogel*, 16 F.4th 790, 796 (11th Cir. 2021).

First, Boca View is seeking a declaratory judgment of whether Florida Statutes §617.0102 and §617.1606 violate Article I, Section 10, Clause 1 of the federal constitution. While the state does have an interest in ensuring that its laws are not violating the federal constitution, there is also a federal interest at play. The Supremacy Clause "instructs courts to give federal law priority when state and federal law clash." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 135 S. Ct. 1378, 1381, 191 L. Ed. 2d 471 (2015).

Second, a judgment in this federal court would settle the controversy because the federal constitutional argument could not have been properly raised in the pending appeal and therefore will not be decided in the state-court case. Hr'g tr. 14:20–15:22; 17:4–24:4.

Third, a federal declaratory action would clarify the parties' rights and duties when faced with a future records inspection request and would assist in the determination of future cases involving condominium associations in the same position as Boca View. Boca View takes offence at the suggestion that it does so "in order to skirt the law."

Fourth, this declaratory action is not being used for the purpose of procedural fencing, as the ruling on the state court issues will not resolve the constitutional question. As explained above, this was not an issue that became apparent until the state case was filed, and in the state case, Boca View was unable to raise the constitutional issue in either the arbitration or de novo review in state court.

Fifth, there is little to no danger that a declaratory action in this matter would increase the friction between federal and state courts or improperly encroach on state jurisdiction. There can be no friction between the state and federal court as a result of the federal court solely addressing a federal constitutional issue. As evidence of such, interestingly, the Florida Attorney General's office was put on notice of the instant litigation [DE 38] and has **not** shown the faintest of interest in it.

Sixth, Boca View has no alternative remedy that is better or more effective because it has not had the opportunity to assert, brief, and litigate the constitutional impairment argument in the state case. While Judge Matthewman states that Boca View has raised the issue with respect to Florida's

10

constitution, this does not address the federal constitution. Moreover, the underlying remedy in state court could not address Boca View's constitutional challenge.

The seventh and eighth factors are related. The matter at hand turns on a question of law; therefore, the underlying factual issues are not essential to an informed resolution of the case or would influence which court is in a better position to evaluate those factual issues. This Court must decide whether a statute that was enacted after Boca View's declaration was recorded, which specifically did not agree to adopt amendments to the Florida Condominium statutes, can be applied and override Boca View's contractual rights. Because factual issues are not involved here, the federal forum is the better venue to resolve this issue. Lastly, the legal issues posed here can be independently decided based on legislative construction.

Because "the relevance and weight of the fifth, sixth, seventh, and eighth guideposts is also driven by the degree of similarity between proceedings", the natural conclusion is that this case should not be dismissed as the proceedings in question are related, but not identical. *See Ameritas*, 411 F.3d at 1331. Because the declaratory action may be dismissed or stayed if the other suit will satisfactorily resolve the controversy between the parties, and here, the state court will not resolve the constitutional question, it should not be dismissed. *Nat'l Tr. Ins. Co.*, at 1287.

The Eleventh Circuit explained the tension between abstaining or exercising jurisdiction as follows:

> That means a court cannot cherry pick for its *Ameritas* analysis the claims that favor dismissing—or proceeding with—a federal action. If the court only considers issues raised in both the state and federal cases, it will always underestimate the need to resolve the issues unique to the declaratory action. And if it only assesses the unique federal claims, the opposite result will follow; the court will underestimate the federalism concerns raised by the overlapping issues. Both approaches are unreasonable. Instead, to appropriately assess "the degree of

11

> similarity between concurrent state and federal proceedings," a district court needs to look at the cases as a whole.
>
> *James River Ins. Co. v. Rich Bon Corp.*, 34 F.4th 1054, 1061 (11th Cir. 2022).

The Court further stated that "[a] totality-of-the-circumstances analysis only works when a court considers all of the relevant details. To do otherwise leaves weights that should be balanced off the scales, or, if used more nefariously, would tip them in favor of a result chosen in advance." *Id.* at 1062. We expect this Court to do the same.

