UNITED STATES DISTRICT COURT
SOUTHERN DIVISION OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO: 9:23-cv-80820-RLR

BOCA VIEW CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,
vs.

ELEANOR LEPSELTER and EDWARD LEPSELTER,

    Defendant(s).
_____/

### DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATIONS:

Defendants ELEANOR LEPSELTER and EDWARD LEPSELTER, by and through their undersigned counsel, hereby file their Response to the Plaintiff's September 14, 2023 Objections to the Report and Recommendations of Magistrate Matthewman (DE # 62), as follows:

1. As an initial point, asserted objections to a Report and Recommendation issued by a Magistrate Judge are not to be filed simply as an attempt to re-litigate a factual issue before the Court, or to express a disagreement with the findings of the Court. See *United States v. Long*, 2022 U.S. Dist. LEXIS 167014, *6-7 (S.D. Fla. 2022) ("***Yet a party's objections are improper if they expand upon and reframe arguments already made and considered by the magistrate judge, or simply disagree with the magistrate judge's conclusions***. See Melillo v. United States*, No. 17-CV-80489, 2018 U.S. Dist. LEXIS 151845, 2018 WL 4258355, at *1 (S.D. Fla. Sept. 6, 2018) (emphasis

1

added); *see also Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 U.S. Dist. LEXIS 117862, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) ("It is improper for an objecting party to . . . submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.") (quoting *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)). When the objecting party has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Keaton v. United States*, No. 14-21230-CIV, 2015 WL 12780912, at *1 (S.D. Fla. May 4, 2015); *see also Lopez v. Berryhill*, No. 17-CV-24263, 2019 U.S. Dist. LEXIS 31642, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard [*7] of review" (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000))).").

2. Despite the foregoing, this is exactly what the Plaintiff has done.

3. Within the issued Report and Recommendation (DE # 61), the Magistrate found that the Plaintiff had wholly failed to address applicable law pertaining to the Court's discretionary authority to entertain claims for declaratory relief under the Declaratory Judgment Act. The Magistrate found:

> "Plaintiff simply argues that "[h]ere a declaratory judgment would serve the useful purpose of clarifying what the rights and duties are of this and other associations without Kaufman language in their declarations moving forward

> when faced with a records inspection request" and that "[h]ere, there is no question that the court has Federal Question jurisdiction related to the application of the United States Constitution to this case. As such, the Federal Declaratory Judgment Action applies." [DE 39 at 18]. Plaintiff, however, for the most part, conveniently ignores the above law. The Court finds that a careful application of the factors very clearly balances in favor of dismissing the Declaratory Judgment count.

   *See* DE # 61 at Page 13.

4. The Magistrate then conducted a detailed analysis of the nine (9) factors identified by the Eleventh Circuit Court of Appeal to be considered when a Court determines whether to adjudicate, dismiss, or stay a declaratory judgment claim, finding that each factor weighed in favor of dismissing the Plaintiff's claim.

5. In its Objection to the Magistrate's findings, the Plaintiff now for the first time seeks to address in detail these nine (9) factors (expanding upon its conclusory arguments asserted in DE # 39 and presented before the Magistrate), but in so doing the Plaintiff simply identifies each factor and then states in conclusory fashion that each weighs in favor of adjudicating the Plaintiff's claim.

6. This is insufficient to merit a ruling of this Court sustaining the Plaintiff's objection and disregarding the findings of the Magistrate.

7. Moreover, in order to substantiate its conclusory assertions, the Plaintiff again seeks to pin upon these Defendants "facts" that stem from a near hallucinatory conspiracy theory advanced for years by the Plaintiff's Board members without a scintilla of support. As found by the State Court in the underlying proceedings between the Plaintiff and these Defendants, these Defendants were not "straw persons" seeking records for other individuals. ELEANOR LEPSELTER wanted to have her representative inspect (as is

3

her right under Florida law) the Plaintiff's business records, so she could be apprised of what the Plaintiff was doing in running the condominium association in which she is a Member.

8. The Magistrate correctly found, based upon the matters addressed within the Complaint and the Rule 12 Motion before him, that the Court should decline to address the Plaintiff's claim for declaratory relief and that it should be dismissed.

9. As no clear error was committed, this Court should overrule the Plaintiff's objections and uphold the ruling of the Magistrate.

