UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-80820-ROSENBERG/MATTHEWMAN

BOCA VIEW CONDOMINIUM
ASSOCIATION, INC.,

   Plaintiff,
v.

ELEANOR LEPSELTER and
EDWARD LEPSELTER,

   Defendants.
_____/

FILED BY ___SW___ D.C.
Oct 11, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 11 MOTION FOR SANCTIONS [DE 26]

**THIS CAUSE** is before the Court upon an Order of Reference from the Honorable United States District Judge Robin L. Rosenberg [DE 32] for disposition of Defendants, Eleanor Lepselter and Edward Lepselter's ("Defendants") Rule 11 Motion for Sanctions ("Motion") [DE 26]. The Motion is fully briefed. *See* DE 40. The Court heard argument on the Motion on August 28, 2023. The parties then filed the court-ordered supplemental briefs. *See* DEs 54, 55, 56, 57, 58. This matter is now ripe for review.

  I.  **INTRODUCTORY STATEMENT AS TO THE UNDERLYING RECORDS DISPUTE BETWEEN BOCA VIEW AND THE LEPSELTERS**

A simple records request to a condominium association by a condominium unit owner in Florida would seemingly be a routine and noncontroversial matter, but, in this particular situation, Plaintiff Boca View Condominium Association, Inc. ("Plaintiff") has repeatedly and unnecessarily insisted on making the simple complicated. Well over four (4) years ago, on February 6, 2019, letters were sent to Plaintiff by Mr. and Mrs. Lepselter and their counsel, Mr. Yellin, requesting

that they be permitted to inspect and copy certain Association records. To make a long story short, Plaintiff said no.

In order to obtain those records in light of Plaintiff's refusal, and as permitted by Florida law, unit owner Defendant Eleanor Lepselter filed with the State of Florida Department of Business and Professional Regulation, Division of Condominiums, a Mandatory Non-Binding Arbitration Petition against Plaintiff. After very extensive litigation in that Arbitration proceeding, the State of Florida Chief Arbitrator Mahlon C. Rhaney, Jr. entered a Summary Final Order (case number 2019-01-7913) which deemed Mrs. Lepselter to be the prevailing party, imposed $500.00 in minimum damages against Plaintiff, and, not surprisingly, ordered Plaintiff to produce the records.

Choosing to continue this Sisyphean battle, Plaintiff filed an action in Palm Beach County Circuit Court seeking to vacate the Chief Arbitrator's decision. After very extensive litigation, the Circuit Court Judge (case number 2020-CA-000251) affirmed the Arbitrator's decision, found Defendants to be the prevailing parties, affirmed minimum damages of $500.00, and ordered the inspection of the records to proceed. In subsequent orders, the Palm Beach County Circuit Court denied Plaintiff's 83-page motion for rehearing, and later ordered Plaintiff to pay approximately $246,000 in costs and attorney's fees. Plaintiff sought a stay pending appeal, which the Circuit Court denied.[1]

Thereafter, Plaintiff appealed the decision of the Palm Beach County Circuit Court to the Florida Fourth District Court of Appeal (case number 23-0257). The Fourth District Court of

---

[1] By way of background, while all this litigation over the Lepselter records request to Plaintiff was going on, the United States Department of Housing and Urban Development filed a motion to enforce a subpoena in this district seeking records from Boca View in relation to alleged discriminatory housing practices by Boca View. In that federal case (22-mc-80139-CANNON/REINHART), after much litigation, Boca View was ordered to produce the records subpoenaed by HUD.

Appeal denied Plaintiff's motion for a stay, and that appellate matter is currently in the briefing process.

That brings us to this federal case. Plaintiff has now filed its Complaint for Declaratory and Injunctive Relief and to determine constitutionality of two Florida Statutes—sections 617.1606 and 617.0102. Plaintiff seeks quite extraordinary relief here, including that this Court temporarily and permanently stay the state court action, that this court adjudicate that Plaintiff does not have to produce any records in response to the Lepselters' request, and that this Court award Plaintiff its attorney's fees and costs pursuant to sections 718.1255 and 718.303, Florida Statutes.

