UNITED STATES DISTRICT COURT
SOUTHERN DIVISION OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO:  9:23-cv-80820-RLR

BOCA VIEW CONDOMINIUM ASSOCIATION,
INC.,

      Plaintiff,

vs.

ELEANOR LEPSELTER and EDWARD
LEPSELTER,

      Defendant(s).

_____/

## DEFENDANTS' RESPONSE TO DE # 72 AND DE # 74:

      Defendants ELEANOR LEPSELTER and EDWARD LEPSELTER, by and through their undersigned counsel, hereby file their response to DE # 72 and DE # 74 pursuant to the Court's instructions contained within DE # 66[1], as follows:

1. After initiating this action by filing its "Verified Complaint", the Plaintiff immediately sought, twice, to have *ex-parte* injunctions entered which would bring a grinding halt to the State Court appellate and judgment enforcement proceedings. See DE # 4 and 7. Those Motions were denied by this Court via DE # 5 and DE # 9, respectively. It should be noted that the first of these Motions was filed on May 25, 2023, which was the day after the deadline set by the State Court for Plaintiff to allow the completion of the inspection of the subject records.

2. Only after the Plaintiff's initial *ex-parte* salvo failed to succeed did it seek to have the Defendants served with process. In order to streamline matters your undersigned obtained the consent of the Defendants to accept service on their behalf, and the following day your undersigned sent an e-mail to Plaintiff's counsel requesting an opportunity to speak with Plaintiff's counsel about the lack of merit to the filed Verified Complaint. *See* Exhibit "1" attached hereto. Your undersigned sought to contact Plaintiff's counsel immediately in order

---

[1] The Defendants will file separate individual responses to the Objections filed at DE # 73 and 75, as those filings do not fall within the scope of what the Court identified within DE # 66.

to minimize the expenditures of time in connection with this matter, but despite your undersigned's efforts Plaintiff's counsel did not respond.

3. Thereafter, the Rule 12 Motion was filed on June 12, 2023, and the Rule 11 Motion was served upon Plaintiff and Plaintiff's counsel the same day.  See Exhibit "2".

4. Your undersigned did not receive <u>any communication</u> from the Plaintiff's counsel regarding this matter until June 25, 2023[2], when Plaintiff's prior counsel (Mr. Sheppard) sent a short e-mail requesting a fifteen (15) day extension to respond to the Rule 12 Motion. See Exhibit "3". Your undersigned did not agree to the extension, and the Plaintiff filed a Motion for Extension of Time, which this Court granted in part via DE # 21, setting a response deadline for July 5, 2023.

5. Thereafter, your undersigned received the first communication from attorney Alexandra Sierra-De Varona, Esq., via a voicemail message left on June 29, 2023 shortly after 5:00 p.m. Your undersigned returned the call later that afternoon and spoke with attorney De Varona, advising that your undersigned could not agree to any further extensions of time to respond to the Rule 12 Motion in light of the Court's Order at DE # 21 granting an extension through July 5, 2023 to file same.  The following day your undersigned sent e-mails to both Mr. Sheppard and Ms. De Varona (see Exhibit "4") seeking to discern to whom future communications should be directed.  Mr. Sheppard advised that he was going to seek to withdraw from representing the Plaintiff in this proceeding, and Ms. De Varona indicated that she had not yet decided if she would take the case.

6. The Rule 11 Motion served on June 12, 2023 was then filed on July 4, 2023 (see DE # 26) as the twenty-one day safe harbor period provided under Rule 11 had passed and the Verified Complaint had not been corrected or withdrawn.

7. At all times the Plaintiff, and its counsel, were well aware that the entirety of the proceedings brought before this Court were predicated upon a factual fallacy[3], one which the Plaintiff and

---

[2] Your undersigned was communicating regularly with Plaintiff's counsel via email regarding the underlying State Court matter during this time however, indicating that Plaintiff's counsel could have contacted your undersigned at any time to discuss this proceeding.

[3] In fact, the "Verified Complaint" relied upon multiple factual fallacies, as Giuseppe Marcigliano also swore to the allegations in paragraph thirteen (13) of the pleading despite the fact that the State Court found the testimony provided by the Plaintiff on the existence of the alleged "personal

its attorneys continue to advance even now.  As identified in Exhibit "B" to the filed Rule 12 Motion, Giuseppe Marcigliano, the very same agent of the Plaintiff who "verified" the filed Complaint, swore under oath and penalty of perjury that he did not rely upon any provision contained within F.S. Chapter 617 or F.S. Chapter 718 at the time he denied ELEANOR LEPSELTER's representative access to the subject records.  See Exhibit "5" attached hereto.