The Middle District of Florida refused to dismiss a case where, considering the totality of the circumstances, and although the cases arose "from the same incident and include some of the same parties, the essential dispute in each is different." *S.-Owners Ins. Co. v. Galati Yacht Sales, LLC*, No. 8:21-CV-2567-VMC-SPF, 2022 WL 1453480, at *4 (M.D. Fla. May 9, 2022). *See also Camden Fire Ins. Ass'n v. Mdvip, Inc.,* No. 11-81162-CIV, 2012 WL 12868742, at *3 (S.D. Fla. June 18, 2012); *Landmark American Ins. Co. v. Reli Title, Inc.*, 2009 WL 3202466, *2 (M.D. Fla. 2009). There, the state case was a tort case, but the federal claim was a declaratory judgment on a contractual interpretation issue. *Id.* Because the state court's determination on the tort issue would not resolve the contractual interpretation question, the Court did not dismiss it. *Id.* Here, too, the Court should refuse to dismiss the declaratory action because while the cases are related, they are separate – there is no duplication of effort or federal entanglement with state court proceedings. In sum, the Court cannot accentuate some issues to the detriment of others, and in doing so overlook the significant gains in efficiency the declaratory judgment action would generate.

B. *Younger* Abstention

Black's law dictionary defines "frivolous" as "lacking a legal basis or legal merit." The Court characterizes Boca View's arguments regarding applicable exceptional circumstances that do not favor abstention as such.[7] Boca View, respectfully, disagrees, submits that the R&R analysis adopts an outdated standard which is pre-Justice Ginsburg opinion in a unanimous decision in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77, 134 S. Ct. 584, 590, 187 L. Ed. 2d 505 (2013), and reiterates the legal authority in support of said arguments.

"Jurisdiction existing, [the Supreme Court] has cautioned, a federal court's obligation to hear and decide a case is virtually unflagging." "Parallel state-court proceedings do not detract from that obligation." *Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 24 F. Supp. 3d 1181, 1190 (M.D. Fla. 2014), aff'd, 619 F. App'x 945 (11th Cir. 2015) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77, 134 S. Ct. 584, 590, 187 L. Ed. 2d 505 (2013)). "[F]ederal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not "refus[e] to decide a case in deference to the States." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73, 134 S. Ct. 584, 588, 187 L. Ed. 2d 505 (2013) (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368, 109 S. Ct. 2506, 105 L.Ed.2d 298 (1989) (NOPSI)). "Abstention is not in order simply because a pending state-court

---

[7] Although the Court has yet to issue its Report and Recommendation on the issue of sanctions, Boca View briefly addresses that issue in the present objections given the harsh language used against Boca View in the R&R on Defendants' Motion to Dismiss. Rule 11 was not intended "to chill innovative theories and vigorous advocacy that bring about vital and positive changes in the law… It does not mean the end of doctrinal development, novel legal arguments, or cases of first impression." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990). As explained by the Eleventh Circuit, "[a]lthough we agree that counsel's professional judgment and common sense should discourage certain claims, in most cases we prefer that an attorney feel free to exercise that judgment without fear of reprisals should his lawsuit miscarry." *Id*.

13

proceeding involves the same subject matter." *Id.* Circumstances fitting within the *Younger* doctrine "are "exceptional"; they include, as cataloged in *NOPSI*, "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.""" *Id.*

The Supreme Court's decision in *Younger* was based not on jurisdiction, but "on the principles of equity and comity." *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1263 (11th Cir. 2004). It further delineated exceptions, which the R&R points to. *See* R&R, at 17–18. Two of those exceptions are highly relevant to this case.