10. As to the Plaintiff's arguments within DE # 62 as to the *Younger-Harris* abstention doctrine, again the Plaintiff does the impermissible and simply re-states the same argument presented to the Magistrate and voices its displeasure at the Magistrate's rulings, without identifying any clear error in determination of law or fact. Moreover, the Plaintiff continues to argue "out of both sides of its mouth", asserting that "in this case, there has been a real and effective lack of adequate opportunity to raise the constitutional challenge" so as to argue that *Younger-Harris* abstention should not apply, while openly ignoring the fact that the Plaintiff did assert its constitutional challenge arguments at the State Court level (both under the Florida Constitution and United States Constitution), and that it continues to assert its constitutional challenge under the Florida Constitution within its pending appellate arguments (as set forth in its Initial Brief on the merits, found at DE # 52-3). The Magistrate's Report and Recommendation identified this when it occurred during oral argument, as the Plaintiff shifted its arguments to suit its whims when the Court inquired about the application of

4

the *Rooker-Feldman* doctrine (where the Plaintiff asserted the doctrine did not apply as an appeal remained pending before the Fourth District Court of Appeal) while then arguing under *Younger-H*arris analysis that the pending appeal did not address interconnected issues of federal law at the State level and that in fact the Plaintiff did not even possess an opportunity to fully brief and assert its federal law arguments in the State Court proceedings (while ignoring that the arguments were in fact presented to, and denied by, the State Court judge).

11. As is clearly reflected in the Magistrate's Report and Recommendation, the three (3) factors identified by the Supreme Court which must be considered when determining whether abstention is required under Younger-Harris were considered by the Magistrate, and each factor weighed in favor of dismissing this action.

12. Again, the Plaintiff has failed to identify any clear error in determination of fact or law, and as such this Court must overrule the Plaintiff's objection and uphold the rulings of the Magistrate.

13. Finally, at this juncture the Court should consider the Plaintiff and its counsel's continuing efforts to present false factual narratives to this Court in complete derogation of Plaintiff's counsel's obligation of candor, and its pursuit of a claim which is not factually bounded in reality. Within DE # 62 the Plaintiff asserts "Boca View is seeking a declaratory judgment of whether Florida Statutes § 617.0102 and 617.1606 violate Article I, Section 10, Clause 1 of the federal constitution." This claim is one which the Plaintiff, and its counsel, know has been fabricated to create an alleged "controversy"

surrounding provisions of F.S. § Chapter 617 where the underlying facts do not support the claims which have been presented.

14. The Plaintiff's Vice President and Treasurer, Giuseppe Marcigliano, has openly provided sworn testimony that it was **his decision**[1] to disallow ELEANOR LEPSELTER her legal right to have her authorized representative inspect the Plaintiff's records on her behalf, and that **his decision did not rely upon any provision of F.S. § Chapter 617 or 718 to support it**. See Exhibit "1" at Pg. 190-191. The Plaintiff's "constitutional challenge" claim lacks a cogent basis in reality as Mr. Marcigliano did not rely upon any provision of F.S. § Chapter 617 as a basis to deny Mr. Yellin access to the subject records.

15. Given this, there is absolutely nothing for this Court to declare which would have any effect upon these parties, or which would require these Defendants to be named in this suit. A short excerpt of the Plaintiff's argument in DE # 62 identifies the real purpose for the Plaintiff's claims: "Third, a federal declaratory action would clarify the parties' rights and duties when faced with a future records inspection request and would assist

---

[1] To show that this was never a "fact" in contention, when asked in re-direct by the Plaintiff's own attorney, Mr. Marcigliano again admitted that the decision to deny Mr. Yellin access to the records was his and his alone. *See* Exhibit "1", at Pg. 204-205:

BY MR. CERVERA:

> Q: The decision, Mr. Marcigliano, to not allow Mr. Yellin to make the, to be able to be present for the records request, this was a decision that was made only by you?
>
> A: Yes.

6

in the determination of future cases involving condominium associations in the same position as Boca View." *See* DE # 62 at Pg. 10.

16. The Plaintiff's desire to have a "declaration" made for purposes of "future records inspection requests" has nothing to do with these Defendants or the underlying State Court proceedings, but rather everything to do with its desire to continue litigating with these Defendants over anything and everything possible, even where it pertains to a not-yet-ripe controversy, and where these Defendants should not be made to shoulder the burden of litigating the efficacy and constitutionality of the actions of Florida's Legislature on behalf of the entire State of Florida.

17. If the Plaintiff truly desires to litigate over the constitutionality of F.S. § 617.1606 and § 617.0102, it is free to do so in a direct action against the agent of the State of Florida who is charged with enforcing the State's laws.

18. The foregoing paints this case for exactly what it is and always has been: procedural fencing (albeit a poor attempt) and frivolous litigation designed to financially harm the Defendants by requiring them to expend more resources, in yet another forum.