On September 7, 2023, the Undersigned issued a Report and Recommendation [DE 61] recommending that Defendants' Rule 12 Motion [DE 17] be granted and that the entire lawsuit be dismissed. On October 10, 2023, the Honorable Judge Rosenberg, United States District Judge, affirmed and adopted the Report and Recommendation in a written Order [DE 65]. The Undersigned assumes the reader's familiarity with that Report and Recommendation and incorporates it herein.

## II.  BACKGROUND OF THIS FEDERAL LAWSUIT

On May 23, 2023, Plaintiff filed a Complaint for Declaratory and Injunctive Relief [Compl., DE 1] against Defendants. Plaintiff seeks a judgment declaring "(1) the parties' respective rights, duties, and obligations under a specific contract, specifically, Association's Declaration of Condominium, also a covenant running with the land; as well as, (2) that §617.0102 and §617.1606, Florida Statutes, unconstitutionally impair said contract." [Compl. ¶ 1]. Plaintiff further alleges that "an ongoing federal violation of Article I, Section 10, Clause 1 of the US Constitution is and will continually be occurring." *Id.* ¶ 2.

Defendants are co-owners of a unit in Boca View, a condominium located in Palm Beach County, Florida. *Id.* ¶ 4. They are also members of the Boca View Condominium Association. *Id.* In February 2019, Defendants, through attorney Jonathan Yellin, Esq., requested to inspect "identical categories of Association's records, for the identical purpose – a forensic accounting—made by Cool Spaze." *Id.* ¶ 10. Defendants were initially notified that they could inspect the documents on February 25, 2019. *Id.* ¶ 11. According to Plaintiff's complaint, the records were made available to Mrs. Lepselter for her inspection in her capacity as a unit owner. *Id.* ¶ 12. However, no copies or records would be released to Mrs. Lepselter unless she signed a personal guarantee that she "would not release said records to any third-parties, including Cool Spaze/Shefets." *Id.* ¶ 13.

After Defendants were not allowed to have their attorney view the records, a Mandatory Non-Binding Arbitration Petition was filed by Mrs. Lepselter against Plaintiff with the State of Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes on April 3, 2019. [DE 1–5]. On October 25, 2019, a Summary Final Order was issued. *Id.* The Chief Arbitrator determined that Plaintiff's "defenses are without merit and [i]t has willfully failed to comply with Petitioner's records request. Therefore, Petitioner is entitled to her requested statutory damages of $500.00 with regard to her February 6, 2019 records request." *Id.* at 12. The Chief Arbitrator also required that Plaintiff "immediately make available all the official records requested by Petitioner in this case, and at all times in the future, to Petitioner and her authorized representative in accordance with Section 718.111(12), Florida Statutes." *Id.* On December 10, 2019, Plaintiff's Motion for Clarification/Rehearing was also denied. [DE 1–5].

4

On January 9, 2020, Plaintiff "filed a Complaint for Trial De Novo, a hybrid appellate procedure pursuant to §718.1255, Florida Statutes, Palm Beach County Circuit Court Case No. 50-2020-CA-000251-XXXX-MB." [Compl. ¶ 15]. On December 2, 2022, the trial court upheld and ratified the Summary Final Order dated October 25, 2019; directed Plaintiff to comply with the arbitrator's direction for it to pay $500.00 to Defendants; and required Plaintiff "to immediately make available all of the requested records identified in Jonathan Yellin, Esq.'s February 6, 2019 written records inspection letter to Mr. Yellin as Eleanor Lepselter's authorized representative." [DE 1–6]. The trial court also found that Defendants were entitled to court costs and reasonable attorney's fees. *Id.* On December 28, 2022, the trial court denied Plaintiff's 83-page motion for rehearing. *Id.* On February 16, 2023, the trial court entered an order denying Plaintiff's motion to stay pending appeal. [DE 1-7]. The case is currently pending before the Fourth District Court of Appeal in case number 4D23-257. The Fourth District Court of Appeal denied Plaintiff's motion to stay, and the Initial Brief has been filed by Plaintiff. Compl. ¶ 15; DE 52–3. That appeal is currently in the briefing stage.