8. Despite knowing that Giuseppe Marcigliano did not rely upon any provision of F.S. Chapter 617 (specifically including F.S. 617.1602) as the justification for his decision to deny access to the subject records, the Plaintiff and its counsel requested this Court entertain an action for declaratory and injunctive relief, seeking a declaration that F.S. § 617.1606 and F.S. § 617.0102 were unconstitutional under the United States Constitution and the Florida Constitution as applied to the Plaintiff, and in connection therewith a judgment of this Court:

    a. "… staying the State Court action pending adjudication of this matter;

    b. "That this Court adjudicate that no records of Association need be produced to Defendants or their attorney."

    c. "That this Court enter judgment in favor of the Association for their costs and reasonable attorney's fees pursuant to Florida Statute Sections 718.1255 and 718.303 and the Association's governing documents;"

*See* DE # 4.

9. At all times no actual case or controversy ever existed, as the Plaintiff did not rely upon F.S. § 617.1602's provisions to use "business judgment" to determine that ELEANOR LEPSELTER'S records request to have her representative inspect records on her behalf was made "in bad faith" or for an "improper purpose."  Instead, Giuseppe Marcigliano did not trust ELEANOR LEPSELTER's selected representative, and he admitted as much when he stated the following while under oath at trial:

---

guarantee" to be patently false, and "made up" for purposes of the State Court trial.  And yet despite those findings, Giuseppe Marcigliano continued to swear as to the existence of the non-existent "personal guarantee" document (referred to in the State Court proceedings as a "non-disclosure agreement", and the Plaintiff's counsel simply turned a blind eye to the State Court's findings.

Q.  So what was the basis for your decision, February 25, 2019? To just tell Mr. Yellin you're not allowed to inspect the records?

A.  Because in my experience with Yellin, you, Ryan Poliakoff and company, okay? You guys represent everybody else of the troublemakers in our building. So therefore, because all of you guys represent the troublemakers inside the building, I would not trust any one of you with that record.

See Exhibit "5", at Transcript Page 183-184.

10. Further hammering this point home, Giuseppe Marcigliano also testified that, prior to February 25, 2019, he never even thought of the "straw person" argument which the Plaintiff asserted in both this proceeding and the prior State Court proceedings:

Q.  Sir, my question was isn't it true you don't have any evidence that shows that Mrs. Lepselter had Mr. Yellin make this request as a straw person for Mr. and Mrs. Shefet? Isn't that true?

A.  It never came to my mind, none of those things.

Q.  So that thinking didn't come to your mind?

A.  No.

See Exhibit "5", at Transcript Page 191.

11. It is the very apex of frivolity to assert a claim for declaratory relief based upon a false set of facts contained within a "verified" pleading, and where the party who actually "verified" the pleading at all times knew facts therein to be false based upon his own prior sworn testimony.[4]

---

[4] This also subjects the Declarations filed by the Plaintiff and its Counsel as part of DE 72 and DE 75, including that of Robert Rubinstein, Esq., to further scrutiny based upon the dubious propositions asserted therein that the arguments raised by the Plaintiff "were done in good faith and had plausible legal theories", and that Giuseppe Marcigliano's testimony should be "weighted in due measure". Of note, the Plaintiff and its counsel have not identified any on-point authority indicating that a party, or its counsel, can escape sanctions under Rule 11 by turning a blind eye and "relying upon" false testimony of the party itself which is directly contradicted by that party's own prior sworn testimony on the same subject matter. Furthermore, Mr. Rubinstein's "opinion" as to the merit or lack thereof of a former client's position asserted in this case has no bearing upon the independent exercise of judgment of counsel actually retained by the Plaintiff to prosecute its frivolous claims in this action, nor does his "opinion" in any way override the findings of this Court as to the merit or lack thereof of the Plaintiff's claims.

12. Given the complete lack of factual support for the Plaintiff's claims, the Plaintiff cannot shift the blame for its misconduct upon its counsel by asserting that it is insulated from the imposition of sanctions because its claims were also devoid of legal merit.

13. As to the liability of Plaintiff's successor counsel, prior to appearing in this proceeding the Rule 11 Motion was served upon successor counsel, and thereafter successor counsel appeared with full knowledge of the service and filing of the Motion. As such, successor counsel was provided every opportunity to investigate the underlying facts which were brought before this Court. However, the record demonstrates that such an investigation did not occur.