First, Boca View lacked an adequate opportunity in the state proceedings to raise constitutional challenges. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982). "[A]bsent an ongoing judicial proceeding in which there is an adequate opportunity for a party to raise federal constitutional challenges, *Younger* is inapplicable." *Id.* at 438, 2524–25. *See also Thompson v. Rogers*, No. 06-22477-CIV, 2006 WL 4056998, at *2 (S.D. Fla. Dec. 27, 2006) (where abstention was exercised only when bar disciplinary proceedings did not clearly bar the adequate opportunity to assert constitutional claims). Here, there were clear bars to Boca View's ability to assert the constitutional challenge where the arbitration and all subsequent proceedings were limited in scope to the records request issue.

The second one is where a party "demonstrated bad faith, harassment, or other 'unusual circumstances' justifying equitable relief," in which circumstances "the Court clearly left room for federal injunctive intervention in a pending state court prosecution." *Thomas v. Disanto*, 762 F. App'x 770, 773 (11th Cir. 2019) (quoting *Mitchum v. Foster*, 407 U.S. 225, 230, 92 S. Ct. 2151,

14

2156, 32 L. Ed.2d 705 (1972)). *Younger-Harris* is applicable when the federal action is simply based on a disagreement with the state court proceedings but in this case, there has been a real and effective lack of adequate opportunity to raise the constitutional challenge. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175–76 (1942); *Magnolia Mar. Transp. Co. v. LaPlace Towing Corp.*, 964 F.2d 1571, 1581 (5th Cir. 1992)). Furthermore, Boca View has pointed to Defendants' bad faith and harassment against the association by engaging in litigation against Boca View beginning as early as 2013, and that justifies equitable relief that will settle this controversy once and for all.

Under *Younger-Harris,* a party may properly bring a federal action where it would not otherwise have an adequate remedy in a state court and would suffer irreparable injury. Boca View's position is that it could not have procedurally raised its constitutional impairment arguments before the state court fulfills this exception. Hr'g tr. 31:1–22; *see also Sears, Roebuck & Co. v. Am. Mut. Liab. Ins. Co.*, 372 F.2d 435, 438 (7th Cir. 1967) (holding that "the pendency of another suit is not a sufficient reason to decline declaratory jurisdiction if that suit will not necessarily determine the controversy between the parties" and ruling that the standards generally to be applied in exercising discretion to hear a declaratory judgment action are "whether a declaratory judgment will settle the particular controversy and clarify the legal relations in issue.")[8]

Moreover, a district court has substantial discretion in deciding or dismissing a declaratory judgment suit when a case is pending in state court. *Wilson v. Seven Falls Co.,* 515 U.S. 277, 286-

---

[8] The Court criticizes *Sears* because it is "old" and non-binding on the Court. It is, indeed, only persuasive authority, but it is still good law, albeit "old." Meanwhile, the Court cites *Brillhart*, a 1942 case. R&R, at 12 and fails to apply the most up-to-date standard of *Younger* as outlined in *Sprint*.

15

87, 115 S. Ct. 2137, 2142 (1993). Here, Boca View asks this Court to exercise such discretion in favor of retaining jurisdiction over Boca View's claims.

C. Count II of the Complaint

Because Count II of the Complaint is intrinsically related to Count I, should the Court not adopt the R&R in regards to Count I, Count II should likewise survive dismissal.

## CONCLUSION

Boca View has set forth good faith legal and factual arguments in support of its Complaint. For all the reasons set forth above, the R&R should be rejected on the issues of the Declaratory Judgment Act and *Younger-Harris* and Defendants' Motion should be denied.

WHEREFORE, Boca View requests an order rejecting the R&R, denying Defendants' Motion, and for such other relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

**HEREY CERTIFY** that on this 14th day of September, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system with copies to Christoper Salivar, Esq. at cssalivarattorney@gmail.com.

Respectfully submitted,

>DE VARONA LAW
>Attorneys for Plaintiff
>4800 N. Federal Highway, Suite 104-D
>Boca Raton, Florida 33431
>(561) 600-9070 (office)
>(561) 600-9077 (fax)
>asd@devaronalaw.com
>
>BY: */s/ Alexandra Sierra-De Varona*
>ALEXANDRA SIERRA-DE VARONA, ESQ.
>Fla. Bar No. 195928