19. At all times the Plaintiff and its counsel have been fully aware that they are prosecuting claims in bad faith, based upon the presentation of a false narrative, and that they are taking action solely to justify its decision to push further litigation, especially where the Plaintiff now argues: "When questioned about that decision, Mr. Marcigliano repeatedly testified that it was made because of his belief, along with that of other members of the board and based on prior problematic situations with other unit owners, that the records were being requested in bad faith and for an improper purpose and

7

would be shared with non-members of the association [DE 55, 57]." Along with this, in DE # 55 the Plaintiff also submitted the following to this Court: "Trial testimony from Giuseppe Marcigliano, Boca View's board member and vice-president, establishes that there are two dates this Court must focus on, February 6, 2022, and February 25, 2022. Pursuant to Mr. Marcigliano, the board did make the decision to only allow Mrs. Lepselter to review the records and that Mr. Yellin would not be permitted to review them." *See* DE # 55, at Par 5.

20. However, the Plaintiff's factual assertions as to Mr. Marcigliano's basis for his decision, and the "fact" that the Plaintiff's Board purportedly made a decision, are **patently and demonstrably false**.

21. Mr. Marcigliano did not speak to the other Members of the Plaintiff's Board of Directors about the subject records inspection request. He did not discuss any "concerns" with them, or consider any "concerns" they harbored, as the Board Members **did not communicate with each other.** See Exhibit "1" filed herewith. The Plaintiff's "Board" could never have made a "decision" where Mr. Marcigliano never spoke to Diana Kuka or Harry Marcellino (the other two Board Members) prior to February 25, 2019 about the record inspection or whether Mr. Yellin would be allowed to inspect the records as ELEANOR LEPSELTER'S representative. Diana Kuka openly testified that one of the three (3) Board members, Harry Marcellino, was not even in the country at the time (See Exhibit "2", at Pg. 463), and she also openly admitted that she was not part of the decision making process that saw Mr. Marcigliano

decide that Mr. Yellin would not be allowed to inspect the subject records. See Exhibit "2", at Pgs. 451-453, and 463-464.

22. The Plaintiff and its counsel have at all times been aware that Mr. Marcigliano testified, under oath and penalty of perjury, that he denied access to Mr. Yellin because he "represent everybody else of the troublemakers in our building". See Exhibit "1" at Pg. 176.

23. While it would appear to be "par for the course" for the Plaintiff to present false facts, argument, and testimony in matters brought before the Courts of the State of Florida (at both the Federal and State level), it is nearly beyond belief that officers of the Court who are, or should be, well aware of their obligation of candor to the Court would continue to present false factual narratives solely to continue the Plaintiff's campaign of scorched earth litigation on all fronts despite having access to the very trial transcripts and sworn testimony which disproves the Plaintiff's position.

24. Making matters even worse, the admissions of Mr. Marcigliano and Ms. Kuka made during the underlying October 2022 trial matched admissions previously made by both of them in <u>October of 2020</u> when they were deposed in anticipation of a final trial. During those depositions Mr. Marcigliano and Ms. Kuka again openly admitted that Mr. Marcigliano acted alone in his decision making, that he did not speak with Diana Kuka or Harry Marcellino about what Mr. Marcigliano intended to do, and Mr. Marcigliano admitted that he did not rely upon any provision of Florida's Statutes to support his decision to deny Mr. Yellin access to the subject records. See Exhibit "3" filed herewith.

25. To directly cite the Plaintiff's presented definition of "frivolous", it is the very apex of frivolity to present argument for extraordinary relief (seeking to declare a Florida State Statute unconstitutional) while **actually knowing** that the underlying facts do not support the claim for the relief requested. At all times the Plaintiff and its counsel have known that Mr. Marcigliano did not actually rely upon F.S. § 617.1602 in the underlying State Court action as the basis for his decision to disallow access to the records to Mr. Yellin. The Plaintiff and its counsel have also known at all times that the argument that it still possessed the right under F.S. 617.1602 to deny access to records "where a request is made in bad faith or not for a proper purpose" was a made-up-after-the-fact argument attempting to explain away Mr. Marcigliano's conduct.

26. And yet, the Plaintiff initiated this proceeding, and had Mr. Marcigliano sign a verification under penalty of perjury attesting that all facts asserted in DE # 4 (Plaintiff's Verified Motion for Preliminary Injunction) and the Plaintiff's Complaint (DE # 1) were true and correct.

27. To know the foregoing, and to then still file an action in the Federal District Court in and for the Southern District of Florida arguing a completely meritless position (i.e., that the Plaintiff possessed the right to deny Mr. Yellin access to the subject records pursuant to F.S. 617.1602 when Mr. Marcigliano made his 2019 decision) should subject the Plaintiff and its counsel to the imposition of sanctions. There is simply no basis for a claim seeking to declare "unconstitutional" statutes which in reality had no effect whatsoever upon the "rights" of the Plaintiff (i.e. F.S. § 617.0102 and F.S. §

617.1606) where the Plaintiff never exercised any "right" under F.S. § 617.1602 (the statute abolished by F.S. § 617.1606 in 2010).