Plaintiff makes several arguments in the Complaint that Defendants' request to inspect records was improper. Compl. ¶¶ 16, 17, 19, 20, 22. Plaintiff also alleges that section 617.1606, Florida Statutes, does not apply to Plaintiff. *Id.* ¶ 25. Further, according to Plaintiff, "[t]here can be no doubt that the Association possessed the right to deny the Lepselters' request to inspect records for an improper purpose." *Id.* ¶ 41. Plaintiff alleges that "the actions of the Defendants, the arbitrator and the de novo Court's failure to address the law regarding the 'good faith and proper purpose' defenses made by the Association violate the U.S. Constitution." *Id.* ¶ 25.

In Count I of the Complaint, Plaintiff seeks Declaratory Judgment because it is "in doubt of its rights under its Declaration of Condominium and seeks a declaration of its rights and

5

obligations with respect to a records request, including the Defendants' one, and its obligations related thereto as well as the application of §617.0102 and §617.1606, Florida Statutes is constitutional." *Id.* ¶ 51. The Complaint further states that Plaintiff "seeks the entry of a judgment by this Court declaring that under the above- referenced Declaration of Condominium, Association does have the right to consider a proper purpose in relation to a records request, including the Defendants' one, and that applying §617.0102 and §617.1606, Florida Statutes is unconstitutional because it impairs the Association's contractual obligations with its members." *Id.* ¶ 52.

In Count II of the Complaint, Plaintiff seeks an injunction and alleges as follows:

58. Article 1, section 10, cl. 1, United States Constitution and article 1, section 10 of the Florida Constitution prohibits Florida from retroactively applying the ex post facto §617.1606, Florida Statutes of 2010, and impairing a covenant running with the land which does not contain *Kaufman* language such as the Association's 2004 Declaration of Condominium.

59. Article 1, section 10, cl. 1, United States Constitution and article 1, section 10 of the Florida Constitution prohibits Florida from applying §617.0102, Florida Statutes, to retroactively apply ex post fact laws which impair a covenant running with the land such as the Association's Declaration of Condominium.

60. Regardless of legislative intent, the retroactive application of on the aforementioned law violates the federal and state Ex Post Facto clause because its debilitating effects impair a contract.

61. Plaintiff has a clear legal right to relief as the State Court's below orders violate Plaintiff's vested constitutional rights in its Governing Documents.

62. Plaintiffs has a substantial likelihood of success on the merits in that the State Court's orders violate Plaintiff's vested constitutional rights in its Governing Documents.

63. Granting injunction is in the public interest, in that the unconstitutionally impairing vested rights is not in the public interests.

64. Plaintiff has suffered irreparable harm and have no adequate remedy at law.

*Id.* ¶¶ 58–64.

The Undersigned recommended that both counts of the Complaint be dismissed pursuant to the Declaratory Judgment Act and *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). [DE 61]. The Undersigned rejected Defendants' remaining arguments, such as those concerning the statute of limitations and application of the *Rooker-Feldman* doctrine. The District Judge has affirmed the Report and Recommendation [DE 65].

### III.   THE PARTIES' ARGUMENTS

A.   Defendants' Motion [DE 26]

Defendants move for Rule 11 sanctions and argue that "Plaintiff, and Plaintiff's counsel are, or should be aware (had they performed even a minimum level of pre-suit research) that Plaintiff's claims are wholly unsupported by the facts and law needed to sustain them, and that Plaintiff has in fact openly alleged facts establishing that Plaintiff's constitutional challenge to F.S. § 617.1606 is time barred." [DE 26 at 2]. Defendants accuse Plaintiff and its counsel of choosing to "continue prosecuting factually and legally frivolous claims in this matter purely for purposes of acting as vexatious litigants and to cause the Defendants to incur unnecessary attorney's fees to defend against the Plaintiff's baseless claims." *Id.* According to Defendants, "the Plaintiff's Complaint is frivolous, and it is readily apparent that the Complaint has been filed for an improper purpose (to harass and cause the Defendants to needlessly incur litigation expenses), seeks relief beyond this Court's jurisdiction, and the claims presented are not supported by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law." *Id.* at 7. In the remainder of Defendants' Motion for Sanctions, they reiterate their arguments from the Motion to Dismiss. *Id.* at 7–29.