14. Within the transcript for the proceedings held on August 29, 2023, the Court directly inquired of successor counsel as to whether the assertions made regarding Giuseppe Marcigliano's prior sworn testimony was in fact true, and if they were true, whether that would render the Plaintiff's claims in this proceeding frivolous.  See Exhibit "6", at pages 90-92. In response to the Court's inquiry, successor counsel stated:

> THE COURT: *So Ms. De Varona, what about that? If the board member has testified under oath that he had no consideration whatsoever of these arguments that you're making now and the statutes that you're reflecting now, and the reason he is is because he simply decided he didn't want to let them look at the records with his attorney, doesn't that establish the frivolity of your legal cause of action here and doesn't that sort of undermine your entire complaint here*?
>
> MS. DE VARONA: *If that was correct, then perhaps Your Honor*. But that's just –
>
> THE COURT: How is it not correct then?
>
> MS. DE VARONA: *I don't believe that that's what my client testified to, Number 1, and I would want to review the transcript in its entirety, not just a section, to determine whether or not that was the entire testimony*. And there's other board members as well that gave testimony as well relating to this. So I don't think we can look in the vacuum in a micro-section of a testimony and not take, again, the entire testimony into context to determine whether something or not was frivolous, it's not my understanding of what happened. If you want me to respond to the rest of the motion, I can.
>
> THE COURT: Yes. Please do.
>
> *See Exhibit "6"* (emphasis added)

15. After being provided the opportunity by the Court to supplement briefing on the issue of Mr. Marcigliano's testimony, the Plaintiff did not provide any testimony wherein he swore that he did in fact rely upon F.S. § 617.1602 as the basis for his conduct on February 25, 2019.  Instead, the Plaintiff sought to reference testimony from other trial witnesses (Diana Kuka and Eric Estebanez) as "support" for the Plaintiff's contention, despite the fact that none of them ever averred that the Plaintiff denied access to the records on February 25, 2019 based upon the existence of a legal right to do so provided under F.S. § 617.1602.

16. This consistent tap dancing around the issue highlights the complete non-existence of factual support for the Plaintiff's contention that an actual case or controversy existed and it "needed" a declaration as to the constitutionality of F.S. § 617.1606 and F.S. § 617.0102 based upon the State Court's final judgment as it "impaired" its rights under its Declaration and its right to have rejected access to Mr. Yellin based upon the provisions of F.S. § 617.1602.

17. Moreover, successor counsel's comments to the Court show a failure to have actually reviewed the underlying trial testimony provided by Giuseppe Marcigliano to confirm whether or not the constitutional challenges raised in this proceeding were directed to statutes which were actually applicable to, and relied upon by, the Plaintiff.

18. Finally, the actions taken in this action by and on behalf of the Defendants were driven by the conduct of the Plaintiff and its counsel. Nowhere within its briefing materials has the Plaintiff asserted that its counsel acted without color of authority or client authorization. As such, the Plaintiff's latest assertion regarding what the Defendants could have done differently to halt this litigation (such as seeking a stay) are almost comical, in that the Plaintiff equally could have ended all unnecessary judicial labor, and saved the Defendants time and expense, had the Plaintiff simply dismissed this action after being served with the Rule 12 and Rule 11 Motions.

19. Stated plainly, the Plaintiff initiated this proceeding based upon a false set of facts, asserting frivolous claims, and it continued to plow ahead and advance those claims until they were dismissed by this Court, despite being served with a proposed Motion for Sanctions.

20. The foregoing is submitted by the Defendants to address the commentary made by Plaintiff and its former counsel as to the appropriate amount of sanctions to be imposed by the Court in the Court's sound exercise of discretion. It is uncontested that it was the Plaintiff's actions, and the advancement of its claims by its retained counsel, which required the Defendants to retain the undersigned as counsel to appear in this proceeding to protect their interests. Absent the

filing and continued advancement of the Plaintiff's claims (which could have chosen to dismissed at any time by the filing of a simple Notice), the Court's significant expenditure of time on the Rule 11 and Rule 12 motions, and your undersigned's expenditure of time to protect the Defendants, would not have been necessary.

21. Given that the imposition of sanctions falls within the sound discretion of the Court, the Defendants will not comment further on the appropriate amount of sanctions to be imposed or the allocation thereof between Plaintiff and Plaintiff's counsel, and the Defendants will leave such determination in the Court's sound hands.

Respectfully submitted on October 26, 2023.

**CHRISTOPHER S. SALIVAR, P.L.L.C.**
301 W Atlantic Ave Suite O-5
Delray Beach, FL 33444-3686
Telephone: (561) 628-8908
cssalivarattorney@gmail.com

By: _/S/ Christopher S. Salivar_
    Christopher S. Salivar
    Florida Bar No.: 57031

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that on this 26th day of October, 2023, that a true and correct copy of the foregoing has been filed through the Court's CM/ECF-filing portal and that a true copy has been served through the portal upon all counsel of record in this action.

By: _/S/ Christopher S. Salivar_
    Christopher S. Salivar
    Florida Bar No.: 57031

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1

Your undersigned hereby certifies that this filing complies with the font, sizing, and spacing requirements of Local Rule 5.1.

By: _/S/ Christopher S. Salivar_
    Christopher S. Salivar
    Florida Bar No.: 57031