28. Even assuming arguendo that this Court were to exercise jurisdiction and to find that F.S. § 617.1606 and § 617.0102 could not constitutionally be applied to the Plaintiff based upon its incorporation under its Declaration of Condominium in 2004 lacking "Kaufman" language, it would have no bearing upon the ruling in the State Court proceedings as, **per Mr. Marcigliano's own testimony, there was no reliance upon F.S. § 617.1602 (or any provision of F.S. Chapter 617) when Mr. Marcigliano made his decision to deny Mr. Yellin access to the subject records**. The Plaintiff was not prevented from making any legal arguments in the trial de novo below regarding the applicability (or inapplicability) of F.S. § 617.1602, as the underlying judgment rendered by the State Court considered the Plaintiff's "bad faith/improper purpose" argument, and while the Court found that F.S. § 617.1602 was abrogated by F.S. § 617.1606 the Court also expressly ruled that **there was no factual merit to the Plaintiff's "bad faith/improper purpose" argument to begin with**. *See* DE # 1, Exhibit "F", at Pgs. 2-5.

29. Given the abhorrent conduct of the Plaintiff and its counsel, the Defendants believe it would be appropriate for the Court to consider an exercise of the Court's powers under Rule 11, 28 U.S.C. § 1927, or the Court's own inherent jurisdiction (*see gen. Pennington v. CGH Techs., Inc.*, 2022 U.S. Dist. LEXIS 208834, *6 (M.D. Fla. 2022)), to finally punish the Plaintiff and its counsel for the rampant assertion of patently false

"facts" within its filings in this action[2]. The Plaintiff and its counsel have only initiated these proceedings in bad faith, to harass the Defendants and to require them to expend further resources defending themselves in yet another jurisdiction (specifically EDWARD LEPSELTER, who was not a party to the underlying State Court arbitration and was only made a party Defendant in the State Court trial level proceedings based upon the Plaintiff's argument that he was a "necessary party" – a position the State Court disagreed with in finding that he was not a necessary or proper party). There is simply no excuse for the Plaintiff's conduct, or that of its counsel, to present false "facts" and a completely false factual narrative to this Court that is directly contradicted by the sworn testimony of the Plaintiff's own corporate officers.

## **CONCLUSION**

Given this foregoing, Defendants respectfully request that this Court OVERRULE the Plaintiff's Objections filed on September 14, 2023 to the Magistrate's Report and Recommendations, that a Final Order be entered affirming the Report and Recommendations of Magistrate Matthewman in their entirety, and that this court grant the Defendants such other and further relief as the Court may deem just and proper (including

---

[2] In addition to Mr. Marcigliano admitting that he did not speak with Harry Marcellino or Diana Kuka about his intention to deny Mr. Yellin access to the subject records, Diana Kuka admitted in her trial testimony that she first learned about the reason for Mr. Marcigliano's decision **after** February 25, 2019.  *See Exhibit "2", at Page 468 of the Trial Transcript*.  And as noted above, she also openly admitted that she was not part of the decision making process. See Exhibit "2" at Pages 451-452. Given this, there has **never** been factual support for, or a good faith basis for, the Plaintiff's assertion in this action that Plaintiff's "Board" made a decision to deny Mr. Yellin access to the records. The decision was always made by Mr. Marcigliano and Mr. Marcigliano alone.

but not limited to a recovery of reasonable attorney's fees incurred in connection with these proceedings based upon the Plaintiff's frivolous positions taken in litigation and its repeated provision of false "facts" to this Court).

Respectfully submitted on September 18, 2023.

**CHRISTOPHER S. SALIVAR, P.L.L.C.**
301 W Atlantic Ave Suite O-5
Delray Beach, FL 33444-3686
Telephone: (561) 628-8908
cssalivarattorney@gmail.com

By: /S/ *Christopher S. Salivar*
    Christopher S. Salivar
    Florida Bar No.: 57031

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that on this 18th day of September, 2023, that a true and correct copy of the foregoing has been filed through the Court's CM/ECF-filing portal and that a true copy has been served through the portal upon all counsel of record in this action.

By: /S/ *Christopher S. Salivar*
    Christopher S. Salivar
    Florida Bar No.: 57031

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1

Your undersigned hereby certifies that this filing complies with the font, sizing, and spacing requirements of Local Rule 5.1.

By: /S/ *Christopher S. Salivar*
    Christopher S. Salivar
    Florida Bar No.: 57031