7

B.        Plaintiff's Response [DE 40]

In response, Plaintiff maintains that the "Motion should be denied as the Association has not filed this lawsuit for an improper purpose, its claims are warranted by existing law and the Association has not raised a frivolous argument, and the factual contentions have evidentiary support." [DE 40 at 1]. Plaintiff then reiterates its arguments in response to Defendants' Motion to Dismiss. *Id.* at 4–20.

C.        The Supplemental Filings

At the August 28, 2023 hearing, the Court required Plaintiff and Defendants to file post-hearing statements providing the Court with record citations regarding the basis or bases for the denial of records back in 2019 to Mrs. Lepselter and her counsel, and demonstrating whether the Association or an individual made the decision to deny those records. Defendants filed their statement [DE 54] with no issue. However, after Plaintiff filed its statement [DE 55], Defendants filed a response to Plaintiff's statement [DE 56], which resulted in Plaintiff seeking leave to amend its statement by interlineation [DE 57], which was ultimately granted over objection. [DE 59].

### IV.        LEGAL STANDARD

Federal Rule of Civil Procedure 11 "is intended to deter improper litigation techniques, such as delay and bad faith." *Briggs v. Briggs*, 245 F. App'x 934, 936 (11th Cir. 2007) (citing Fed. R. Civ. P. 11, 1983 Advisory Committee notes). "Rule 11 permits imposing sanctions on an attorney, law firm, or party as the court deems appropriate." *Williams v. Weiss*, 190 F. App'x 944, 945 (11th Cir. 2006) (citing Fed. R. Civ. P. 11(c)). Although district courts have discretion whether to award Rule 11 sanctions, a district court abuses that discretion if it fails to "describe the conduct it determined warranted sanctions and explain the basis for the sanctions imposed." *Id.* (citing Fed. R. Civ. P. 11(c)(3)); *see also Flores v. Park W. Parking LLC*, No. 06-22055-CIV, 2008 WL 11409098,

8

at *8 (S.D. Fla. Feb. 1, 2008) ("The Court may not sanction Plaintiff or his counsel without making *specific findings of subjective bad faith conduct.*") (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir. 1998)).

This Court recognizes "Rule 11's objectives, which include: (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management." *Sussman v. Salem, Saxon & Nielsen, P.A.*, 150 F.R.D. 209, 213 (M.D. Fla. 1993) (citing American Bar Association, Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure (1988), reprinted in, 5 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure 212, 235–36 (Supp.1989); *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir.1987)). "The primary goal of the sanctions is deterrence." *Id.* (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("It is now clear that the central purpose of Rule 11 is to deter baseless filings in District Court and thus, ... streamline the administration and procedure of the federal courts.")).

As such, "Rule 11 sanctions are appropriate (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory with no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith and for an improper purpose." *Briggs*, 245 F. App'x at 936 (citing *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001)). The Court may subject a represented party such as Plaintiff to Rule 11 sanctions if, for example: (1) allegations in the complaint were frivolous and Plaintiff "knew or should have known that the allegations in the complaint were frivolous;" (2) Plaintiff "misrepresent[ed] facts in the pleadings;" or (3) the action was frivolous and Plaintiff was the "mastermind" behind the frivolous case. *Byrne v. Nezhat*, 261 F.3d 1075, 1117-18 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond &*

*Indem. Co.*, 553 U.S. 639 (2008) (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)). The Court must first decide "whether the party's claims are objectively frivolous" and then determine if the attorney, the party, or both should be sanctioned pursuant to Rule 11 as a result. *See Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

## V. DISCUSSION AND ANALYSIS

This Court is always quite cautious and very careful when considering Rule 11 sanctions, and this Court is hesitant to impose Rule 11 sanctions on a party or its counsel unless there is a clear and sufficient legal and factual basis. But there comes a time when this Court must impose sanctions when it observes bad faith, frivolous, groundless litigation here in federal court. Such is the case here.

As analyzed in detail in the Report and Recommendation regarding Defendants' Motion to Dismiss [DE 61], and in light of the procedural history of this case, it is clear that Plaintiff and its counsel filed and then continued to pursue a factually and legally frivolous Complaint in bad faith based on a legal theory with no reasonable chance of success, all for an improper purpose.

This federal lawsuit was improvidently filed after 1) a lengthy and contentious arbitration proceeding before the State of Florida Department of Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes' Chief Arbitrator Mahlon C. Rhaney, Jr., where Plaintiff lost; 2) a lengthy and contentious trial de novo before Palm Beach County Circuit Judge John S. Kastrenakes, where Plaintiff lost; 3) further contentious motion practice before successor Palm Beach Circuit Judge Carolyn Bell, which Plaintiff lost; 4) the denial of Plaintiff's motion to stay by Palm Beach Circuit Judge Bell; 5) the filing of an appeal by Plaintiff to the Florida Fourth District Court of Appeals, which appeal remains pending; and 5) the Fourth District Court of Appeal's denial of Plaintiff's motion for a stay. All of this is over a simple records request made

10

in 2019 by Defendants and their counsel to simply inspect and copy records of the Boca View Condominium Association where the Defendants own a residential unit and reside. Now, in 2023, this federal court must deal with Plaintiff's vexatious and frivolous litigation tactics in this court, as discussed in detail below.

In support of its grant in part of Rule 11 sanctions against Plaintiff and its counsel, the Court first notes that Chief Arbitrator Rhaney found that the "Association's defenses are without merit and it has willfully failed to comply with Petitioner's record request." [DE 1–5 at 12]. Plaintiff was undeterred, however, and continued to contentiously litigate.

Second, the Court notes that Circuit Judge Kastrenakes, after a lengthy and contentious trial, wholly rejected Plaintiff's position. Specifically, in a 26-page Final Judgment in favor of Defendants, he ruled that the final decisions of Chief Arbitrator Rhaney "were not erroneous in any respect and that the arbitrator correctly ruled on all issues presented to him . . . ." [DE 1–6 at 2]. Further, in the Final Judgment, Judge Kastrenakes found, *inter alia*, 1) a "lack of legal support for the Plaintiff's argument"; 2) "the Plaintiff's entire premise to be flawed"; 3) "the lack of credibility of Plaintiff's position"; 4) "that Florida Statutes § 718.111(12)(c)(1) did not give the Plaintiff a right to choose to whom it wanted to make the subject records available"; 5) that when "board member, Giuseppe Marcigliano, made his decision to deny Jonathan Yellen, Esq. access to the Plaintiff's records, he directly violated Florida Statutes § 718.111(2)(c)(1)"; 6) that Plaintiff's position was "nonsensical"; 7) "there is absolutely no evidence in the record which substantiates the Plaintiff's 'business judgment rule' argument"; and 8) the Lepselters were the "prevailing parties." *Id.* at 3, 5, 6, 9, 10, 11, 15, 22.

Third, the Court notes that successor Circuit Judge Bell, in an Order on several post-trial motions, 1) denied Plaintiff Boca View's motion for a new trial; 2) re-adopted and re-affirmed all

11

of the Court's prior rulings; 3) found that Plaintiff's "Statement of Facts" was really a "Statement of Unproven Theories" as it constituted "simply unproven rhetoric" and was "largely irrelevant"; 4) denied Plaintiff's motion for a stay pending appeal; and 5) ordered the withheld documents produced. [DE 1–7 at 1–5]. Further, Judge Bell subsequently ordered Plaintiff to pay Defendants the sum of approximately $246,000 in attorney's fees and costs. [DE 60 at 29: 18–25; 30: 1].

That brings us to this recently filed federal court action. Not content with its repeated losses before the State Arbitrator and two Florida Circuit Judges, Plaintiff has now asked this Court to effectively reverse the decisions of the Arbitrator and State Court Judges and come to a completely contrary conclusion than the state trial court and the arbitrator—all while a state appeal is pending—because Plaintiff did not like the results it obtained previously in its years of contentious litigation. The extraordinary relief sought by Plaintiff here requests and demands that this Court 1) temporarily and permanently stay the state court proceedings; 2) adjudicate that Plaintiff does not have to produce any records; and 3) award Plaintiff its costs and attorney's fees. *See* Compl. Such overbroad, improper and frivolous demands for relief demonstrate the frivolity of Plaintiff's Complaint and would cause a first-year lawyer to hit the pause button. However, Plaintiff and its current counsel brazenly seek and pursue such relief without a good faith basis to do so. There is simply no basis for this Court to grant the relief requested by Plaintiff. Moreover, Plaintiff frivolously claims entitlement to an award of attorney's fees and costs under sections 617.0102 and 617.1606, Florida Statutes, when those statutes are not even applicable to the facts of this case or to the claims brought in this federal lawsuit.

The Court finds that Plaintiff and its counsel have clearly acted vexatiously and in bad faith in filing and pursuing the relief sought in the Complaint in this federal action in what can best be

described as an attempt to hedge its bets, delay production of the records to Defendants, and forum shop.

The Court additionally finds that Plaintiff has fabricated a purported statutory constitutional challenge in an after-the-fact effort to justify the wrongful decision of Plaintiff to deny Defendants and their counsel access to the Association records. In this regard, it is important to note that the Circuit Court previously determined that

> the testimony of Giuseppe Marcigliano [Boca View's board member and vice president] established that he alone made the decision to deny Eleanor Lepselter's representative access to the requested records, and that his decision was made based upon a combination of pure conjecture (that Jonathan Yellin, Esq. was seeking access to records [from] some other persons behind the scenes) and his own dislike and distrust of Mr. Yellin, whom Mr. Marcigliano referred to as a "liar" and a "fake lawyer." Mr. Marcigliano also testified that, at the time he decided to deny access to Mr. Yellin, he did not have any specific provision of Florida Statutes Chapters 617 or 718 in mind to support his decision.

[DE 17–1 at 6].

Defendants have also cited to various evidence from the record that further supports the Palm Beach County Circuit Court's findings and rulings. [DEs 54, 56]. Plaintiff has provided other excerpts from the underlying record in order to attempt to establish Defendants' improper intent in obtaining the records. [DEs 55, 57]. Taking all of these facts into consideration, it is clear to the Court that Plaintiff's constitutionality argument raised in this federal case is frivolous and constitutes an attempt to delay production of the documents and overcomplicate this case for an improper purpose. Even considering all of the underlying evidence in the light most favorable to Plaintiff, the constitutionality of the Florida statutes simply was not even contemplated at the time of the records inspection denial. In fact, it is clear that no Florida statute was contemplated when the records request was wrongfully denied. Plaintiff's Board Member Mr. Marcigliano wrongly denied the records request because he disliked and did not trust the attorney for the Lepselters.

13

Yet, now, Plaintiff trumpets its constitutionality claim despite the fact such claim was never even relied upon or envisioned by Board Member Marcigliano when he wrongly and improperly denied the Lepselters' records request. Plaintiff has raised post-hoc arguments, which are factually and legally frivolous, in an effort to attempt to belatedly justify its wrongful denial of the records request well after the fact when there simply was no justification for denial of the records request made by the Lepselters back in 2019.

Given the complicated, vexatious and lengthy litigation history of this case before the arbitrator and the Palm Beach County Circuit Court; the Court's observations of the collaboration between Igli Kuka, a representative of Plaintiff, and Plaintiff's counsel at the hearing on the Motion; the fact that Plaintiff's representative sat at counsel table with Plaintiff's counsel at the hearing before the Undersigned and communicated with counsel throughout; and the fact that Plaintiff has been represented by multiple different attorneys at different points in this litigation, the Court finds that Plaintiff knew or should have known the allegations in the Complaint were frivolous, vexatious, and without factual or legal support. Furthermore, and importantly, Plaintiff appears to be the leading force behind this frivolous action. Thus, the Undersigned specifically finds that sanctions are appropriate against Plaintiff.

The Court further finds that Rule 11 sanctions are appropriate here as to Plaintiff's current counsel of record—Alexandra Sierra De Varona, Esq., Mayelin Teresa Rodriguez, Esq., and De Varona Law. Defendants' counsel established without opposition at the hearing on the Rule 11 Motion that "[n]otice of the service of this [M]otion was provided to Plaintiff's new counsel before there was even a formal appearance. So there was an appearance made with knowledge that this had been served and was intending to be filed and proceeded under, and a copy of the [M]otion was actually provided." [DE 60 at 87: 3-8]. Thus, there is no question that Plaintiff's current

14

counsel were on proper notice under Rule 11 and that sanctions against Ms. De Varona, Ms. Rodriguez, and De Varona Law are appropriate as they appeared in this case fully aware of the procedural posture of the case and responded to the Motion to Dismiss and the Motion for Sanctions, thus pursuing and prolonging this frivolous litigation. The two attorneys and their law firm should all be sanctioned under Rule 11.

Finally, based upon the facts and law, the Court exercises its discretion to deny Defendants' Motion specifically as it pertains to John Reid Sheppard, Esq., and his law firm, Fowler White Burnett, P.A. Mr. Sheppard and his law firm filed the problematic Complaint in this case. However, Defendants' counsel thereafter emailed Mr. Sheppard on June 8, 2023, explaining in detail that the Complaint was legally deficient and stating that a Rule 11 motion might be filed in the case. [DE 26-1]. Then, on June 30, 2023, Mr. Sheppard and Fowler White Burnett, P.A., promptly moved to withdraw from this case due to irreconcilable differences between Plaintiff and the law firm. [DE 22]. The motion to withdraw was later granted. [DE 29]. Thus, approximately three weeks after Mr. Sheppard received the email from Defendants' counsel which listed the deficiencies in the Complaint and mentioned the seeking of a Rule 11 motion and sanctions, he and his law firm moved to withdraw from the case. Under these facts, sanctions would be inappropriate as it does not appear that Mr. Sheppard or his firm would have had any opportunity to withdraw or amend the Complaint given the irreconcilable differences that quickly erupted between Plaintiff and its counsel.

## VI. CONCLUSION

The Court has described above the conduct by Plaintiff and its counsel that warrants sanctions and has explained the basis for the sanctions imposed. It is clear that at this point that Plaintiff, as well as counsel Alexandra Sierra De Varona, Esq., Mayelin Teresa Rodriguez, Esq.,

and De Varona Law, have all acted in bad faith in prosecuting this lawsuit for the stated in this Order. Accordingly, Rule 11 sanctions are appropriate in this case to 1) deter future litigation abuse by Plaintiff, and by counsel Alexandra Sierra De Varona, Esq., Mayelin Teresa Rodriguez, Esq., and De Varona Law; 2) to punish the present litigation abuse in this Court; 3) to compensate Defendants for the litigation abuse; and 4) to facilitate case management.

In light of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants' Rule 11 Motion for Sanctions [DE 26] is **GRANTED IN PART AND DENIED IN PART** as set forth in this Order.

2. On or before **October 18, 2023**, Defendants shall file an affidavit or declaration of reasonable expenses, including attorney's fees, which includes the hours claimed and the hourly rate sought, as well as the billing logs for each biller and a statement concerning their qualifications and/or experience. If any redactions are needed to preserve attorney-client privilege or work product protections, the billing records may be lightly and conservatively redacted.

3. Thereafter, on or before **October 25, 2023**, Plaintiff and its counsel (Alexandra Sierra De Varona, Esq., Mayelin Teresa Rodriguez, Esq., and De Varona Law) shall file a written response and state any objections they wish to assert as to the amount of reasonable expenses, including attorney's fees, claimed by Defendants, as well as any objections to the time sought or hourly rate claimed.

4. Defendants shall then be permitted to file a reply on or before **October 27, 2023**.

5. Once the matter is fully briefed, the Court will enter a further order as to the amount awarded. The Court expects that Defendant will exercise billing judgment, only claim

reasonable attorney's fees and costs, and keep in mind the hourly rates that are typically found appropriate in this district and by this Court.

**DONE AND ORDERED** in Chambers at West Palm Beach in the Southern District of Florida, this 11th day of October 2023.

WILLIAM MATTHEWMAN
United States Magistrate Judge